```
                                        Plaintiff's July 30, 2012
                                        Submission to the Court
To be docketed in:                      Regarding Defendants'
---------------------------------------X Custodian Requests
                                      :
FEDERAL HOUSING FINANCE AGENCY, etc., :
                     Plaintiff,       :
          -v-                         :  11 Civ. 5201 (DLC)
                                      :
UBS AMERICAS, INC., et al.,           :
                     Defendants.      :
                                      :
---------------------------------------X
                                      :
FEDERAL HOUSING FINANCE AGENCY, etc., :
                     Plaintiff,       :
          -v-                         :  11 Civ. 6188 (DLC)
                                      :
JPMORGAN CHASE & CO., et al.,         :
                     Defendants.      :
                                      :
---------------------------------------X
                                      :
FEDERAL HOUSING FINANCE AGENCY, etc., :
                     Plaintiff,       :
          -v-                         :  11 Civ. 6189 (DLC)
                                      :
HSBC NORTH AMERICA HOLDINGS, INC., et :
al.,                                  :
                     Defendants.      :
                                      X
                                      :
FEDERAL HOUSING FINANCE AGENCY, etc., :
                     Plaintiff,       :
          -v-                         :  11 Civ. 6190 (DLC)
                                      :
BARCLAYS BANK PLC, et al.,            :
                     Defendants.      :
                                      :
--------------------------------------- X
```

```
---------------------------------------- X
                                         :
FEDERAL HOUSING FINANCE AGENCY, etc.,    :
                       Plaintiff,        :
              -v-                        :     11 Civ. 6192 (DLC)
                                         :
DEUTSCHE BANK AG, et al.,                :
                       Defendants.       :
                                         :
---------------------------------------- X
                                         :
FEDERAL HOUSING FINANCE AGENCY, etc.,    :
                       Plaintiff,        :
              -v-                        :     11 Civ. 6193 (DLC)
                                         :
FIRST HORIZON NATIONAL CORP., et al.,    :
                       Defendants.       :
                                         :
---------------------------------------- X
                                         :
FEDERAL HOUSING FINANCE AGENCY, etc.,    :
                       Plaintiff,        :
              -v-                        :     11 Civ. 6195 (DLC)
                                         :
BANK OF AMERICA CORP., et al.,           :
                       Defendants.       :
                                         :
---------------------------------------- X
                                         :
FEDERAL HOUSING FINANCE AGENCY, etc.,    :
                       Plaintiff,        :
              -v-                        :     11 Civ. 6196 (DLC)
                                         :
CITIGROUP INC., et al.,                  :
                       Defendants.       :
                                         :
---------------------------------------- X
                                         :
FEDERAL HOUSING FINANCE AGENCY, etc.,    :
                       Plaintiff,        :
              -v-                        :     11 Civ. 6198 (DLC)
                                         :
GOLDMAN, SACHS & CO., et al.,            :
                       Defendants.       :
                                         :
----------------------------------------X
```

```
------------------------------------- X
                                      :
FEDERAL HOUSING FINANCE AGENCY, etc., :
                        Plaintiff,    :
              -v-                     :    11 Civ. 6200 (DLC)
                                      :
CREDIT SUISSE HOLDINGS (USA), INC., et :
al.,                                  :
                        Defendants.   :
                                      :
------------------------------------- X
                                      :
FEDERAL HOUSING FINANCE AGENCY, etc., :
                        Plaintiff,    :
              -v-                     :    11 Civ. 6201 (DLC)
                                      :
NOMURA HOLDING AMERICA, INC., et al., :
                        Defendants.   :
                                      :
------------------------------------- X
                                      :
FEDERAL HOUSING FINANCE AGENCY, etc., :
                        Plaintiff,    :
              -v-                     :    11 Civ. 6202 (DLC)
                                      :
MERRILL LYNCH & CO., INC., et al.,    :
                        Defendants.   :
                                      :
------------------------------------- X
                                      :
FEDERAL HOUSING FINANCE AGENCY, etc., :
                        Plaintiff,    :
              -v-                     :    11 Civ. 6203 (DLC)
                                      :
SG AMERICAS, INC., et al.,            :
                        Defendants.   :
                                      :
-------------------------------------X
                                      :
FEDERAL HOUSING FINANCE AGENCY, etc., :
                        Plaintiff,    :
              -v-                     :    11 Civ. 6739 (DLC)
                                      :
MORGAN STANLEY, et al.,               :
                        Defendants.   :
                                      :
-------------------------------------X
```

```
----------------------------------------X
                                        :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
                        Plaintiff,      :
             -v-                        :     11 Civ. 7010 (DLC)
                                        :
ALLY FINANCIAL INC., et al.,            :
                        Defendants.     :
                                        :
----------------------------------------X
                                        :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
                        Plaintiff,      :
             -v-                        :     11 Civ. 7048 (DLC)
                                        :
GENERAL ELECTRIC COMPANY, et al.,       :
                        Defendants.     :
                                        :
----------------------------------------X
```

July 30, 2012

**VIA ELECTRONIC MAIL**

The Honorable Denise L. Cote
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY  10007-1312

Re:      FHFA Actions, No. 11 Civ. 05201 (DLC), *et al.*

Dear Judge Cote:

        We write in response to Defendants' demands for overly broad and irrelevant discovery
untethered to the materials used by the GSE personnel actually responsible for entering into the
transactions at issue.  FHFA is producing all responsive, non-privileged documents to the extent
they reflect the GSEs' knowledge of facts regarding the specific Securitizations at issue, or relate
to the purchase or evaluation of such Securitizations, and has designated every custodian who
would likely have such documents.  The Court should therefore reject Defendants' overreaching
demands.

        At present, FHFA has identified 81 Fannie Mae, Freddie Mac, or FHFA employees as
document custodians—far more than agreed to by almost every Defendant.  (Ex. 1.)  FHFA also
has obviated the need for greater Rule 30(b)(6) testimony on custodial issues by providing
Defendants with written information about the GSEs' potentially relevant employees that is far
more substantive than could be recalled by even multiple corporate deponents, including a
detailed description of the employees' responsibilities and how they fit into each GSE's
organization.  (Ex. 2 at Resp. Nos. 3, 6.)  FHFA anticipates that upwards of 1.7 million
documents, which it is in the process of collecting, will be responsive to the parties' agreed-upon
search terms.

        FHFA's current custodians cover every essential function with respect to the GSEs'
evaluation and purchase of the Certificates.  But Defendants are demanding another 164
custodians (Ex. 3), even though directories and shared drives with potentially relevant
information have been captured.  Defendants also seek far-reaching discovery relating to the
GSEs' separate Single and Multi-Family businesses, which work with over 1,000 lenders to
securitize millions of mortgage loans conforming to agency guidelines into thousands of GSE-
sponsored mortgage-backed securities.  (Exs. 4-6.)  Neither "conforming loans" nor GSE-
sponsored securitizations are at issue in these cases.  In essence, Defendants seek all
communications between the GSEs and any originator regardless of whether such
communications were in connection with the Securitizations, as well as due diligence and other
materials that bear only on the GSEs' own securitizations.  (Ex. 6 at Nos. 21, 26, 27, 39, 41, 43,
60.)

        Defendants' fishing expedition into the GSEs' Single and Multi-Family businesses is
legally unsupportable.  Some of these Defendants unsuccessfully attempted the same
overreaching in *AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC*, 2006 WL 1206333
(S.D.N.Y. May 2, 2006).  In that fraud action, the court agreed with the plaintiff investors that

the knowledge of employees who did not "participate[] in the securities purchase at issue" was "not chargeable to the plaintiffs or the specific employees who made the investment decision at issue" unless that knowledge was "actually communicated to the specific employees who made the investment decision that gave rise to [the] action." *Id.* at *2. The court thus found that custodians should be "limited to the specific individuals involved in the transaction at issue, including any employees who had an obligation to provide information to those individuals concerning the transaction at issue." *Id.* at *1; *see also MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/2008, slip. op. at 8-12 (N.Y. Sup. Ct. Apr. 30, 2012) (Ex. 7) (rejecting discovery requests served on plaintiff insurer relating to "HELOC and CES securitizations not at issue" as irrelevant and unduly burdensome); *Midfirst Bank, SSB v. C.W. Haynes & Co.*, 893 F. Supp. 1304, 1316 (D.S.C. 1994) (refusing to impute knowledge between HUD departments). The *AIG* decision is particularly fitting here, where the GSEs established policies that restricted the dissemination of certain information held by their Single and Multi-Family businesses. (Ex. 8 at 1-2; Ex. 9 at § 5.2.4; Ex. 10 at 8-9; Ex. 11 at IV; Ex. 12.)

Defendants' discovery demands are particularly improper given that, in other RMBS cases, they have invoked *AIG* as "persuasive authority" for the position that the knowledge of every employee in the organization cannot be imputed to the organization. For example, in *MBIA Ins. Corp. v. IndyMac ABS, Inc.*, Case No. BC422358 (L.A. Sup. Ct. Feb. 24, 2011), some of these same Defendants argued that "[a]ny discovery … that seeks documents that do not concern the deals at issue here or from employees who did not work on those deals, is not relevant to the subject matter of this litigation." (Ex. 13 at 10.) According to those defendants, the knowledge of "officers and employees who did not work on any of the [ ] securitizations at issue … is not imputed to the company and is not otherwise relevant." (*Id.* at 7-8; Ex. 14 at 6-8.) The *MBIA* court agreed, finding that discovery as to persons not involved in the relevant transactions was "overbroad." (Ex. 15; Ex. 16; *see also Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*, Case No. 650705/2010, at 2 ¶ 2 (N.Y. Sup. Ct. Feb. 8., 2011) (Ex. 17).) Even in this litigation, Defendants have objected to "the production of documents involving any transactions other than the FHFA transactions." (*See, e.g.*, Ex. 18 at 3; Ex. 19 at 3; Ex. 20 at 4.)

This Court has "broad discretion" to limit Defendants' requests, given that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(iii). FHFA would face the unreasonable burden of searching "hundreds of thousands, if not millions, of irrelevant pages" of Single and Multi-Family documents. (Ex. 13 at 11.) As many of these same Defendants have argued, requiring the production of "documents related to hundreds of unrelated transactions and thousands of unrelated loans is, by definition, unduly burdensome." (Ex. 21 at 2; Ex. 13 at 11.) FHFA requests that the Court uphold its objections to Defendants' overbroad discovery demands, to the extent that FHFA has limited its designation of custodians and its search for documents to the personnel responsible for purchasing or evaluating the Certificates at issue in this litigation, and objected to requests for documents and custodians that pertain instead solely to the GSEs' separate Single and Multi-Family businesses.

Respectfully submitted,

/s/ Richard A. Schirtzer
Richard A. Schirtzer
(richardschirtzer@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiff Federal Housing
Finance Agency*

/s/ Michael Hanin
Michael Hanin
(mhanin@kasowitz.com )
KASOWITZ, BENSON, TORRES &
    FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Plaintiff Federal Housing
Finance Agency*

encls.

cc:     All Counsel of Record (via email)

# TABLE OF CONTENTS

| EXHIBIT # | DESCRIPTION |
|---|---|
| 1 | Letter from Richard A. Schirtzer, on behalf of FHFA, to Defendants attaching Plaintiff's custodian list, dated July 25, 2012 |
| 2 | Plaintiff's Second Amended Objections and Responses to Defendants' Notice of Rule 30(b)(6) Deposition, dated July 27, 2012.  *See* Responses to Topics No. 3 and 6. |
| 3 | Collection of letters sent by various Defendants demanding additional Plaintiff custodians, dated June 25, 2012 – July 26, 2012 |
| 4 | Interrogatory No. 3 from Defendants' First Set of Interrogatories to Plaintiff FHFA, dated May 17, 2012 |
| 5 | Defendants' Joint Second Request for Production, dated June 8, 2012.  *See, e.g.*, Request Nos. 21, 26, 27, 39, 41, 43, 60. |
| 6 | Topics Nos. 3-8 from Defendants' Notice of Rule 30(b)(6) Deposition, dated June 28, 2012 |
| 7 | Copy of the New York State Supreme Court's decision in *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/2008 (N.Y. Sup. Ct. Apr. 30, 2012) |
| 8 | Fannie Mae MBS Trading Firewall, effective date March 17, 2004 |
| 9 | Fannie Mae Private Label Securities Risk Policy, Corporate Level Policy, effective date August 16, 2006 |
| 10 | Fannie Mae Information Barrier Policy, effective date March 15, 2007 |
| 11 | Freddie Mac Information Wall Policy No. 7-115, effective date September 1, 2006 |
| 12 | Excerpt of the Rule 30(b)(6) Deposition of Freddie Mac designee Rich Kehoe, dated July 20, 2012.  *See* 76:22-79:7. |
| 13 | Joint Discovery Status Report of MBIA Insurance Corporation, Credit Suisse Securities (USA) LLC, UBS Securities LLC, and J.P. Morgan Securities LLC in *MBIA Ins. Corp. v. IndyMac ABS, Inc.*, Case No. BC422358 (L.A. Sup. Ct.), dated February 18, 2011 |
| 14 | Joint Discovery Status Report of MBIA Insurance Corporation, Credit Suisse Securities (USA) LLC, UBS Securities LLC, and J.P. Morgan Securities LLC in *MBIA Ins. Corp. v. IndyMac ABS, Inc.*, Case No. BC422358 (L.A. Sup. Ct.), dated July 18, 2011 |
| 15 | Status Conference Agenda and Ruling by the Court in *MBIA Ins. Corp. v. IndyMac ABS, Inc.*, Case No. BC422358 (L.A. Sup. Ct. Feb. 24, 2011) |
| 16 | Court Order in *MBIA Ins. Corp. v. IndyMac ABS, Inc.*, Case No. BC422358 (L.A. Sup. Ct. Aug. 4, 2011) |

| EXHIBIT # | DESCRIPTION |
|---|---|
| 17 | Copy of the New York State Supreme Court's decision in *Assured Guaranty Mun. Corp. v. DB Structured Prods., Inc.*, Case No. 650705/2010 (N.Y. Sup. Ct. Feb. 8., 2011) |
| 18 | Excerpt of Citigroup-Related Defendants' Responses and Objections to Plaintiff FHFA's Third Request for Production of Documents, dated July 20, 2012. *See* General Objection No. 5, p. 3. |
| 19 | Excerpt of J.P. Morgan Defendants' Responses and Objections to Plaintiff FHFA's Second Request for Production of Documents, dated July 5, 2012. *See* General Objection No. 3, p. 3. |
| 20 | Excerpt of Bank of America/Merrill Lynch Defendants' Responses and Objections to Plaintiff FHFA's Second Request for Production of Documents, dated July 5, 2012. *See* General Objection No. 5, p. 4. |
| 21 | Letter from DB Structured Products, Inc., and ACE Securities Corp. to the Court in *Assured Guar. Mun. Corp. v. DB Structured Prods., Inc. et al.*, Index. No. 650705/2010, Third-Party Index No. 590783/2010 (N.Y. Sup. Ct.), dated January 31, 2011 |

# EXHIBIT 1

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000  FAX: (213) 443-3100

July 25, 2012

<u>Via Electronic Mail</u>

Beth Stewart
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

Re:    FHFA Litigation – Plaintiff's Custodian List

Dear Beth:

  I write to respond to your email of this morning requesting an updated list of all of FHFA's proposed custodians.  Attached as Exhibit A is the current list of proposed custodians from whom FHFA intends to collect documents.  We will be updating FHFA's interrogatory responses, and continue to reserve our right to supplement FHFA's custodian list and interrogatory responses based on new information.

Very truly yours,

Richard A. Schirtzer
RAS:apr

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000  FAX +49 621 43298 6100
MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow 125009, Russia | TEL +7 495 797 3666  FAX +7 495 797 3667
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000  FAX +49 40 89728 7100

## Exhibit A – Plaintiff's Proposed Custodian List

| Fannie Mae | Freddie Mac | FHFA/OFHEO |
|---|---|---|
| Scott Blackley | Mike Aneiro | Deirdre Kvartunis |
| Lin Cao | Don Bisenius | Vikas Mehta |
| Ramon de Castro | Patricia Cook | Phillip Millman |
| Kin Chung | Robert Cope | |
| David Cook | Donna Corley | |
| Enrico Dallavecchia | Melissa Crabtree | |
| Ashley Dyson | John Dimitri | |
| Susan Ernest | Peter Federico | |
| Kieran Gifford | Jim Feenick | |
| Francisco Gonzalez-Rey | Ronald Feigles | |
| David Gussmann | Thomas Flynn | |
| Chris Haspel | Lori Geftic | |
| Walter Hill | Doc Ghose | |
| John Ingram | Kieran Gifford | |
| Greg Johnson | David Hackney | |
| Pam Johnson | Timothy "Scott" Haymore | |
| Adolfo Marzol | Perri Rall Henderson | |
| Lesia Bates Moss | Ryan Henning | |
| Peter Niculescu | James Douglas Jeffrey | |
| Joseph Paul Norris | Adama Kah | |
| Ben Perlman | Gary Kain | |
| Bill Quinn | Stacey Kenneweg | |
| Shayan Salahuddin | Chris Kuehl | |
| Mike Shaw | Chad Levrini | |
| Pie-Chung Steve Shen | Jan Luytjes | |
| Kent Willard | Michael Lynch | |
| C.J. Zhao | Howard Mason | |
| | Matthew Mercer | |
| | Jack Myers | |
| | Masato Nakagawa | |
| | Richard Olek | |
| | Kevin Palmer | |
| | Aaron Pas | |
| | Steve Pionke | |
| | Tom Raby | |
| | Ron Ratcliffe | |
| | Ray Romano | |

| |
|---|
| Anurag Saksena |
| Courtney Sapp |
| Mener Tatang |
| Steve Tips |
| Noel Torres |
| Robert Tsien |
| Gail Vance |
| Frank Vetrano |
| Jonathan Veum |
| Terin Vivian |
| Pam Williams |
| Paige Wisdom |
| Bruce Wood |
| Xiang Xie |

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

:

FEDERAL HOUSING FINANCE AGENCY, etc.,

                Plaintiff,

         v.

UBS AMERICAS, INC., et al.,

                Defendants.

**PLAINTIFF'S SECOND AMENDED OBJECTIONS AND RESPONSES TO DEFENDANTS' NOTICE OF RULE 30(B)(6) DEPOSITION**

11 Civ. 5201 (DLC)

-------------------------------------------------------------------- x

:

FEDERAL HOUSING FINANCE AGENCY, etc.,

                Plaintiff,

         v.

JPMORGAN CHASE & CO., et al.,

                Defendants.

11 Civ. 6188 (DLC)

-------------------------------------------------------------------- x

:

FEDERAL HOUSING FINANCE AGENCY, etc.,

                Plaintiff,

         v.

HSBC NORTH AMERICA HOLDINGS, INC., et al.,

                Defendants.

11 Civ. 6189 (DLC)

-------------------------------------------------------------------- x

:

FEDERAL HOUSING FINANCE AGENCY, etc.,

                Plaintiff,

         v.

BARCLAYS BANK PLC, et al.,

                Defendants.

11 Civ. 6190 (DLC)

-------------------------------------------------------------------- x

-------------------------------------------------------------------- x
   :
   :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
   :  11 Civ. 6192 (DLC)
          Plaintiff,   :
     v.   :
   :
DEUTSCHE BANK AG, et al.,   :
   :
          Defendants.   :
   :
-------------------------------------------------------------------- x
   :
   :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
   :  11 Civ. 6193 (DLC)
          Plaintiff,   :
     v.   :
   :
FIRST HORIZON NATIONAL CORP., et al.,   :
   :
          Defendants.   :
   :
-------------------------------------------------------------------- x
   :
   :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
   :  11 Civ. 6195 (DLC)
          Plaintiff,   :
     v.   :
   :
BANK OF AMERICA CORP., et al.,   :
   :
          Defendants.   :
   :
-------------------------------------------------------------------- x
   :
   :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
   :  11 Civ. 6196 (DLC)
          Plaintiff,   :
     v.   :
   :
CITIGROUP INC., et al.,   :
   :
          Defendants.   :
   :
-------------------------------------------------------------------- x

---------------------------------------------------------------- x

            :

FEDERAL HOUSING FINANCE AGENCY, etc.,  :

            :  11 Civ. 6198 (DLC)

        Plaintiff,  :

      v.  :

            :

GOLDMAN, SACHS & CO., et al.,  :

        Defendants.  :

            :

---------------------------------------------------------------- x

            :

FEDERAL HOUSING FINANCE AGENCY, etc.,  :

            :  11 Civ. 6200 (DLC)

        Plaintiff,  :

      v.  :

            :

CREDIT SUISSE HOLDINGS (USA), INC., et al.,  :

        Defendants.  :

            :

---------------------------------------------------------------- x

            :

FEDERAL HOUSING FINANCE AGENCY, etc.,  :

            :  11 Civ. 6201 (DLC)

        Plaintiff,  :

      v.  :

            :

NOMURA HOLDING AMERICA, INC., et al.,  :

        Defendants.  :

            :

---------------------------------------------------------------- x

            :

FEDERAL HOUSING FINANCE AGENCY, etc.,  :

            :  11 Civ. 6202 (DLC)

        Plaintiff,  :

      v.  :

            :

MERRILL LYNCH & CO., INC., et al.,  :

        Defendants.  :

            :

---------------------------------------------------------------- x

```
------------------------------------------------------------------ x
                                                   :
                                                   :
FEDERAL HOUSING FINANCE AGENCY, etc.,              :
                                                   :
                           Plaintiff,              :   11 Civ. 6203 (DLC)
                  v.                               :
                                                   :
SG AMERICAS, INC., et al.,                         :
                                                   :
                           Defendants.             :
                                                   :
------------------------------------------------------------------ x
                                                   :
                                                   :
FEDERAL HOUSING FINANCE AGENCY, etc.,              :
                                                   :
                           Plaintiff,              :   11 Civ. 6739 (DLC)
                  v.                               :
                                                   :
MORGAN STANLEY, et al.,                            :
                                                   :
                           Defendants.             :
                                                   :
------------------------------------------------------------------ x
                                                   :
                                                   :
FEDERAL HOUSING FINANCE AGENCY, etc.,              :
                                                   :
                           Plaintiff,              :   11 Civ. 7010 (DLC)
                  v.                               :
                                                   :
ALLY FINANCIAL INC., et al.,                       :
                                                   :
                           Defendants.             :
                                                   :
------------------------------------------------------------------ x
                                                   :
                                                   :
FEDERAL HOUSING FINANCE AGENCY, etc.,              :   11 Civ. 7048 (DLC)
                                                   :
                           Plaintiff,              :
                  v.                               :
                                                   :
GENERAL ELECTRIC COMPANY, et al.,                  :
                                                   :
                           Defendants.             :
                                                   :
                                                   :
------------------------------------------------------------------ x
```

Plaintiff Federal Housing Finance Agency ("FHFA"), as conservator for the Federal

National Mortgage Association and the Federal Home Loan Mortgage Corporation (collectively,

the "GSEs"), hereby responds and objects to Defendants' Notice of Rule 30(b)(6) Deposition to

Plaintiff FHFA, served on June 28, 2012, and to each topic, definition, and instruction therein

(the "Notice"):[1]

## GENERAL OBJECTIONS

1.      FHFA objects to the Notice and the Topics contained in the Notice (collectively

the "Topics") on the grounds that they are overbroad, unduly burdensome, vague and harassing.

The Topics fail to describe with reasonable particularity the matters on which examination is

requested and, on their face, call for vast, undefined categories of information, spanning various

unreasonably long time periods, that would potentially require many witnesses to address.

2.      FHFA objects to the Notice and Topics on the ground and to the extent that they

are vague and ambiguous, seek information that is not relevant to the claim or defense of any

party to the above-captioned actions (the "Actions"), are not reasonably calculated to lead to the

discovery of evidence admissible in these Actions, are unduly burdensome or seek information

available from a more convenient source, or are otherwise beyond the scope of permissible

discovery in the Actions.

3.      FHFA objects to the Notice and Topics on the ground that the scope of the Topics

is beyond the scope agreed to by the parties in the Rule 26(f) report, which states:

> The Parties agree that some 30(b)(6) depositions limited to the identity of witnesses
> with knowledge of information relevant to the subject matter of the Actions and the
> existence, custodian, location and general description of relevant documents and
> other physical evidence, or information of a similar nature; relevant electronic

---

[1]   The information herein is based upon FHFA's present understanding of the relevant
facts.  FHFA reserves the right to supplement this document based upon its continuing factual
investigation.

systems used in the ordinary course of each party's business; and other topics to be reasonably agreed by the Parties or ordered by the Court, may occur prior to the completion of document discovery.

4.      FHFA objects to the Notice and Topics on the ground and to the extent they improperly attempt to expand, alter, or modify the scope of permissible discovery under the Federal Rules of Civil Procedure, the Southern District of New York ("S.D.N.Y.") Local Rules, or any other applicable law or rule.  Subject to and without waiver of any Objections, FHFA will construe the Notice and Topics consistently with the applicable rules.

5.      FHFA objects to the Notice and Topics on the ground and to the extent they seek information not known or reasonably available to FHFA.

6.      FHFA objects to the Notice and Topics to the extent they seek the disclosure of information subject to the attorney-client privilege, the work product doctrine, bank examination privilege, the deliberative process privilege or any other applicable privilege or immunity. FHFA does not waive or intend to waive, but rather preserves and intends to preserve, any applicable privilege or immunity.

7.      FHFA objects to the Notice and Topics on the ground and to the extent they seek the disclosure of information relating to mortgage loans other than those in the collateral pools backing the particular Certificates (the "GSE Certificates") that the GSEs purchased in the securitizations (the "Securitizations") at issue in the Actions.  Terms used in these objections have the same definitions as in the operative complaint applicable in each of the Actions.

8.      FHFA objects to the Notice and Topics on the ground and to the extent they seek the disclosure of information containing confidential commercial, business, financial, governmental, proprietary or competitively sensitive information, or documents that are subject to non-disclosure agreements or confidentiality undertakings.  FHFA will produce witness or witnesses in response to the Notice subject to the Protective Order entered in the Actions on May

30, 2012, and only to the extent permitted by law or under the terms of any applicable disclosure agreements or confidentiality undertakings.

9.      FHFA objects to the time period specified for the Topics on the ground it is overly broad, unduly burdensome, oppressive and is not reasonably calculated to lead to the discovery of evidence admissible in these Actions, or is otherwise beyond the scope of permissible discovery in the Actions.  Unless otherwise noted, FHFA will limit the relevant time period to the period beginning 60 days prior to the first Securitization and ending upon the commencement of the Actions.

10.      FHFA objects to the Notice and Topics on the ground and to the extent the Definitions provided therein are inconsistent with or more expansive than the definitions set forth in S.D.N.Y. Local Rule 26.3(c)(3).

11.      FHFA objects to the Definition of "you," "your," and "Plaintiff" in Definition No. 9 as overly broad and unduly burdensome to the extent it includes persons other than FHFA as conservator, Fannie Mae, Freddie Mac, and any of their employees.  FHFA further objects to the Definition of "you," "your," and "Plaintiff" to the extent that it purports to include the Office of Federal Housing Enterprise Oversight ("OFHEO"), the Federal Housing Finance Board, counsel, and agents acting on behalf of FHFA and its predecessors, Fannie Mae, or Freddie Mac. OFHEO, which regulated the GSEs, was succeeded by FHFA, which was created on July 30, 2008, and is a party to this action solely in its role as conservator to the GSEs.  OFHEO is not a party to this action and has never served as conservator to the GSEs, and any information held solely in its capacity as a regulatory agency is not relevant to this action and subject to privilege.

12.      FHFA objects to the Definition of "Composition" in Definition No. 6 as overly broad, and on the ground and to the extent that it seeks information that is beyond the scope agreed to by the parties in the Rule 26(f) report .

13.      FHFA's investigation is ongoing and FHFA reserves the right to supplement or modify its Objections to the Notice and Topics at any time.  Irrespective of whether FHFA produces a witness, FHFA reserves the right to amend, revise, correct or supplement these objections and to object to further discovery in the Actions.  FHFA's response reflects only the current state of its knowledge or information regarding the Topics Defendants have listed in their Schedule A.

14.      FHFA responds to the Notice and Topics without waiving or intending to waive, but rather preserving and intending to preserve, its right to object to any other discovery request.

15.      FHFA objects to the time and place for the deposition specified in the Notice, which was set unilaterally by noticing counsel.  FHFA will, consistent with S.D.N.Y. Local Rule 26.4(a), meet and confer to determine a reasonable, convenient and mutually agreed date and location for any deposition.

## SPECIFIC RESPONSES AND OBJECTIONS

### TOPIC NO. 1:

Any systematic deletion and/or destruction of potentially relevant documents by Freddie Mac or Fannie Mae at any time from January 1, 2004 through the present, including but not limited to the implementation of auto-deletion policies, the overwriting of back-up tapes, and the destruction of custodial files following an employee's departure from the GSEs.

### RESPONSE TO TOPIC NO. 1:

FHFA incorporates by reference its General Objections as if fully set forth herein.

FHFA objects to Topic No. 1 on the ground and to the extent that it seeks information that is beyond the scope agreed to by the parties in the Rule 26(f) report.  FHFA objects to Topic

6

No. 1 on the ground that it fails to describe with reasonable particularity the matters on which

examination is requested.  FHFA objects to Topic No. 1 on the ground that it seeks information

that is not relevant to any party's claim or defense or reasonably calculated to lead to the

discovery of admissible evidence.  FHFA objects to the time period specified for Topic No. 1 on

the ground that it is overly broad, unduly burdensome, oppressive and is not reasonably

calculated to lead to the discovery of evidence admissible in these Actions, or is otherwise

beyond the scope of permissible discovery in the Actions.  FHFA further objects to Topic No. 1

on the ground that it calls for a legal conclusion and is argumentative.

Subject to and without waiving the foregoing objections, FHFA will produce a witness or

witnesses to testify regarding the Fannie Mae document-retention policies and practices as they

applied to the groups and individuals responsible for the Securitizations.  Richard Kehoe has

already testified on this subject regarding Freddie Mac.

## TOPIC NO. 2:

Any document preservation memos that were issued by Freddie Mac or Fannie Mae in
connection with any litigation, investigation or regulatory proceeding concerning mortgage loans
or residential mortgage-backed securities ("RMBS") at any time from January 1, 2004 through
the present, including any steps taken to preserve potentially relevant documents.

## RESPONSE TO TOPIC NO. 2:

FHFA incorporates by reference its General Objections as if fully set forth herein.

FHFA objects to Topic No. 2 to the extent that it calls for the disclosure of information

protected by the attorney-client privilege and work product doctrine.  FHFA objects to Topic No.

2 on the ground and to the extent that it seeks information that is beyond the scope agreed to by

the parties in the Rule 26(f) report.  FHFA objects to Topic No. 2 on the ground that it seeks

information that is not relevant to any party's claim or defense or reasonably calculated to lead to

the discovery of admissible evidence.  FHFA objects to the time period specified for Topic No. 2

on the ground it is overly broad, unduly burdensome, oppressive and is not reasonably calculated

to lead to the discovery of evidence admissible in these Actions, or is otherwise beyond the

scope of permissible discovery in the Actions.   FHFA further objects to Topic No. 2 on the

ground that the document preservation memos themselves are the best evidence of their content.

Subject to and without waiving the foregoing objections, FHFA will produce a witness or

witnesses to testify regarding the Fannie Mae document-retention policies and practices as they

applied to the groups and individuals responsible for the Securitizations.  Richard Kehoe has

already testified on this subject regarding Freddie Mac.


**TOPIC NO. 3:**

The organizational structure of Fannie Mae and Freddie Mac, including but not limited to
the respective individuals, positions, departments, committees or other groups at Fannie Mae or
Freddie Mac that had a role in each Securitization in the above-captioned Actions
("Securitization"), or that had a role in Your purchase of mortgage loans or Your securitizations
of mortgage loans, including but not limited to those individuals, positions, departments,
committees or other groups who had responsibility for, involvement in or knowledge of:

(i)     Your assessment of the potential risks and benefits of non-agency mortgage-
        backed securities;

(ii)    approval of Your purchase of non-agency mortgage-backed securities and/or in
        development of any limits or setting of any goals concerning such purchases;

(iii)   any pre- or post-purchase credit analyses, due diligence processes, pricing
        analysis and/or other tools or analyses used by You to assess Your investments or
        potential investments in non-agency mortgage-backed securities;

(iv)    any assessments or analyses concerning underwriting standards or methods
        employed in connection with the underlying loans supporting the Securitizations;

(v)     any assessments or analyses concerning any rating agency ratings relating to the
        Securitizations; and

(vi)    communications with any third parties regarding the Certificates or Your
        investment in them.

As to each such individual, position, department, committee or other group, the organizational relationships between and among them; the names and Composition of any groups or other bodies that were responsible for overseeing or supporting more than one of them; and a description of the tools employed in the ordinary course of business to carry out communication and coordination between and among them.

## RESPONSE TO TOPIC NO. 3:

FHFA incorporates by reference its General Objections as if fully set forth herein.

FHFA objects to Topic No. 3 on the ground and to the extent that it seeks information that is beyond the scope agreed to by the parties in the Rule 26(f) report.  FHFA objects to Topic No. 3 on the ground that it seeks information that is not relevant to any party's claim or defense or reasonably calculated to lead to the discovery of admissible evidence.  FHFA also objects to Topic No. 3 on relevance grounds to the extent it requests the identity of individuals, departments, committees or other groups other than those discussed below.  Under case law within the Second Circuit, the knowledge possessed by people other than (1) the specific individuals at the GSEs who were involved in the Securitizations, or (2) any employees who had an obligation to provide information to those individuals concerning the transactions in issue, is irrelevant.  *See AIG Global Sec. Lending Corp. v. Bank of Am. Secs. LLC*, 2006 WL 1206333 (S.D.N.Y. May 2, 2006).  Moreover, policies in place at both GSEs restricted certain information available to the individuals in Capital Markets who purchased the Securitizations.  For example, pursuant to Fannie Mae's MBS Trading Firewall Policy, private label securities ("PLS") traders who purchased the Securitizations were prohibited from accessing loan-level and pool-specific information.  *See, e.g.*, Fannie Mae MBS Firewall Policy (Mar. 17, 2004) at 1-2 ("Access to loan level and pool-specific information is restricted to Fannie Mae employees who have a specific 'need to know' of such information."  "Mortgage Portfolio traders will not have access to FSIM [Financial Management Information Systems] Data Warehouse databases."  (which did not have

PLS loan information, but agency collateral) "Mortgage Portfolio traders and members of the

Investor Channel/Customer Transaction Group will not have access to the Early Funding and

Asset Acquisition & Custody Systems"); Private Label Securities Risk Policy v. 1.00 (Aug. 16,

2006) at 14 ("Fannie Mae's information sharing policies restrict the flow of information to

mortgage portfolio traders."); Fannie Mae Information Barrier Policy v. 1.01 (Mar. 15, 2007) at

8-9 (noting that barriers were in place "to ensure that Mortgage Assets Traders do not receive

Inside Information or Loan Information that Fannie Mae obtains during credit or operational

reviews."); Freddie Mac Policy 7-115 (Information Wall) at IV (Sept. 1, 2006) ("You should not

provide updated loan level information to Restricted Persons on these pools until the data are

released to the public without first receiving guidance from a Compliance Officer.").

     FHFA objects to Topic No. 3 on the grounds that it is overbroad and unduly burdensome.

FHFA objects to the time period specified for Topic No. 3 on the ground that it is overly broad,

unduly burdensome, oppressive and is not reasonably calculated to lead to the discovery of

evidence admissible in these Actions, or is otherwise beyond the scope of permissible discovery

in the Actions; FHFA will limit the identifications provided below to those holding relevant

positions at the GSEs beginning 60 days prior to the first GSE Certificate purchased by the

respective GSE and extending until 30 days following the purchase of the last GSE Certificate by

the respective GSE.  FHFA further objects to Topic No. 3 on the ground that it fails to describe

with reasonable particularity the matters on which examination is requested.  FHFA further

objects to Topic No. 3 on the grounds that it is vague and ambiguous, and compound.

     Subject to and without waiving the foregoing objections, FHFA responds below to this

Topic, consistent with Federal Rule of Civil Procedure 31(a).  FHFA makes these responses after

a reasonable investigation and to the best of its current understanding.  FHFA reserves the right

to amend and supplement these responses as appropriate.  The policies cited and being produced to Defendants are not exhaustive, but illustrative.  A **bolded** name indicates that FHFA has designated that individual a production custodian.

### Fannie Mae

Topic 3(i).  Departments, committees or other groups involved in assessing the potential risks and benefits of non-agency mortgage-backed securities during the relevant time period included the Private Label Advisory Team ("PLAT"), Capital Markets Mortgage Assets, Capital Markets Strategy, Single Family Counterparty Risk Management ("SF CPRM"), Capital Markets Risk Management, Legal, Chief Risk Officer, Credit Risk Committee, and Market Risk Committee (and their predecessors, the Risk Policy Committee and Corporate Risk Management Committee).  Individuals and positions involved in assessing the potential risks and benefits of non-agency mortgage-backed securities during the relevant time period are described below.

Fannie Mae's purchase and monitoring of the Securitizations during the relevant time period was governed by its Private Label Securities Risk Policy ("PLS Risk Policy"), which was designed to identify risks associated with PLS; to provide a framework for managing the risks; to assign roles and responsibilities for risk management; and to outline measures and limits for the risks.  The relevant versions of those policies are being produced concurrently and are incorporated by reference.[2]

Pursuant to the PLS Risk Policy, the PLAT managed and governed the risks associated with private label securities.  The PLAT comprised officer level members (or designees) from Capital Markets Mortgage Assets, Capital Markets Strategy, Capital Markets Structured Transactions, Single Family Mortgage Business (specifically SF CPRM), and Capital Markets

---

[2]  The PLS Risk Policy formerly was titled "Private Label Securities Credit Policies, Procedures and Delegated Authorities."

Risk Management, with observers from the Chief Risk Office, Legal and other areas.  The main role of the PLAT was to hold cross-functional meetings as necessary to promote communication across functions and discuss matters related to PLS purchases and wraps.  PLAT Members are identified in Appendix 6.2.1 to the PLS Risk Policy v. 1.04 (June 27, 2007), which is incorporated herein by reference.  **David Cook** was the PLAT Coordinator during the time when Fannie Mae purchased the GSE Certificates.

As set forth in Fannie Mae's PLS Risk Policy, different individuals or their designees were responsible for managing the PLS portfolio.

Fannie Mae's Executive Vice President of Capital Markets was responsible for the overall risk and return of the PLS portfolio, reviewing decisions to hold PLS, and resolving conflicts between groups responsible for different aspects of PLS.  Fannie Mae's Executive Vice President of Capital Markets when Fannie Mae purchased the GSE Certificates was **Peter Niculescu**.  FHFA has produced organizational charts identifying officers in Capital Markets. FHFA also has produced organizational charts that identify individuals in Capital Markets Mortgage Assets (the trading group) and Capital Markets Strategy (which housed the PLS Analytics and PLS Surveillance business units).  Those groups, including officers responsible for PLS related issues, are described below.  During the relevant period, Capital Markets Strategy was moved from Capital Markets to the Enterprise Risk Management organization and became Capital Markets Risk Management.

Fannie Mae's Senior Vice President for Capital Markets Mortgage Assets, or his designee, was responsible for various activities related to the purchase of PLS, including adhering to corporate policies restricting the use of loan-level, pool-specific, material, non-public information.  Fannie Mae's Senior Vice President for Capital Markets Mortgage Assets during

the time when Fannie Mae purchased the GSE Certificates was **Ramon De Castro**.[3]  FHFA has produced an organizational chart for Capital Markets Mortgage Assets, which is incorporated herein by reference.  Individuals who worked in this group during the relevant time period, in descending order of seniority, included (1) **Pei-Chung** "**Steve" Shen** (Director then Vice President, Capital Markets Mortgage Assets, Mortgage Trading); (2) **Joseph Paul Norris** (Director, Capital Markets Mortgage Assets, Securities Trading); (3) **Ashley Dyson** (Account Manager IV, Capital Markets Mortgage Assets); and (4) **Shayan Salahuddin** (Account Manager IV, Capital Markets Mortgage Assets).

Fannie Mae's Senior Vice President for Capital Markets Strategy was responsible for certain pre-purchase analytics and post-purchase surveillance related to PLS.  Capital Markets Strategy was a separate business unit from Capital Markets Mortgage Assets.  Neither business unit had oversight for the other.  The Senior Vice President for Strategy when Fannie Mae purchased the GSE Certificates was **William Quinn**.  FHFA has produced a number of organizational charts for Capital Markets Strategy, which are incorporated herein by reference. Individuals who worked in Capital Markets Strategy during the relevant time period included (1) **Kieran Gifford** (Vice President, Capital Markets, Credit Policy and Vice President, Private Label Securities); (2) **David Gussmann** (Vice President, Capital Markets Strategy); (3) **Kin Chung** (Director, PLS Surveillance); (4) **Caijiao "C.J." Zhao** (Director, PLS Analytics); (5) **Francisco Gonzalez-Rey** (PLS Analytics); and (6) **Lin Cao** (PLS Surveillance).  Although not included in these organizational charts, FHFA has previously identified **Kent Willard**, who worked in Capital Markets Strategy on PLS-related issues in late-2005 and early-2006.  In

---

[3]  Capital Market Mortgage Assets was called Portfolio Transactions prior to 2006.  **Mr. De Castro** was the Vice President for Portfolio Transactions prior to becoming the Senior Vice President for Capital Market Mortgage Assets.

addition, FHFA has produced an organizational chart of the Credit Risk Management organization when it moved outside of Capital Markets in 2009, which is incorporated herein by reference.[4]

Fannie Mae's Vice President of Single Family Counterparty Risk Management ("SF CPRM") was responsible for, among other things, the review and approval of issuers, originators, master servicers, and servicers. In addition, the Vice President of SF CPRM was responsible for distributing the list of all reviewed and approved issuers, originators, master servicers to the PLAT and for reporting material concerns or issues with counterparties to the PLAT. Pursuant to the PLS Risk Policy, the Vice President of SF CPRM also was responsible for "[e]nsur[ing] that whole loan purchase counterparty reviews are performed independently from PLS counterparty reviews to avoid information sharing risk." Private Label Securities Risk Policy v. 1.00 (Aug. 16, 2006) at 7; *see also* Fannie Mae Information Barrier Procedure (Sept. 17, 2007) at 5 ("Counterparty Risk Oversight shall consult with the Vice President and Deputy General Counsel (or his designee) to ensure that Mortgage Portfolio Traders do not receive Inside Information or Loan Information that Fannie Mae obtains during credit or operational reviews.").

SF CPRM was in a separate division from Capital Markets. **Pam Johnson** was the Senior Vice President, Single Family Risk Officer during the time when Fannie Mae purchased the GSE Certificates. She left the company in 2007. **Lesia Bates Moss** was Vice President of SF CPRM from October 2005 through 2007. Prior to October 2005, **Christopher Haspel**

---

[4]   In addition, **Scott Blackley**, the Chief Financial Officer of Capital Markets beginning in 2007, was involved in impairment decisions related to the Securitizations. Fannie Mae's pricing group, which included Lynda Maggio and Scott Sheppard, provided post-purchase pricing information on the Certificates.

(Director of Customer Account Management, SF CPRM) was responsible for PLS counterparty reviews.

Individuals who oversaw or performed PLS operational reviews and/or counterparty reviews during the relevant time period included (1) **Lynda Susan Ernest** (Manager of Operational Review and Compliance Group and Manager and Senior Business Manager); (2) **Gregory P. Johnson** (Senior Risk Manger then Senior Business Manager); (3) Ramona O'Bannon (Director); (4) Sid Kizziar (Senior Underwriting Consultant); (5) Allen Price (Senior Business Manager); (6) Sidney Vince Credle (Director, Credit Risk then Director, PO Management then Vice President for Business Transformation Office); (7) Devin Parent (Senior Underwriting Consultant); (8) Robert Vignato (Senior Underwriting Consultant then Senior Risk Manager); (9) Hermond Palmer (Customer Account Manager then Senior Business Manager); and (10) Richard Bauerband (Director, Servicing Risk Strategy).  Fannie Mae also used Clayton to conduct certain counterparty reviews.

Fannie Mae's Director of Capital Markets Credit Management was responsible for, among other things, setting up counterparties in the RiskNet system (Fannie Mae's counterparty credit risk management system) and reporting material concerns or issues with counterparties to the PLAT.  **Walter Hill** was the Director of Capital Markets Credit Management during the time when Fannie Mae purchased the GSE Certificates.

Pursuant to the PLS Risk Policy, Fannie Mae's Senior Vice President of Legal, or his designee, was responsible for, among other things, providing information and reviews related to Fannie Mae's anti-predatory lending policies.  **John M. Ingram** was the lawyer chiefly responsible for anti-predatory reviews during the time when Fannie Mae purchased the GSE Certificates.  Lawyers and legal assistants who also were involved in anti-predatory reviews

during the relevant time period included (1) Philip Bohi  (Associate General Counsel); (2) Ken

Scott (Associate General Counsel); (3) Carissa M. Verbeski (Consultant, Legal); (4) Christina L.

Baldwin (Senior Business Analyst, Legal); and (5) Cynthia D. Workman (Senior Business

Analyst, Legal).  FHFA has identified files containing reviews conducted by Mr. Ingram and his

team and will produce non-privileged documents related to these reviews.

Pursuant to the PLS Risk Policy, the Chief Risk Officer ("CRO"), or his designee, is

responsible for observing certain PLS-related meetings; reviewing regular reports on the status of

the PLS portfolio; and monitoring compliance with decisions concerning the PLS portfolio.  The

CRO reports directly to the Chief Executive Officer of Fannie Mae about credit issues affecting

the entire company, including PLS.  **Adolfo Marzol** was Fannie Mae's Interim Chief Risk

Officer in 2005.  **Enrico Dallavecchia** was Fannie Mae's Executive Vice President and Chief

Risk Officer from 2006-2009.  **Michael Shaw** (Senior Vice President, Credit Risk Oversight)

was the CRO's designee on the PLAT and **Ben Perlman** (Vice President, Credit Risk Oversight)

attended meetings during the period when Fannie Mae purchased the GSE Certificates.[5]  As

stated in the PLS Risk Policy, the Credit Risk Committee and Market Risk Committee (or their

predecessors, the Risk Policy Committee and Corporate Risk Management Committee) also

reviewed reports on the status of PLS and revisions and exceptions to the PLS Risk Policy.

FHFA has located a SharePoint site containing Credit and Market Risk Committee Material and

will produce such material to the extent it relates to the GSE Certificates.

Topic 3(ii). Departments involved in the purchase of non-agency mortgage-backed

securities and/or in development of any limits or setting of any goals concerning such purchases

---

[5]   In addition, Clinton Lively, Senior Vice President of Market Risk from approximately
2006 through 2007, was involved in setting PLS risk policy during the relevant time period.

during the relevant time period included Capital Markets Mortgage Assets, Capital Markets

Strategy, the Chief Risk Office, and the PLAT.

Capital Markets Mortgage Assets, Capital Markets Strategy, the Chief Risk Office, and

the PLAT are discussed in response to Topic 3(i), above.

Topic 3(iii). Departments involved in pre- or post-purchase credit analyses, due diligence

processes, pricing analysis and/or other tools or analyses to assess investments or potential

investments in non-agency mortgage-backed securities during the relevant time period included

Capital Markets Mortgage Assets, Capital Markets Strategy, and SF CPRM and Legal, which are

discussed in response to Topic 3(i), above.

Topic 3(iv).  Departments involved in assessments or analyses concerning underwriting

standards or methods employed in connection with the underlying loans supporting the

Securitizations during the relevant time period included Capital Markets Strategy and SF CPRM.

Capital Markets Strategy and SF CPRM are discussed in response to Topic 3(i), above.

Topic 3(v).  Departments involved in assessments or analyses concerning any rating

agency ratings relating to the Securitizations during the relevant time period included Capital

Markets Mortgage Assets and Capital Markets Strategy.

Capital Markets Mortgage Assets and Capital Markets Strategy are discussed in response

to Topic 3(i), above.

Topic 3(vi).  Fannie Mae did not retain any third-party due diligence firms to conduct

pre-purchase due diligence in connection with their decision to purchase the GSE Certificates.

Fannie Mae relied upon the issuers and underwriters of the GSE Certificates to perform this due

diligence.

Additional Information.   During meet and confer sessions, plaintiff agreed to inform defendants of the names of PLS supervisors who may have received some information related to the Single Family business.  PLAT members and Capital Markets officers identified above in their supervisory capacity may have received some information related to the Single Family business.  All of these individuals are designated custodians.  However, unless any such information was provided to (1) the specific individuals at the GSEs who were involved in the Securitizations, or (2) any employees who had an obligation to provide information to those individuals concerning the transactions in issue, it is irrelevant.  *See AIG Global Sec. Lending Corp. v. Bank of Am. Secs. LLC*, 2006 WL 1206333.

Moreover, pursuant to Fannie Mae's MBS Firewall Policy and the Information Barrier Policy that followed it, individuals responsible for the purchase of the GSE Certificates were prohibited from accessing loan-level and pool-specific information concerning the GSE Certificates and from using that information to make purchase decisions.  *See, e.g.*, Fannie Mae MBS Firewall Policy (Mar. 17, 2004) at 1-2 ("Access to loan level and pool-specific information is restricted to Fannie Mae employees who have a specific 'need to know' of such information." "Mortgage Portfolio traders will not have access to FSIM Data Warehouse databases." "Mortgage Portfolio traders and members of the Investor Channel/Customer Transaction Group will not have access to the Early Funding and Asset Acquisition & Custody Systems"); Private Label Securities Risk Policy v. 1.00 (Aug. 16, 2006) at 14 ("Fannie Mae's information sharing policies restrict the flow of information to mortgage portfolio traders."); Fannie Mae Information Barrier Policy v. 1.01 (Mar. 15, 2007) at 8-9 (noting that barriers were in place "to ensure that Mortgage Assets Traders do not receive Inside Information or Loan Information that Fannie Mae obtains during credit or operational reviews.").  In addition, to the extent originator counterparty

reviews were completed simultaneously for the PLS and Single Family sides of Fannie Mae's business, all Single Family information was *removed* from any counterparty reports prepared for the PLS side.

For additional information regarding the organizational relationships of the individuals and groups discussed above, FHFA refers Defendants to various organizational charts that it produced with Bates-numbers FHFA00000001-FHFA00000132.

### Freddie Mac

Topic 3(i).  Departments, committees or other groups involved in assessing the potential risks and benefits of non-agency mortgage-backed securities during the relevant time period included the Mortgage Investments & Structuring Division ("MIS"), which later became the Investment & Capital Markets Division ("ICM"); Credit Policy & Portfolio Management, which later became Counterparty Credit Risk Management ("CCRM"); Enterprise Risk Oversight Management ("EORM"), which later become Enterprise Risk Management; Legal; and Mission Oversight and Development.  Individuals and positions involved in assessing the potential risks and benefits of non-agency mortgage-backed securities during the relevant time period are described below.

The Senior Vice President of Mortgage Investments & Structuring was responsible for the overall risk and return of Freddie Mac's retained portfolio, reviewing decisions to hold PLS and ensuring compliance with Freddie Mac's Charter.  Freddie Mac's Senior Vice President at the time Freddie Mac purchased the GSE Certificates was **Gary Kain**.  Gary Kain reported to Chief Business Officer **Patti Cook**.  FHFA has produced organizational charts identifying officers in MIS/ICM, including MIS/ICM individuals in the Non-Agency Portfolio Management business unit, which is discussed below.  *See* FHFA000000032-FHFA00000076.

The Vice President for Non-Agency Portfolio Management, or his designee, was responsible for various activities related to the purchase and sale of Non-Agency PLS, including adhering to corporate policies and procedures.   Freddie Mac's Vice President for Non-Agency Portfolio Management during the time when Freddie Mac purchased the GSE Certificates was **Mike Aneiro**.  The organizational chart for MIS produced by FHFA reflects the structure of Non-Agency Portfolio Management and individuals who worked in the group during the relevant time period, including (1) **Scott Haymore** (Director, Portfolio Management); (2) **John Dimitri** (Director, Portfolio Management); (3) **David Hackney** (Director, Portfolio Management), (4) **Lori Geftic** (Portfolio Manager), (5) **Chad Levrini** (Senior Risk Analyst), and (6) **Xiang Xie** (Portfolio Manager/Credit Analyst).

Non-Agency Portfolio Management was supported by the following business units/groups within Freddie Mac:  (i) Business Engineering, Ops. & Tech., MIS Operations (for assessing HUD Goals counting); (ii) Financial Engineering (for assessing pre-purchase bond level risk); (iii) Market Credit Risk (using models to assess Freddie Mac's pre-purchase credit risk tolerance relating to the underlying collateral); and (iv) Models and Methods subgroup within the Enterprise Risk Oversight Division.  Individuals who worked in the Business Engineering group during the relevant time period included **Noel Torres**, **Steve Pionke**, and **Howard Mason**, all of whom were Business Analysts responsible for conducting pre-purchase analysis of loans solely to determine whether the bonds met HUD housing goals.  Individuals who worked in the Credit Risk Oversight group during the relevant time period included **Kevin Palmer** (Risk Director) and **Aaron Pas** (Senior Portfolio Analyst/Portfolio Management Director).

Freddie Mac's Senior Vice-President for Enterprise Risk Oversight ("ERO") was responsible for post-purchase surveillance related to PLS. ERO was a separate business unit from MIS. Neither business unit had oversight for the other. The Senior Vice-President for ERO when Freddie Mac purchased the GSE Certificates was **Anurag Saksena**. Currently, the business unit responsible for Freddie Mac's post-purchase surveillance of PLS investments is Enterprise Risk Management ("ERM"). **Paige Wisdom** is the Executive Vice President of ERM. Individuals who work or worked in the group include **Kieran Gifford** (Vice President, Risk Policy & Private Label Securities, since November 2009) and **Courtney Sapp** (Portfolio Credit Risk Mgmt Director).

During the relevant time period, the Models and Methods subgroup within ERO developed models used by PLS traders as a tool in their purchase decisions. The SVP of the Financial Research & Engineering and Senior Economist at the time was custodian **Jan Luytjes**. **Jonathan Veum** and **Ryan Henning** participated in the development of the models.

Freddie Mac's Senior Vice President of the Credit Policy & Portfolio Management Division ("CPPM") was responsible for, among other things, the review and approval of issuers, originators, master servicers, and servicers. During the relevant time period, **Don Bisenius** was Senior Vice President of Credit Policy & Portfolio Management. FHFA has produced organizational charts showing the structure and individuals who worked in CPPM. *See* FHFA00000077-FHFA00000124.

CPPM included Counterparty Credit Risk Management. During the relevant time period, **Ronald Ratcliffe** was Vice-President of CCRM. Individuals within CCRM included (a) **Pam Williams** (Director, Counterparty Management); custodian **Melissa Crabtree** (Director, Primary Markets); (b) **Jim Feenick** (Director, Credit Quality); (c) **Stacey Kenneweg** (Director,

Counterparty Credit Risk); and (d) **Bruce Wood** (Director, Counterparty Credit Risk).  **Ray Romano** (EVP, Credit Risk Oversight) had supervisory authority over the operations of CCRM.

MIS/ICM also conducted post-purchase analysis of Securitizations.  Individuals within MIS/ICM who were involved in such analyses include **Aaron Pas** (Senior Portfolio Analyst/Portfolio Management Director), **Adama Kah** (VP, Distressed Asset Management), **Chris Kuehl** (VP, Agency Portfolio Management), and **Donna Corley** (Senior Director, Portfolio Management).

Freddie Mac's Legal Division was responsible for, among other things, providing information and reviews related to Freddie Mac's anti-predatory lending policies.  Lawyers and legal assistants who also were involved in anti-predatory reviews during the relevant time period included (1) Lenore Stanton Kelly (Associate General Counsel); (2) Wendall Chamblis (Associate General Counsel); (3) Henry Azar (Associate General Counsel); (4) Teresa Molisko (paralegal); and (5) Beth Ryan (paralegal).

The Mission Oversight and Development Division analyzed whether Freddie Mac's investments in non-agency mortgage-backed securities met applicable housing goals.  **Robert Tsien** was the Senior Vice President of Mission Oversight and Development during the relevant time.  **Tom Raby** was the Director of the Strategy, Planning and Reporting group within Mission Oversight.

In addition, **Thomas Flynn** in the Business Engineering, Mortgage Investments & Structuring Division reviewed and analyzed trades concerning the retained portfolio.  He also coordinated processing of loan-level files pre- and post-purchase of asset-backed securities for purposes of determining whether they complied with the Freddie Mac charter and furthered

HUD goals.  Individuals who worked with Thomas Flynn included **Rick Olek** (Director), **Doug Jeffrey** (Analyst), and **Chad Levrini** (Analyst).

Topic 3(ii). Departments involved in the purchase of non-agency mortgage-backed securities and/or in development of any limits or setting of any goals concerning such purchases during the relevant time period included ICM, MIS, the Business Engineering group, and the Mission, Oversight and Development Division.  These departments are discussed in response to Topic 3(i), above.

Topic 3(iii). Departments involved in pre- or post-purchase credit analyses, due diligence processes, pricing analysis and/or other tools or analyses to assess investments or potential investments in non-agency mortgage-backed securities during the relevant time period included MIS, Finance Valuation Control within the Finance Group (and later ERM), CCRM, and the Portfolio Management group within EROM and ERM.  These departments are discussed in response to Topic 3(i), above.

ICM also conducted post-purchase analysis of non-agency mortgage-backed securities. **Peter Federico** was the Executive Vice President of ICM and was involved in overseeing the operation of the loss mitigation division.  Other members of ICM involved in this process were **Aaron Pas**, **Doc Ghose**, **Adama Kah**, **Steve Pionke**, **Masato Nakagawa**, **James Douglas Jeffrey**, **Terin Vivian**, **Donna Corley**, and **Kevin Palmer**.  **Aaron Pas** and **Adama Kah** were also involved in conducting pricing analyses for non-agency mortgage-backed securities.  **Jack Myers**, currently the Controller of ICM, conducted internal audits of private-label securities, along with **Mener Tatang** (VP, Portfolio Analytics & Strategy) and **Howard Mason** (Mid-Office Trading Support).

During the relevant time period, the Finance Division (and later ERM) performed analytics to determine whether the bond prices were reasonable. The Vice President for Financial Valuation Control within Finance was **Michael Lynch**. In August 2007, this function led by Lynch moved to the ERM Division. In 2004, the Financial Valuation Control subgroup was formed within the Finance Division.

Topic 3(iv). Departments involved in assessments or analyses concerning underwriting standards or methods employed in connection with the underlying loans supporting the Securitizations during the relevant time period included Alternative Markets Operations (AMO), External Operations Risk Management (EORM), Modeling, Business Engineering, and Mission.

AMO and EORM, respectively, were responsible for conducting examinations of approved originators of Capital Markets securities and of Single Family mortgage loans to be purchased by Freddie Mac. **Bob Cope**, a member of EORM, reviewed servicer performance. **Ron Feigles** of AMO reviewed originators' performance.

Topic 3(v). Concerning any rating agency ratings relating to the Securitizations during the relevant time period, Freddie Mac assessed the level of credit support for the Securitizations. These assessments were performed by Credit Risk Oversight within MIS. **Kevin Palmer** (Risk Director, Credit Risk Oversight) of MIS performed validation analyses to validate credit ratings.

Topic 3(vi). Freddie Mac did not retain any third-party due diligence firms to conduct pre-purchase due diligence in connection with their decision to purchase the GSE Certificates. Freddie Mac relied upon the issuers and underwriters of the GSE Certificates to perform this due diligence.

Additional Information. During meet and confer sessions, plaintiff agreed to inform defendants of the names of the PLS supervisors who may have received some information

24

related to the Single Family business: To date, Freddie Mac has identified:  (1) **Gary Kain**

(Investments & Capital Markets, EDP); (2) **Melissa Crabtree** (CCRM, Risk Analysis Director);

(3) **Stacey Kenneweg** (CCRM, Credit Risk Director); (4) **Ron Ratcliffe** (CCRM, Credit Risk

Vice President); (5) **Ray Romano** (CCRM, Credit Risk Oversight Executive Vice President); (6)

**Patricia Cook** (EVP & CBO, ICM); (7) **Donald Bisenius** (Senior Vice President of Credit

Policy & Portfolio Management); and (8) **Anurag Saksena** (Senior Vice-President for ERO).

However, unless any such information was provided to (1) the specific individuals at the GSEs

who were involved in the Securitizations, or (2) any employees who had an obligation to provide

information to those individuals concerning the transactions in issue, it is irrelevant.  *See AIG

Global Sec. Lending Corp. v. Bank of Am. Secs. LLC*, 2006 WL 1206333.

     Moreover, individuals responsible for making purchasing or sales decisions regarding

private-label securities were restricted from receiving certain information regarding single-

family loan originators pursuant to Freddie Mac's information wall policy.  *See* Freddie Mac

Policy 7-115 (Information Wall) at IV (Sept. 1, 2006) ("You should not provide updated loan

level information to Restricted Persons on these pools until the data are released to the public

without first receiving guidance from a Compliance Officer."); *see also* Rough Deposition Trans.

(Rick Kehoe), 7/20/2012, 68:2 – 71:3 ("There is a system in place where if somebody in business

area A wants to access business area B's data, they have to go into the system, request access, it

has to go through a whole approval process before they would be granted access to area B's

data.").  **Gail Vance**, the Vice President of the Compliance Division, had responsibility during

the relevant time period for enforcing the information walls around traders in PLS.  Relevant

copies of this policy are being produced and are incorporated by reference.

For additional information regarding the organizational relationships of the individuals and groups discussed above, FHFA refers Defendants to various organizational charts for the years 2005-2008 that it produced with Bates-numbers FHFA00000001-FHFA00000132.

### FHFA/OFHEO

During meet and confer sessions, plaintiff agreed to inform defendants of the names of personnel at OFHEO or FHFA who communicated with anyone at the GSEs about the Securitizations to the extent those communications concerned (a) specific originators who sold at least 10 percent of the loans into that Securitizations, (b) the purchase of the GSE Certificates, or (c) the performance of the underlying loan pools.

Those individuals and their respective relevant titles follow: Christopher Dickerson, who held the title of Deputy Director of the Division of Enterprise Regulation; John Kerr, who held the title of Examiner in Charge; Deirdre Kvartunas, who held the title of Manager, Office of Market Risk; Phillip Millman, who held the titles of Principal Market Risk Examiner and Market Examiner Specialist; Jeffrey Spohn, who held the title of Examiner in Charge; and Lawrence Stauffer, who held the title of Principal Account Examiner, Office of the Chief Accountant.

Plaintiff also agreed to identify personnel at OFHEO or FHFA who communicated with personnel at the GSEs responsible for working on PLS, or supervising people who worked on PLS, about any originator who contributed more than 10 percent of the underlying loans to any Securitization, within the period starting 60 days before the purchase of the relevant GSE Certificate and ending 30 days after the purchase.

Phillip Millman, who held the titles of Principal Market Risk Examiner and Market Examiner Specialist, has been identified as responsive to this question.

Plaintiff further agreed to identify the FHFA personnel directly responsible for receiving information from the GSEs and communicating internally within FHFA, post-conservatorship, concerning (a) the purchase the GSE Certificates or (b) the performance of the underlying loan pools.

Those individuals and their respective relevant titles follow:  Christopher Dickerson, who held the title of Deputy Director of the Division of Enterprise Regulation; Austin Kelly, who held the title of Examiner, Office of Model Risk; John Kerr, who held the title of Examiner in Charge; Deirdre Kvartunas, who held the title of Manager, Office of Market Risk; Phillip Millman, who held the titles of Principal Market Risk Examiner and Market Examiner Specialist; Jeffrey Spohn, who held the title of Examiner in Charge; and Lawrence Stauffer, who held the title of Principal Account Examiner, Office of the Chief Accountant.

## TOPIC NO. 4:

The Composition of each group responsible for any aspect of Your purchase of mortgage loans, including Your due diligence, Your communications with mortgage loan originators, Your pricing decisions, Your monitoring of the performance of the mortgage loans, and Your communications with any third parties, including but not limited to any operational reviews of third parties in connection with the mortgage loans or Your purchase of them from the time period beginning January 1, 2004 through September 6, 2007.

## RESPONSE TO TOPIC NO. 4:

FHFA incorporates by reference its General Objections as if fully set forth herein.

FHFA objects to Topic No. 4 on the ground and to the extent that it seeks information that is beyond the scope agreed to by the parties in the Rule 26(f) report.  FHFA objects to Topic No. 4 on the ground that it seeks information that is not relevant to any party's claim or defense or reasonably calculated to lead to the discovery of admissible evidence.  FHFA objects to Topic No. 4 on the grounds that it is overbroad and unduly burdensome.  FHFA objects to the time

period specified for Topic No. 4 on the ground that it is overly broad, unduly burdensome,

oppressive and is not reasonably calculated to lead to the discovery of evidence admissible in

these Actions, or is otherwise beyond the scope of permissible discovery in the Actions; FHFA

will limit the custodians provided below to those holding relevant positions at the GSEs

beginning 60 days prior to the first GSE Certificate purchased by the respective GSE and

extending until 30 days following the purchase of the last GSE Certificate by the respective GSE.

FHFA objects to Topic No. 4 on the ground that it fails to describe with reasonable particularity

the matters on which examination is requested.  FHFA further objects to Topic No. 4 on the

grounds that it is vague and ambiguous.


**TOPIC NO. 5:**

       The Composition of each group responsible for any aspect of Your securitizations of
mortgage loans, including Your due diligence, Your communications with potential investors in
Your securitizations, Your pricing decisions, Your monitoring of the performance of the
securitizations, and Your communications with any third parties regarding the securitizations
from the time period beginning January 1, 2004 through September 6, 2007.

**RESPONSE TO TOPIC NO. 5:**

       FHFA incorporates by reference its General Objections as if fully set forth herein.

       FHFA objects to Topic No. 5 on the ground and to the extent that it seeks information

that is beyond the scope agreed to by the parties in the Rule 26(f) report.  FHFA objects to Topic

No. 5 on the ground that it seeks information that is not relevant to any party's claim or defense

or reasonably calculated to lead to the discovery of admissible evidence.  FHFA objects to Topic

No. 5 on the grounds that it is overbroad and unduly burdensome.  FHFA objects to the time

period specified for Topic No. 5 on the ground that it is overly broad, unduly burdensome,

oppressive and is not reasonably calculated to lead to the discovery of evidence admissible in

these Actions, or is otherwise beyond the scope of permissible discovery in the Actions; FHFA

will limit the custodians provided below to those holding relevant positions at the GSEs

beginning 60 days prior to the first GSE Certificate purchased by the respective GSE and

extending until 30 days following the purchase of the last GSE Certificate by the respective GSE.

FHFA objects to Topic No. 5 on the ground that it fails to describe with reasonable particularity

the matters on which examination is requested.  FHFA further objects to Topic No. 5 on the

grounds it is vague and ambiguous.


**TOPIC NO. 6:**

      The Composition of each group responsible for any aspect of Your economic modeling
relating to the housing or mortgage markets, housing or mortgage industry trends, the
Certificates or the Securitizations, Your own securitizations, and mortgage loans You purchased
from the time period beginning January 1, 2004 through the present.

**RESPONSE TO TOPIC NO. 6:**

      FHFA incorporates by reference its General Objections as if fully set forth herein.

      FHFA objects to Topic No. 6 on the ground and to the extent that it seeks information

that is beyond the scope agreed to by the parties in the Rule 26(f) report.  FHFA objects to Topic

No. 6 on the ground that it seeks information that is not relevant to any party's claim or defense

or reasonably calculated to lead to the discovery of admissible evidence.  FHFA also objects to

Topic No. 6 on relevance grounds to the extent it requests the identity of individuals,

departments, committees or other groups besides those discussed below.  Under case law within

the Second Circuit, the knowledge possessed by people other than (1) the specific individuals at

the GSEs who were involved in the Securitizations, or (2) any employees who had an obligation

to provide information to those individuals concerning the transactions in issue, is irrelevant.  *See

AIG Global Sec. Lending Corp. v. Bank of Am. Secs. LLC*, 2006 WL 1206333.  Moreover,

29

policies in place at both GSEs restricted certain information available to the individuals in Capital Markets who purchased the Securitizations.  For example, pursuant to Fannie Mae's MBS Trading Firewall Policy, PLS traders who purchased the Securitizations were prohibited from accessing loan-level and pool-specific information.  *See, e.g.*, Fannie Mae MBS Firewall Policy (Mar. 17, 2004) at 1-2 ("Access to loan level and pool-specific information is restricted to Fannie Mae employees who have a specific 'need to know' of such information."  "Mortgage Portfolio traders will not have access to FSIM Data Warehouse databases."  "Mortgage Portfolio traders and members of the Investor Channel/Customer Transaction Group will not have access to the Early Funding and Asset Acquisition & Custody Systems"); Private Label Securities Risk Policy v. 1.00 (Aug. 16, 2006) at 14 ("Fannie Mae's information sharing policies restrict the flow of information to mortgage portfolio traders."); Fannie Mae Information Barrier Policy v. 1.01 (Mar. 15, 2007) at 8-9 (noting that barriers were in place "to ensure that Mortgage Assets Traders do not receive Inside Information or Loan Information that Fannie Mae obtains during credit or operational reviews."); Freddie Mac Policy 7-115 (Information Wall) at IV (Sept. 1, 2006) ("You should not provide updated loan level information to Restricted Persons on these pools until the data are released to the public without first receiving guidance from a Compliance Officer.").

FHFA objects to Topic No. 6 on the grounds that it is overbroad and unduly burdensome. FHFA objects to Topic No. 6 on the grounds that the phrase "economic modeling" is overly broad, vague and ambiguous.  FHFA objects to Topic No. 6 on the ground that it fails to describe with reasonable particularity the matters on which examination is requested.  FHFA further objects to Topic No. 6 on the ground that it seeks the disclosure of information containing confidential commercial, business, financial, governmental, proprietary or competitively

sensitive information, or documents that are subject to non-disclosure agreements or confidentiality undertakings.

Subject to and without waiving the foregoing objections, FHFA responds below to this Topic, consistent with Federal Rule of Civil Procedure 31(a).  FHFA makes these responses after a reasonable investigation and to the best of its current understanding.  FHFA reserves the right to amend and supplement these responses as appropriate.  The policies cited and being produced to Defendants are not exhaustive, but illustrative.  A **bolded** name indicates that FHFA has designated that individual a production custodian.

### Fannie Mae

The following individuals in Capital Markets Strategy were responsible for economic modeling used to evaluate potential purchases of the Securitizations:  **David Gussmann**; **Kin Chung**; **Caijiao "C.J." Zhao**; and **Francisco Gonzales-Rey**.

### Freddie Mac

The following individuals in Investments and Capital Markets were responsible for economic modeling used to evaluate potential purchases of Securitizations: **Masato Nakagawa**, **Kevin Palmer**, **Frank Vetrano**, and **Jan Luytjes**, **Ryan Henning**, and **Jonathan Veum**.


## TOPIC NO. 7:

The Composition of each group responsible for the development or application of any intellectual property or other tools used to detect appraisal bias from the time period beginning January 1, 2004 through the present.

## RESPONSE TO TOPIC NO. 7:

FHFA incorporates by reference its General Objections as if fully set forth herein.

FHFA objects to Topic No. 7 on the ground and to the extent that it seeks information that is beyond the scope agreed to by the parties in the Rule 26(f) report. FHFA objects to Topic No. 7 on the ground that it seeks information that is not relevant to any party's claim or defense or reasonably calculated to lead to the discovery of admissible evidence. FHFA also objects to Topic No. 7 on relevance grounds. Under case law within the Second Circuit, the knowledge possessed by people other than (1) the specific individuals at the GSEs who were involved in the Securitizations, or (2) any employees who had an obligation to provide information to those individuals concerning the transactions in issue, is irrelevant. *See, e.g.*, Fannie Mae MBS Firewall Policy (Mar. 17, 2004) at 1-2 ("Access to loan level and pool-specific information is restricted to Fannie Mae employees who have a specific 'need to know' of such information." "Mortgage Portfolio traders will not have access to FSIM Data Warehouse databases." "Mortgage Portfolio traders and members of the Investor Channel/Customer Transaction Group will not have access to the Early Funding and Asset Acquisition & Custody Systems"); Private Label Securities Risk Policy v. 1.00 (Aug. 16, 2006) at 14 ("Fannie Mae's information sharing policies restrict the flow of information to mortgage portfolio traders."); Fannie Mae Information Barrier Policy v. 1.01 (Mar. 15, 2007) at 8-9 (noting that barriers were in place "to ensure that Mortgage Assets Traders do not receive Inside Information or Loan Information that Fannie Mae obtains during credit or operational reviews."); Freddie Mac Policy 7-115 (Information Wall) at IV (Sept. 1, 2006) ("You should not provide updated loan level information to Restricted Persons on these pools until the data are released to the public without first receiving guidance from a Compliance Officer.").

FHFA objects to Topic No. 7 on the grounds that it is overbroad and unduly burdensome. FHFA objects to Topic No. 7 on the ground that it fails to describe with reasonable particularity

the matters on which examination is requested.  FHFA objects to Topic No. 7 on the ground that

it seeks the disclosure of information containing confidential commercial, business, financial,

governmental, proprietary or competitively sensitive information, or documents that are subject

to non-disclosure agreements or confidentiality undertakings.   FHFA further objects to Topic

No. 7 on the grounds that it is vague and ambiguous.


**TOPIC NO. 8:**

   The Composition of each group responsible for or having knowledge of the effectiveness
and limitations of automated valuation modeling from the time period beginning January 1, 2004
through the present.


**RESPONSE TO TOPIC NO. 8:**

   FHFA incorporates by reference its General Objections as if fully set forth herein.

   FHFA objects to Topic No. 8 on the ground and to the extent that it seeks information

that is beyond the scope agreed to by the parties in the Rule 26(f) report.  FHFA objects to Topic

No. 8 on the ground that it seeks information that is not relevant to any party's claim or defense

or reasonably calculated to lead to the discovery of admissible evidence.  Under case law within

the Second Circuit, the knowledge possessed by people other than (1) the specific individuals at

the GSEs who were involved in the Securitizations, or (2) any employees who had an obligation

to provide information to those individuals concerning the transactions in issue, is irrelevant.

*See, e.g.*, Fannie Mae MBS Firewall Policy (Mar. 17, 2004) at 1-2 ("Access to loan level and

pool-specific information is restricted to Fannie Mae employees who have a specific 'need to

know' of such information."  "Mortgage Portfolio traders will not have access to FSIM Data

Warehouse databases."  "Mortgage Portfolio traders and members of the Investor

Channel/Customer Transaction Group will not have access to the Early Funding and Asset

Acquisition & Custody Systems"); Private Label Securities Risk Policy v. 1.00 (Aug. 16, 2006) at 14 ("Fannie Mae's information sharing policies restrict the flow of information to mortgage portfolio traders."); Fannie Mae Information Barrier Policy v. 1.01 (Mar. 15, 2007) at 8-9 (noting that barriers were in place "to ensure that Mortgage Assets Traders do not receive Inside Information or Loan Information that Fannie Mae obtains during credit or operational reviews."); Freddie Mac Policy 7-115 (Information Wall) at IV (Sept. 1, 2006) ("You should not provide updated loan level information to Restricted Persons on these pools until the data are released to the public without first receiving guidance from a Compliance Officer.").

FHFA objects to Topic No. 8 on the grounds that it is overbroad and unduly burdensome. FHFA objects to Topic No. 8 on the ground that it seeks the disclosure of information containing confidential commercial, business, financial, governmental, proprietary or competitively sensitive information, or documents that are subject to non-disclosure agreements or confidentiality undertakings. FHFA objects to Topic No. 8 on the ground that it fails to describe with reasonable particularity the matters on which examination is requested. FHFA further objects to Topic No. 8 on the grounds that the phrase "having knowledge of the effectiveness and limitations" is overly broad, vague and ambiguous.

**TOPIC NO. 9:**

For each Securitization, the identities of any external due diligence firms that assisted Fannie Mae or Freddie Mac.

**RESPONSE TO TOPIC NO. 9:**

FHFA incorporates by reference its General Objections as if fully set forth herein.

FHFA objects to Topic No. 9 to the extent that it calls for the disclosure of information protected by the attorney-client privilege and work product doctrine. FHFA objects to Topic No.

34

9 on the ground and to the extent that it seeks information that is beyond the scope agreed to by the parties in the Rule 26(f) report. FHFA objects to Topic No. 9 on the ground that it seeks information that is not relevant to any party's claim or defense or reasonably calculated to lead to the discovery of admissible evidence. FHFA objects to Topic No. 9 on the grounds that the word "assisted" is overly broad, vague and ambiguous. FHFA further objects to Topic No. 9 on the ground that it assumes disputed facts or legal conclusions.

Subject to and without waiving the foregoing objections, FHFA responds below to this Topic, consistent with Federal Rule of Civil Procedure 31(a). FHFA makes these responses after a reasonable investigation and to the best of its current understanding. FHFA reserves the right to amend and supplement these responses as appropriate.

**Fannie Mae**

Fannie Mae did not retain any third-party due diligence firms in connection with its decision to purchase the GSE Certificates. Fannie Mae relied upon the issuers and underwriters of the GSE Certificates to perform this due diligence.

**Freddie Mac**

Freddie Mac did not retain any third-party due diligence firms in connection with their decision to purchase the GSE Certificates. Freddie Mac relied upon the issuers and underwriters of the GSE Certificates to perform this due diligence.

**TOPIC NO. 10:**

The systems through which Fannie Mae and Freddie Mac maintain hard-copy files in the ordinary course that are relevant to each Securitization, private label RMBS investments generally, and the subject of discovery requests in this Action.

**RESPONSE TO TOPIC NO. 10:**

FHFA incorporates by reference its General Objections as if fully set forth herein.

FHFA objects to Topic No. 10 on the ground and to the extent that it seeks information that is beyond the scope agreed to by the parties in the Rule 26(f) report.  FHFA objects to Topic No. 10 on the ground that it fails to describe with reasonable particularity the matters on which examination is requested.  FHFA objects to Topic No. 10 on the ground that it seeks information that is not relevant to any party's claim or defense or reasonably calculated to lead to the discovery of admissible evidence.  FHFA objects to Topic No. 10 on the ground that it seeks the disclosure of information containing confidential commercial, business, financial, governmental, proprietary or competitively sensitive information, or documents that are subject to non-disclosure agreements or confidentiality undertakings.  FHFA further objects to Topic No. 10 on the grounds that it is vague and ambiguous.

Subject to and without waiving the foregoing objections, FHFA will produce a witness or witnesses to testify regarding the systems through which Fannie Mae maintained hard-copy files in the ordinary course that are relevant to each Securitization and to private label RMBS investments.  Richard Kehoe has already testified on this subject regarding Freddie Mac.

**TOPIC NO. 11:**

The systems through which Fannie Mae and Freddie Mac maintain electronic files in the ordinary course that are relevant to each Securitization, private label RMBS investments generally, and the subject of discovery requests in this Action.

**RESPONSE TO TOPIC NO. 11:**

FHFA incorporates by reference its General Objections as if fully set forth herein.

FHFA objects to Topic No. 11 on the ground and to the extent that it seeks information that is beyond the scope agreed to by the parties in the Rule 26(f) report.  FHFA objects to Topic No. 11 on the ground that it fails to describe with reasonable particularity the matters on which examination is requested.  FHFA objects to Topic No. 11 on the ground that it seeks information that is not relevant to any party's claim or defense or reasonably calculated to lead to the discovery of admissible evidence.  FHFA objects to Topic No. 11 on the ground that it seeks the disclosure of information containing confidential commercial, business, financial, governmental, proprietary or competitively sensitive information, or documents that are subject to non-disclosure agreements or confidentiality undertakings.  FHFA further objects to Topic No. 11 on the grounds that it is vague and ambiguous.

Subject to and without waiving the foregoing objections, FHFA will produce a witness or witnesses to testify regarding the systems through which Fannie Mae maintained electronic files in the ordinary course that are relevant to each Securitization and  to private label RMBS investments.  Richard Kehoe has already testified on this subject regarding Freddie Mac.

## TOPIC NO. 12:

The Composition of each group responsible for the decision to file the Actions.

## RESPONSE TO TOPIC NO. 12:

FHFA incorporates by reference its General Objections as if fully set forth herein.

FHFA objects to Topic No. 12 on the ground and to the extent that it seeks information that is beyond the scope agreed to by the parties in the Rule 26(f) report.  FHFA objects to Topic No. 12 on the ground that it seeks information that is not relevant to any party's claim or defense or reasonably calculated to lead to the discovery of admissible evidence.  FHFA objects to Topic

No. 12 on the ground that it calls for the disclosure of information protected by the attorney-client privilege and work product doctrine.

Dated: July 27, 2012
      New York, New York


/s/ Philippe Z. Selendy

Philippe Z. Selendy
(philippeselendy@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000


*Attorneys for Plaintiff Federal Housing Finance
Agency in FHFA v. UBS Americas, Inc., FHFA
v. JPMorgan Chase & Co., FHFA v. Deutsche
Bank AG, FHFA v. Citigroup Inc., and FHFA v.
Goldman, Sachs & Co.*

/s/ Marc E. Kasowitz

Marc E. Kasowitz (mkasowitz@kasowitz.com )
Hector Torres (htorres@kasowitz.com)
Christopher P. Johnson
(cjohnson@kasowitz.com)
Michael Hanin (mhanin@kasowitz.com )
Kanchana Wangkeo Leung
(kleung@kasowitz.com)
KASOWITZ, BENSON, TORRES &
    FRIEDMAN LLP
1633 Broadway
New York, New York 10019

*Attorneys for Plaintiff Federal Housing Finance
Agency in FHFA v. Ally Financial Inc., FHFA
v. General Electric Company, FHFA v. Morgan
Stanley, and FHFA v. SG Americas, Inc.*


/s/ Christine H. Chung

Christine H. Chung
(christinechung@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorneys for Plaintiff Federal Housing Finance
Agency in FHFA v. First Horizon National
Corp., FHFA v. Bank of America Corp., and
FHFA v. Credit Suisse Holdings (USA), Inc.*

/s/ Manisha M. Sheth

Manisha M. Sheth
(manishasheth@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorneys for Plaintiff Federal Housing Finance
Agency in FHFA v. UBS Americas, Inc., FHFA
v. JPMorgan Chase & Co., FHFA v. Barclays
Bank PLC, FHFA v. Citigroup Inc., and FHFA
v. Merrill Lynch & Co., Inc.*

/s/ Richard A. Schirtzer
Richard A. Schirtzer
(richardschirtzer@quinnemanuel.com)
Adam Abensohn
(adamabensohn@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorneys for Plaintiff Federal Housing Finance
Agency in FHFA v. HSBC North America Holdings, Inc.
and FHFA v. Nomura Holding America, Inc.*

# EXHIBIT 3

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-293-6330

WWW.SULLCROM.COM

*1701 Pennsylvania Avenue, N.W.*

*Washington, D.C. 20006-5805*

_____

NEW YORK • LOS ANGELES • PALO ALTO

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

June 25, 2012

Via E-mail

Adam M. Abensohn,
    Quinn Emanuel Urquhart & Sullivan LLP,
        51 Madison Avenue, 22nd Floor,
            New York, New York  10010-1601.

> Re:  *Federal Housing Finance Agency* v. *Nomura Holding*
>      *America Inc., et al.*, 11 CIV. 6201 DLC (S.D.N.Y.)

Dear Mr. Abensohn:

        I write on behalf of the Nomura defendants in the above-captioned action with regard to certain discovery issues specific to Nomura.  Nomura reserves its rights with respect to all other discovery matters.

        *Custodian list.*  The GSE employees listed on Exhibit A to this letter appear, based on preliminary searches, to have had contact with Nomura on relevant topics.  Of these individuals, FHFA's custodian list includes only Stacey Kenneweg, Richard Olek, Shayan Salahuddin and Noel Torres.  Nomura asks that FHFA include the individuals listed in Exhibit A as custodians or explain why FHFA believes it is not necessary to do so.

        *Search Terms.*  We ask that you add the search terms listed below to FHFA's Group 4A search terms.

        /NSI/
        /@us.nomura.com/

        We also ask that you add the search terms listed below to FHFA's Group 4B search terms.

        /Dominion/
        /CoreLogic/

Adam M. Abensohn                                                                -2-

                  /BPO/
                  /AVM/
                  /HistoryPro/
                  /History Pro/

        We understand that FHFA's search terms will also be discussed during joint meet-and-confer sessions, and Nomura reserves all rights to propose additional changes.

        We ask that FHFA be prepared to discuss these matters at our meet-and-confer, which is scheduled for Tuesday, June 26.

                                  Sincerely,

                                  /s/ Amanda Davidoff

                                  Amanda Davidoff

cc (by e-mail):

Richard A. Schirtzer
Jennifer J. Ghaussy
Joshua Ellis
(Quinn Emanuel Urquhart & Sullivan LLP)

Bruce E. Clark
David R. Dehoney
(Sullivan & Cromwell LLP)

Tom Rice
David Woll
Alan Turner
(Simpson Thacher & Bartlett LLP)

**Exhibit A**

Freddie Mac

Howard C. Mason
Amy DeBone
Chad Levrini
Chuck Casey
David Latta
Donna Brown
James Jeffery
Michael Quinn
Michelle Baker
Noel Torres
Richard Olek
Robert Turner
Stacey Kenneweg
Susan Fraser

Fannie Mae

Julian Boddy
Chris Copeland
Margaret Davis
Roy Hormuth
Jyoti Pai
Shayan Salahuddin
Cindy Workman

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-293-6330

WWW.SULLCROM.COM

*1701 Pennsylvania Avenue, N.W.*

*Washington, D.C. 20006-5805*

NEW YORK • LOS ANGELES • PALO ALTO

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

June 25, 2012

Via E-mail

Christine H. Chung, Esq.,
    Quinn Emanuel Urquhart & Sullivan L.L.P.,
        51 Madison Avenue,
            New York, NY 10010.

Re: *FHFA* v. *First Horizon Nat'l Corp., et. al.*, No. 11 Civ. 6193 (DLC)

Dear Christine:

On behalf of First Horizon National Corporation, First Tennessee Bank National Association, FTN Financial Securities Corporation, First Horizon Asset Securities, Inc., Gerald L. Baker, Peter F. Makowiecki, Charles G. Burkett and Thomas J. Wageman, (collectively, "First Horizon"), I write with regard to certain discovery issues specific to First Horizon. First Horizon reserves its rights with respect to all other discovery matters.

*Interrogatory Responses.* In its responses, FHFA refused to answer Interrogatory Number 3, which asked FHFA to identify employees of its predecessor agency OFHEO, and those of the GSEs, who were "involved in, approved, or were responsible in any way for the GSEs' relationships" with mortgage loan originators named in the Prospectus Supplements for the securitizations at issue in the seventeen actions brought by FHFA pending in the Southern District. In particular, FHFA objected that "information identifying individuals involved in the GSEs' relationships with mortgage loan originators, where the GSE is a purchaser of loans, is not reasonably calculated to lead to the discovery of admissible evidence" and that such information was "not material and necessary in the prosecution or defense of this Action."

The principal mortgage loan originator at issue in the above-mentioned case is First Horizon Home Loan. FHFA alleges that Defendant First Tennessee Bank National Association is the "successor-in-interest to First Horizon Home Loan, and thus all allegations against First Horizon Home Loan are made against First Tennessee." (Complaint ¶ 16.) We believe that identifying those who were responsible for or

Christine H. Chung, Esq.                                                              -2-

involved in the GSEs' relationship *with a defendant in this case* is reasonably calculated to lead to the discovery of admissible evidence and is material and necessary in the prosecution of this action. For this reason, and without waiver of other reasons why information responsive to Interrogatory Number 3 is discoverable in this action, First Horizon asks that FHFA respond to that interrogatory with respect to First Horizon.

      *Custodian lists.*  Based on our current knowledge and understanding of the facts and issues in this Action and the availability of electronic information from 2005 and 2006, and subject to First Horizon's objections and responses to all discovery requests, a revised list of First Horizon custodians is attached as Exhibit A. The inclusion of a name on this list is not a statement by Defendants that the named individual actually is or was a custodian of discoverable information or documents. We reserve the right to further revise our custodian list if it proves to be too broad or too narrow to identify potentially responsive documents. We also reserve the right to modify this list in response to Plaintiff's own custodian lists and as a result of any meet and confer sessions with Plaintiff.

      With respect to FHFA's custodian list, the six GSE employees listed below (and on First Horizon's Initial Disclosures) appear, based on preliminary searches, to have had direct contact with First Horizon concerning the deals at issue in this case.

      Thomas J. Flynn, Freddie Mac
      Perri L. Henderson, Freddie Mac
      Steve Keleher, Freddie Mac
      Paul Norris, Fannie Mae
      Richard A. Olek, Freddie Mac
      Steve Tips, Freddie Mac

Of these individuals, FHFA's custodian list includes only Mr. Olek and an individual named Joseph Paul Norris, who may be the "Paul Norris" on First Horizon's list. First Horizon asks that FHFA include all individuals listed above as custodians. In addition, First Horizon asks that FHFA include as custodians all GSE and OFHEO employees who had direct contact with Defendant First Horizon or who were aware of or reviewed Defendant First Horizon's underwriting practices.

      *Search Terms.*  We ask that you add the search terms listed below to FHFA's Group 4A search terms.

      /@ftb.com/
      /@here4you.com/
      /@fhhl.com
      /@fhhlc.com/
      /@firsthorizonhomeloans.com/

Christine H. Chung, Esq.                                                          -3-

                  /@ftn.com/
                  /@ftn.financial.com/
                  /@ftnfinancial.com/
                  /@ftcm.com/
                  /FHHL/
                  /FTB/
                  /First Tennessee/
                  /FTN/

We also ask that you add the search terms listed below to FHFA's Group 4B search terms.

                  /Data Management Corporation/
                  /DMC/
                  /Deloitte/
                  /D&T/
                  /D & T/
                  /iMarc/

We understand that FHFA's search terms will also be discussed during joint meet-and-confer sessions, and First Horizon reserves all rights to propose additional changes.

*Response to First Horizon's June 8, 2012 Letter.*  On June 1, 2012, FHFA wrote to First Horizon demanding, among other things, confirmation that First Horizon was complying with its obligations to preserve documents in this matter.  On June 8, 2012, First Horizon provided the requested assurances and sought reciprocal assurances from FHFA.  FHFA has not responded.

We ask that FHFA be prepared to discuss each of these matters at our meet-and-confer, which is scheduled for Tuesday, June 26.

                                Sincerely,

                                /s/ Amanda Davidoff

                                Amanda Davidoff

cc:    Bruce Clark (Sullivan & Cromwell LLP)
        Penny Shane (Sullivan & Cromwell LLP)
        Jay Kasner (Skadden, Arps, Slate, Meagher & Flom LLP)
        Richard W. Clary (Cravath, Swaine & Moore LLP)

Christine H. Chung, Esq.                                                   -4-

      David Blatt (Williams & Connolly LLP)
      David Armillei (Quinn Emanuel Urquhart & Sullivan LLP)
      Joshua Ellis (Quinn Emanuel Urquhart & Sullivan LLP)

**Exhibit A**

Charles Anderson
Gerald L. Baker
Lynne Bluege-Rust
Jeffrey Brown
Edie Bullock
Scott Burge
Charles G. Burkett
John Cain
Alfred Chang
Steve Covington
Belinda Dearman
Elisa Fox
Jacqueline Gaines
Mike Goodwin
Feroz Hasan
Donna Jones
Peter F. Makowiecki
Terry McCoy
Marion McDougall
Nancy Mercer
Analee Meyers
Terry Renoux
Martin Shea
Dhiren Toolsidas
Brandon Unruh
Nhan Vo
Audrey K. Vogt-Moore
Wade Walker
Stephen Walsh

**David Armillei**

| | |
|---|---|
| **From:** | Manisha Sheth |
| **Sent:** | Wednesday, June 27, 2012 9:23 AM |
| **To:** | David Schwartz; Joshua Ellis |
| **Subject:** | FW: UBS Custodians |
| **Attachments:** | Schedule A (Supplemental Custodians).pdf; Schedule B (Remove from Custodians).pdf; Schedule C (Proposed Additional Custodians for Plaintiff).pdf |

**From:** Brumme, Marley A [mailto:Marley.Brumme@skadden.com]
**Sent:** Wednesday, June 27, 2012 12:21 PM
**To:** Manisha Sheth; Adam Abensohn
**Cc:** Fumerton, Robert A; Sacca, Joseph N
**Subject:** UBS Custodians

Counsel:

In accordance with the parties' June 11, 2012 agreement to exchange proposed custodian lists and search terms, I am writing on behalf of the UBS Defendants in *FHFA v. UBS Americas, Inc., et al.*, 11 Civ. 5201 to: (i) supplement the list of proposed custodians sent as Schedule A to our June 11 letter; (ii) remove from our initial list on Schedule A to our June 11 letter a number of proposed custodians; and (iii) propose additional custodians for FHFA.

Please find attached as Schedule A a supplemental list of UBS custodians for addition to the previous list. Attached as Schedule B is a list of previously-identified custodians to be removed from the custodian list pursuant to the reservation of rights in our June 11 letter to amend, correct, or otherwise modify the custodian list. These individuals, who we now understand are lawyers, were inadvertently included on the custodian list provided on June 11.

Defendants reserve the right to further supplement, amend, correct, or otherwise modify the custodian list (as supplemented and modified here) as necessary based on documents produced in discovery or as circumstances otherwise warrant. Defendants reserve their right to withhold any custodian documents for reasons including, but not limited to, relevancy, privilege, work product, over-breadth, or undue burden. This is a proposal made solely for the purpose of reaching an agreement about discovery, and should not be construed as a concession or admission that any particular individual, document, or class of documents is relevant for the purpose of discovery or admissible evidence.

Finally, please find attached as Schedule C a proposed supplemental list of custodians for Plaintiff FHFA and the GSEs. These individuals were omitted from FHFA's proposed custodian list, but either: (i) identified by FHFA in its Rule 26(a) Initial Disclosures, Responses to Defendants' First Set of Interrogatories, or First Supplementation of Responses to Defendants' First Set of Interrogatories as having relevant information; or (ii) identified by UBS in its Rule 26(a) Initial Disclosures as individuals whom Defendants believe are likely to have relevant, discoverable information or whom Defendants know have relevant information. Defendants therefore request that FHFA add the individuals on Schedule C to its custodian list. Defendants provide this list of proposed supplemental custodians while reserving all rights with respect to the inadequacy of Plaintiff's list of proposed custodians and information learned through discovery.

**Marley Ann Brumme**
Associate
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Times Square | New York | 10036-6522
T: 212.735.2177 | F: 917.777.2177
**marley.brumme@skadden.com**

-----------------------------------------------------------------------
**************************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot

be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
****************************************************
****************************************************


This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
**********************************************
=====================================================================

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## Schedule C

**Fannie Mae:**

Berge, Christiaan
Bickert, Mark
Boddy, Julian
Dolecki, Bob
Graham, Erik
Haidorfer, Anton
Johnson, Jim
Knight, Linda
Kulaligil, Gunes
Levin, Robert
Liu, Margaret
Lund, Thomas
Lynch, Kyle
Mackey, Stephen
Mailey, Robert
Malbari, Mansoor
Marzol, Adolfo
Mudd, Daniel
Raines, Franklin
Sun, Qing
Thelosen, John
Williams, Michael
Yam, Lik-Man
Yelvigi, Rohan

**Freddie Mac:**

Andrukonis, David
Baker, Sally
Bisenius, Donald
Brendsel, Leland
Casey, Charles
Conroy, Brian
Cook, Patricia
Cotton, James
Cuozzi, Christen
Dimitri, John
Flynn, Thomas
Geftic, Lori
Gillmer, Andrew
Hackney, David

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Heller, Emily
Henderson, Perri Rall
Humphrey, James
Idrizi, Geraldine
Keleher, Steve
Levrini, Chad
Li, Sam
Malisko, Teresa
Mason, Howard
McCreary, Anthony
Nakagawa, Masato
Nauman, Craig
O'Donnell, Mary
Richardson, Michele
Ryan, Beth B.
Stanton Kelly, Lenore
Syron, Richard
Tips, Steve
Vegega, Juan
Wang, Michael
Xie, Sean

**FHFA/OFHEO:**

Dickerson, Christopher
Falcon, Jr., Armando
Lockhart, James

**David Armillei**

| | |
|---|---|
| **From:** | Stewart, Beth [BStewart@wc.com] |
| **Sent:** | Sunday, July 01, 2012 7:00 AM |
| **To:** | Christine Chung; Manisha Sheth |
| **Cc:** | Blatt, David; McNichols, John; Cady, Steven; Bennett, Edward; 'nbinder@rkollp.com'; 'dzinman@rkollp.com'; Smallwood, Jesse; jconnolly@rkollp.com; Katherine Stock; Julia Beskin; Joshua Ellis; Andrew Kutscher; Stewart, Beth |
| **Subject:** | Additional Custodians |

Christine and Manisha,

 On behalf of BofA and ML, we would request that you add the custodians below.  We have identified these custodians in the course of due diligence conversations with our client.  Based on those conversations, we understand that the following individuals were frequently present, and in some instances attended credit and other substantive meetings, at one or more defendants.  We have listed our rough sense of titles for the individuals below.  Obviously we continue to reserve our rights to propose further custodians as we identify additional information.

 Fannie Mae

Maryska, Pavel (Account Manager)
Todd Hempstead (Western region executive responsible for Countrywide business relationship)
Ted Chandler (VP, Account mgmt)
David Battany (Director, Account mgmt)
Mark Ramsey (Director, Account mgmt)
Sandra Adams (Account Mgr)
Bud Schmidtbauer (VP, credit risk)
Karen King (Credit risk director)
Mike Sobczak (Credit risk director)
Cielo Irizarry (Credit risk manager)
T Austin Capomaggi (Credit risk mgr)
David Johnson (Credit risk mgr)
Mary lee Moriarity (Credit risk mgr)
Kathy Zimmerman (Credit risk mgr)
John Forlines (credit officer)
Deborah Slade Horsey (Director, credit risk)
John Forlines (Credit Risk)
Zack Oppenheimer (Sales and Marketing)
Sandra Adams (Sales and Marketing)
Austin Capomaggi (Credit Risk)

Freddie Mac
Tracy Mooney (Credit Risk)
Dusty Tanabe (Credit Risk)
Merritt Connell (Sales and Marketing)
Austin Capomaggi (Credit Risk)
James Hunter (Sales and Marketing)

Finally, in past meet-and-confers, we requested that you add former Chief Risk Officers David Andrukonis and Adolfo Marzol, and we await a response as to that request.

Best,

Beth

---

NOTICE:

This message is intended for the use of the individual or entity
to which it is addressed and may contain information that is privileged,
confidential and exempt from disclosure under applicable law. If the reader
of this message is not the intended recipient or the employee or agent
responsible for delivering this message to the intended recipient, you are
hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this communication
in error, please notify us immediately by reply or by telephone
(call us collect at (202) 434-5000) and immediately delete this message
and all its attachments.

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

July 2, 2012

<u>Via E-Mail</u>

Manisha M. Sheth,
    Quinn Emanuel Urquhart & Sullivan, LLP,
        51 Madison Avenue, 22nd Floor,
            New York, New York 10010.

Re:     *Federal Housing Finance Agency* v. *Barclays Bank plc*,
         No. 11-cv-06190 (S.D.N.Y); *Federal Housing Finance Agency* v.
         *Ally Financial Inc.*, No. 11-cv-7010 (S.D.N.Y.)

Dear Manisha:

        I write on behalf of the Barclays defendants in the above-referenced
actions (the "Actions") to memorialize issues discussed during our meet and confer
discussions on June 25 and 27, 2012, and to respond to Serafina Shishkova's June 28,
2012 letter requesting that Barclays add additional custodians to its proposed custodian
list.

        FHFA's Custodian List.  After our June 25 meet and confer, my colleague
Joshua Fritsch e-mailed you a list of additional Fannie Mae and Freddie Mac employees
(the "Additional Custodians") whom Barclays believes that FHFA should add to its June
11, 2012 custodian list on account of the Additional Custodians' roles in the
securitizations at issue in the Actions (the "Securitizations").  (A copy of this e-mail is
enclosed as Appendix A.)  Before discussing the Additional Custodians, we asked you to
explain how FHFA developed its June 11 custodian list.

        Based on our discussion, we understand that FHFA's proposed custodian
list was primarily developed based on interviews of current Freddie Mac and Fannie Mae
employees.  You noted that this investigation was not deal-specific.  Instead, FHFA
sought to identify individuals who were generally involved in purchasing, approving
and/or analyzing private label securities ("PLS") without regard as to whether these
employees had any involvement in the Securitizations.  As we noted on our call, the fact
that these custodians are not tied to the Securitizations raises concerns about the
sufficiency of FHFA's custodian list.  Similarly, as we noted on our call and as indicated

Manisha M. Sheth, Esq.                                                                    -2-

in our June 4, 2012 letter, the scope of FHFA's investigation also raises concerns about the sufficiency of FHFA's responses to Defendants' First Set of Interrogatories to Plaintiff ("Defendants' Interrogatories"), dated May 17, 2012, that seek the identities of the individuals at Fannie Mae and Freddie Mac who were involved in each of the Securitizations.

       After you confirmed that you did not attempt to identify custodians who had information specifically related to the Securitizations, we then discussed your ongoing investigation into the Additional Custodians.  The results of your investigation into the Additional Custodians also calls into question FHFA's process for identifying custodians.  For example, even though you stated that Steven Keleher left Freddie Mac in 2003, Barclays has found e-mails between Mr. Keleher and Barclays dating from 2006 concerning the Securitizations.  In addition, while we understand your investigation of Thomas Flynn is ongoing, you explained that Mr. Flynn was involved in the single family residential mortgage business of Freddie Mac—a business that you contend to be unrelated to the GSE's purchase of PLS.  However, we noted that not only was Mr. Flynn identified as one of four contacts on a document setting forth Freddie Mac's investment requirements for PLS, but he also communicated with Barclays employees concerning the Securitizations.[1]  Similarly, although your investigation indicated that Cindy Workman was a paralegal and therefore not involved in the Securitizations, Barclays has identified e-mails between Ms. Workman and Barclays apparently showing that Ms. Workman was involved in collecting and/or reviewing the due diligence findings of third party diligence firms such as Bohan.  Because all of the Additional Custodians identified in Mr. Fritsch's June 25 e-mail appear to have information relevant to the Securitizations, Barclays continues to request that you add the Additional Custodians to your custodian list.

       <u>E-mail Retention</u>.  Based on our discussion, we understand that prior to September 2008, Freddie Mac's e-mail backup tapes were overwritten every thirty days.  However, some e-mail backup tapes from the period 2005 through 2008 were preserved,

---

[1]    Notwithstanding the fact that Mr. Flynn appears to have been involved in Freddie Mac's PLS business and its single family residential mortgage business, FHFA has refused to provide a response to Defendants' third interrogatory, which sought the identity of individuals employed by Fannie Mae or Freddie Mac who were involved in, approved, or were responsible in any way for the GSEs' relationships with originators.

Manisha M. Sheth, Esq.                                                                    -3-

and you will consult with your client to determine the periods and employees these tapes covered.  We also understand that to the extent they exist, all of Freddie Mac's e-mail backup tapes from the period 2005 through 2008 have been restored, and your client will search the custodians on these e-mail backup tapes for responsive documents.

        With respect to Fannie Mae, we understand that all e-mails for the period 2005 through 2008 were saved and are searchable, including former employees' e-mails and e-mails that had been deleted by a custodian.  You also indicated that Fannie Mae's e-mail backup tapes for the relevant period for Fannie Mae custodians have all been restored.  Please let us know if our understanding of these e-mail retention issues is incorrect in any respect.

        <u>Central or Shared Deal Files</u>.  You indicated that Freddie Mac and Fannie Mae had central or shared deal files that can be produced on an expedited basis without applying search terms.  Barclays agrees to produce on a prioritized basis the deal files it had located to date.

        <u>Job Functions</u>.  We noted that—based on our ongoing investigation to date—we believe that the custodians that Barclays proposed on June 11 are likely to have information related to the job functions identified by FHFA in Alex Ng's June 21, 2012 e-mail, with certain limited exceptions.  For example, Barclays' custodian list does not provide coverage for function 6, which is applicable to the fraud complaints only.  In addition, Barclays has not yet been able to identify specific custodians covering functions 13 (repurchase requests) and 14 (servicing).  With respect to function 13, as we discussed, Barclays only provided limited representations and warranties on two Securitizations, and it has not located to date any repurchase demands for these deals.  In addition, with respect to function 14, Barclays did not service any of the mortgages that collateralized the Securitizations.  However, we noted that it was possible that the custodians Barclays has identified to date would have information responsive to functions 13 and 14 to the extent such information exists.  Barclays also stated that it was continuing to search for custodians or documents responsive to function 11, and that it was attempting to determine the Barclays entity for which each of its proposed custodians worked.  In addition, Barclays reserved its rights to supplement its custodian list and search terms in the likely event that document discovery provides additional insight into the roles Barclays employees had with respect to the Securitizations at issue.

        <u>Custodians from Other RMBS Investigations or Litigations</u>.  You asked whether Barclays would be willing to provide a list of custodians from its other RMBS litigations or investigations.  I stated that Barclays would consider this request if FHFA provided reciprocal disclosure of Fannie Mae and Freddie Mac custodians in its other

Manisha M. Sheth, Esq.                                                                        -4-

RMBS litigations or investigations, including any litigation or investigation concerning securitizations issued by Fannie Mae and Freddie Mac.  You indicated that you would confer with your client and revert on FHFA's position.

        <u>FHFA's Proposed Additions to Barclays' Custodian List</u>.  We are reviewing with our client your proposed additions to Barclays' custodian list, and will revert shortly to discuss.

        <u>FHFA's Responses to Defendants' Interrogatories</u>.  Finally, based on our bilateral meet and confers and the group meet and confers, it is apparent that FHFA's responses to Defendants' Interrogatories are incomplete.  Barclays therefore requests that FHFA supplement its responses to Interrogatories Nos. 1 and 3 promptly.  FHFA's failure to comply with its discovery obligations is impeding the efficient litigation of this matter, and is jeopardizing the discovery deadlines ordered by the Court.  Barclays reserves the right to move the Court to compel disclosure and to seek other relief if FHFA fails to provide the names of individuals it currently knows to be responsive to these Interrogatories.  We look forward to receiving your supplemental response to these Interrogatories.  If you are flatly refusing to supplement your responses to these Interrogatories with the names of known individuals responsive to these Interrogatories, please let us know forthwith so we can take the appropriate action.

        Please contact me (212-558-3082) or my colleague Joshua Fritsch (212-558-3181) if you have any questions regarding the issues discussed above.

        Sincerely,

        *Jeffrey Scott / TCW*

        Jeffrey T. Scott

cc:    Kanchana W. Leung
       (Kasowitz, Benson, Torres & Friedman LLP)

# APPENDIX A

**Farbiarz, Adam J.**

| | |
|---|---|
| **From:** | Fritsch, Joshua J. |
| **Sent:** | Monday, June 25, 2012 6:35 PM |
| **To:** | manishasheth@quinnemanuel.com; serafinashishkova@quinnemanuel.com |
| **Cc:** | Scott, Jeffrey T.; Hu, Ellen C.; Farbiarz, Adam J. |
| **Subject:** | FHFA v. Barclays |

Manisha,

As discussed on our meet-and-confer call earlier today, we believe that the below GSE employees should be included in FHFA's custodian list on account of their involvement with certain transactions at issue in the two actions in which Barclays has been named as defendant.  As discussed, none of these employees is reflected on FHFA's June 11 custodian list.

This list is based on Barclays' ongoing review of documents for the securitizations at issue in the actions.  Because this list only reflects Barclays' current understanding concerning of the GSE custodians who may have relevant information, we reserve the right to seek additional custodians in the future.

Also, deals with an asterisk are deals at issue in the FHFA v. Ally action; the remaining deals are at issue in the FHFA v. Barclays action.

Finally, could we please move our follow up meet and confer on Wednesday to 4:30 from 5?

Thanks,

Josh

| <u>GSE</u> | <u>GSE Employee</u> | <u>Securitization</u> |
|---|---|---|
| **Fannie Mae** | **Mansoor Malbari** | **CBASS 2006-CB1** |
| **Fannie Mae** | **Kevin Tock** | **ARSI 2005-W3** |
| **Fannie Mae** | **Cindy Workman** | **FHLT 2006-C** |
| **Freddie Mac** | **Amy-Lynn Debone** | **CBASS 2007-CB2** |
| **Freddie Mac** | **Thomas Flynn** | **ARSI 2005-W3**<br>**ARSI 2006-W2**<br>**AMSI 2005-R10**<br>**ARSI 2005-W5**<br>**CBASS 2006-CB1**<br>**FHLT 2005-D** |
| **Freddie Mac** | **Lori Geftic** | **CBASS 2006-CB1**<br>**RASC 2006-KS9***<br>**ARSI 2006-W2** |
| **Freddie Mac** | **Geraldine Idrizi** | **ARSI 2006-W2** |
| **Freddie Mac** | **Steven Keleher** | **AMSI 2005-R10**<br>**ARSI 2005-W5** |

| Freddie Mac | Chad Levrini | FHLT 2005-D<br>ARSI 2006-W2<br>ARSI 2006-W5<br>CBASS 2006-CB1<br>AMSI 2005-R10 |
| --- | --- | --- |
| Freddie Mac | Teresa Malisko | RASC 2006-KS9* |
| Freddie Mac | Howard Mason | CBASS 2007-CB2<br>RASC 2006-KS9* |
| Freddie Mac | Beth Ryan | RASC 2006-KS9* |
| Freddie Mac | Lenore Stanton Kelly | RASC 2006-EMX8*<br>RASC 2006-KS9* |

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

BETH A. STEWART
(202) 434-5075
bstewart@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

July 6, 2012

**VIA EMAIL**

Christine Chung
Manisha Sheth
Quinn Emmanuel
51 Madison Avenue, 22nd floor
New York, NY 10010

>           Re:     **FHFA v. BoA, No. 11-cv-6195**
>                   **FHFA v. ML, No. 11-cv-6202**
>                   **FHFA v. First Horizon, No. 11-cv-6193**

Dear Christine and Manisha:

On behalf of the Bank of America ("BofA") and Merrill Lynch ("ML") Corporate Defendants, the purpose of this letter is to summarize our understanding of the FHFA's positions on certain discovery items discussed during multiple meet-and-confers over the last few weeks. Please let us know by Tuesday, July 10, 2012 if you have changed any of your positions on any of the items below:

## Defendants' Interrogatories to FHFA

To facilitate identification of custodians and efficiently conduct discovery, Plaintiff and Defendants committed to an accelerated schedule for responding to interrogatories concerning persons within their organizations who potentially have knowledge of key issues in the above cases. On May 17, 2012, Defendants propounded three interrogatories to FHFA. The FHFA responded on May 31, 2012 and supplemented its responses on June 11, 2012.

Because FHFA's limited responses omitted individuals Defendants had themselves identified as responsive, and appeared on their face implausible in a set of cases involving more than 500 securitizations, Defendants have repeatedly attempted to confer with FHFA about the scope of FHFA responses to all three interrogatories. For example, during a meet-and-confer on

WILLIAMS & CONNOLLY LLP

June 1, 2012, the FHFA admitted that it was withholding the identity of people with knowledge of or participation in the Securitizations, but declined to disclose the basis for doing so.  (My notes reflect the following exchange:  Question:  "What was basis on which you chose to disclose some and disclose others?"  FHFA:  "We are not under any obligation to tell you that."  Question:  "Are you refusing to tell us the volume of names withheld on the basis of objections?"  (FHFA declined to even answer as to whether it was refusing to answer.)).

In addition to Defendants' attempts to collectively engage you on this issue during meet-and-confers, several Defendants have attempted to follow up with you bilaterally.  For example, in a June 18, 2012 letter, the Ally Defendants requested that FHFA "[s]tate whether plaintiff is aware of *any* additional individuals whose identities would be responsive to Interrogatories Nos. 1 and 2.  If FHFA is aware of such individuals, state in detail your basis for refusing to disclose the identities of those individuals."  *Id.* at 2.  On June 19, 2012, FHFA responded that it "will not meet and confer on common issues 16 different times," and that Ally should "raise any purported deficiencies in plaintiff's discovery responses in the next scheduled meet and confer session."  *Id.* at 2.

Yet, when Defendants raised the issue on the next all-party meet-and-confer on June 21, FHFA would say only that it is standing by its interrogatory responses, and that it had done a reasonable search to respond to the interrogatories.  Despite repeated inquiries from Defendants both collectively and in bilateral calls, FHFA continues to withhold the identities of unknown numbers of responsive individuals for undisclosed reasons.  It is not sufficient to say that you have unilaterally withheld responsive discovery based on your unarticulated "discretion" or "judgment."  It is precisely the rationale predicating your unilateral decision to withhold discovery we need to know in order to determine whether there is a dispute as to your responses.  It is similarly insufficient to say you withheld responsive names on the basis of having objected to the interrogatories as overbroad, given that you have declined to articulate the grounds on which you chose to provide some names but unilaterally withheld others.

If you have any further information about the grounds on which you withheld names in response to Interrogatories 1 and 2, please do so by Tuesday, July 10.  Please feel free to copy counsel for all defendants on your response if you want to avoid addressing this issue "sixteen times."

FHFA's non-response to Interrogatory 3 is even more infirm.  FHFA has provided *zero* names in response to Interrogatory 3, which asked FHFA to identify individuals who interacted with the originators whose conduct FHFA has placed at issue.  Following multiple meet-and-confers concerning your refusal to provide this discovery, you have indicated FHFA might be willing to respond if Defendants limited the interrogatory to those individuals who were employed in the private label security ("PLS") side of the business, excluding any individuals who interacted with originators by virtue of their employment in other divisions of the GSEs.  FHFA takes this position even though its own discovery requests to Defendants ask for information about the Defendants' knowledge of originator practices without restricting them to particular lines of business.  *See, e.g.*, Request 23 of Plaintiff's Second Request for the Production of Documents, requesting "[a]ll documents obtained, provided, or made available to you by an Originator or Servicer relating to an Originator's or Servicer's policies or procedures

2

WILLIAMS & CONNOLLY LLP

applicable to the Mortgage Loans;" *see also* Request 14.  Please let me know by July 10 if you have changed your position.

### Custodians

As you noted in your July 3, 2012 letter to Judge Cote, Plaintiff and Defendants continue to propose custodians to each other that they identify in the course of ongoing due diligence.  We have suggested several additional custodians to you and look forward to hearing from you regarding whether you will accept them.  Of course, our ability to meaningfully discuss your custodians with you is dependent on your complete response to Defendants' interrogatories.

You have indicated to us, however, that FHFA will not include individuals who may have information about originators at issue in the case, but who were not employed in or in direct communication with individuals on the PLS side of the GSEs.  You agreed to only one exception—certain persons in a policy role applicable across the securitizations at issue in the case, such as persons in the risk department.  Thus, for example, you refuse to collect any documents from any Freddie Mac employee who interacted with originators at issue in this case but who worked in the single-family division.

In addition, on June 26, 2012, Defendants proposed a list of 16 functional areas for any GSEs' custodian lists to cover.  You have represented that your proposed custodians cover some of these functions, but not all of them.  You have declined to provide coverage for:

- Item 8 on Defendants' list – this item requested that you include custodians "who conducted, participated in, managed or procured due diligence or re-underwriting, or reviewed due diligence results, or were involved in any aspect of pricing decisions, on any loans purchased by Fannie and Freddie that were originated by loan originators involved in the Securitizations, including individuals who performed these functions for purposes of aggregating loan pools for Fannie and Freddie securitizations."  You have stated that this topic is covered by your custodian list as to persons on the PLS side and people who liaised with them, but not as to individuals beyond that.

- Item 9 on Defendants' list – this item requested "individuals who conducted, participated in, managed or procured quality assessments or qualification reviews of loan originators involved in the Securitizations and who communicated with loan originators about those assessments or reviews."  You have stated that this topic is covered by your custodian list as to persons on the PLS side and people who liaised with them, but not as to individuals beyond that.

- Item 10 on Defendants' list – this item requested coverage of "individuals who communicated or liaised with rating agencies concerning securitizations that involved loan originators at issue in the Securitizations."  You have stated that you will provide as custodians the traders who worked on the specific securitizations in the case ("Securitizations"), and that to the extent they communicated with the ratings agencies, this topic would be covered.  However, you have refused to identify as custodians persons who otherwise interacted with the ratings agencies.

WILLIAMS & CONNOLLY LLP

- Item 11 on Defendants' list – this item requested "individuals who prepared or approved offering documents for Fannie and Freddie securitizations to the extent those securitizations involved loan originators at issue in the Securitizations." You have refused to identify any such custodians.

- Item 12 on Defendants' list – this item requested "individuals who were responsible for analyzing repurchase requests made by Fannie and Freddie with respect to loans originated by loan originators involved in the Securitizations." You have refused to identify any such custodians.

- Item 13 on Defendants' list – this item requested "individuals who were responsible for developing and setting Fannie and Freddie underwriting guidelines and any exceptions to those guidelines." You have stated that you will not provide such custodians because, you represented, there were no guidelines relating to underwriting or exceptions to underwriting guidelines on the PLS side of the GSEs' business.

- Item 15 on Defendants' list – this item requested "individuals responsible for creating, maintaining, and running Fannie and Freddie models, including AVMs and models with respect to macroeconomic conditions and the housing market." You have stated that you will identify the Director of PLS Analytics, but will not otherwise provide any such custodians.

## Confidential Witnesses

During multiple meet-and-confers, we have requested you to disclose the names of the confidential witnesses referenced in the amended complaints. FHFA initially declined to do so until such time as defendants provided "legal authority" so requiring. While not obliged to educate FHFA concerning its responsibilities, we sent you on June 27, 2012 an email providing such legal authority, including, inter alia, Rule 26(a) regarding Initial Disclosures.

You then changed your position to advise that FHFA will identify all confidential witness, but not until after the resolution of the motions to dismiss. Such delay is not acceptable. As you know, those motions will not be fully briefed until this Fall. According to your arbitrary timetable for disclosure, Defendants would be precluded from any document discovery of confidential witnesses. The time for disclosing the names has come and gone; FHFA was obligated to disclose these names on June 4, 2012, when the parties exchanged Rule 26(a) disclosures. Please provide the names by July 10.

## Document Productions

Although the parties have not yet had any meet-and-confers on their respective objections and responses to propounded document requests, there have been multiple conversations about prioritized productions of documents. Defendants have requested FHFA to prioritize the production of documents relating to the "forensic reviews" that FHFA placed at issue and relied on in its amended complaints. You have refused to provide this basic discovery, asserting work

WILLIAMS & CONNOLLY LLP

product privilege over matter set forth in the complaint. Please let us know by July 10 if your position had changed.

All parties have requested prioritized production of loan files. BofA and ML are working to produce all loan files in their possession, custody, or control for the supporting loan groups. We will begin producing the loan files on a rolling basis with an aim to meet the September 30 deadline for substantial completion of document discovery.

You have advised that FHFA will produce to us all loan files in its possession, custody, or control for the supporting loan groups, and will prioritize the production of all loan files that support the "forensic review" alleged in its complaints. Please advise if that position has changed. Please also advise when we can expect that production.

**Shared Drives**

We remain in discussion with you about the scope of our respective search terms. However, under some circumstances, ESI should be produced without first running search terms. For example, shared folders that can reasonably be deemed relevant (i.e., folders for specific securitizations at issue) should be reviewed and produced without any search term cut. You have indicated that you will do so; please confirm. We welcome the chance to discuss this with you in more specificity.

*     *     *

We remain happy to have further telephonic or in-person meet-and-confers with you on any issue. However, so that we can accurately represent any change in your positions, please respond to this letter in writing by July 10.

Thank you for your anticipated cooperation.

Sincerely,

Beth A. Stewart

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

July 9, 2012

*Via E-Mail*

Adam M. Abensohn, Esq.,
    Quinn Emmanuel Urquhart & Sullivan L.L.P.,
        51 Madison Avenue, 22nd Floor.

Henry Brownstein, Esq.,
    Kasowitz, Benson, Torres & Friedman, L.L.P.,
        1633 Broadway,
           New York, New York  10019.

> Re:    *Federal Housing Finance Agency* v. *Goldman Sachs & Co., et al.*,
> No. 11-cv-6198 (DLC) (S.D.N.Y.); *Federal Housing Finance Agency* v. *Ally Financial, Inc. et al.*, No. 11-cv-7010 (DLC) (S.D.N.Y.); *Federal Housing Finance Agency* v. *JPMorgan Chase, et al.*, No. 11-cv-6188 (DLC) (S.D.N.Y.)

Dear Messrs. Abensohn and Brownstein:

        On behalf of Goldman, Sachs & Co., GS Mortgage Securities Corp., Goldman Sachs Mortgage Company, The Goldman Sachs Group, Inc., and Goldman Sachs Real Estate Funding Corp. (collectively, "Goldman Sachs"), I write regarding plaintiff's proposal for discovery of its custodians and files in the above-captioned actions ("Actions").  Goldman Sachs reserves its rights with respect to all other discovery matters.

        *Freddie Mac and Fannie Mae Custodians.*  Based on Goldman Sachs' review of the Freddie Mac and Fannie Mae organizational charts produced by plaintiffs,

Adam Abensohn, Esq.                                                              -2-
Henry Brownstein, Esq.

as well as a review of its own files, we request that plaintiffs add the individuals
described below for the following reasons:[1]

| | |
|---|---|
| Christina Baldwin | Ms. Baldwin communicated with Goldman Sachs concerning potential securities purchases and diligence, including third party due diligence firms, and was involved in the due diligence performed by Fannie Mae on its loans and securities purchases. |
| David C. Benson | Mr. Benson was Freddie Mac's Executive Vice President of Capital Markets & Treasury (FHFA00000020).  Custodians Bill Quinn and Ramon de Castro reported to him and his responsibilities likely included oversight over, and communications about, the securities in question. |
| Thomas Flynn | In his role as Investment Strategy Director (FHFA00000032), Mr. Flynn was involved in substantive communications with Goldman Sachs about the deals at issue, including the terms of the deals and repurchasing requirements. |
| Lori Geftic | Ms. Geftic was substantively involved in communications about one or more of the securities at issue, as well as in communications with Goldman Sachs about Freddie Mac's investment requirements. |
| Andrew Gillmer | Mr. Gillmer, as Portfolio Management Director of Freddie Mac, was substantively involved in assembling, enforcing and communicating with Goldman Sachs about Freddie Mac's investment requirements during the earlier part of the relevant time period. |
| Rock (first name unknown) | Mr. or Ms. Rock was identified as Fannie Mae's Vice President for Counterparty Risk during the period in |

---

[1]    As discussed during the parties' June 28, 2012, meet and confer, Goldman Sachs
has provided a brief explanation of its current understanding of these proposed
custodians' significance.  This explanation is based on the information available
to Goldman Sachs at this time, and does not substitute for plaintiff's own diligent
search of the information available to it required by the Federal Rules.  Goldman
Sachs reserves all rights to supplement its requests.

Adam Abensohn, Esq.                                                              -3-
Henry Brownstein, Esq.

| | question.  (FHFA00000002) |
|---|---|
| Richard Sorkin | In his role as Fannie Mae's Director of Structured Transaction, Mr. Sorkin was substantively involved in communicating with Goldman Sachs concerning Fannie Mae's requirements for its loan purchases and collateral. |
| Sullivan (first name unknown) | Mr. or Ms. Sullivan was identified as Fannie Mae's Senior Vice President for Credit Policy and Risk Management during the period in question (FHFA00000014) and, as such, would have had substantive communications concerning the subprime loans Fannie Mae held on its own books. |

If, based on your knowledge and the diligence you have conducted so far in the Action, you believe that other custodians are more likely to have relevant discovery concerning the topics described, please identify these individuals for us.

*OFHEO Custodians.*  Plaintiff FHFA proposes to search the files of three of its own employees—Deirdre Kvartunis, Vikas Mehta and Phillip Millman—for relevant documents, but has refused to conduct a similar search of the files of employees of its predecessor agency, the Office of Federal Housing Enterprise Oversight ("OFHEO").  Because OFHEO was the GSEs' regulator during the time period when the securitizations at issue were purchased, we do not believe it is proper to exclude OFHEO custodians from discovery.  OFHEO was charged with, among other things, assessing the GSEs' risk management policies, and we understand that OFHEO employees regularly communicated with and about both Fannie Mae and Freddie Mac.  Employees of OFHEO regularly examined both entities, and OFHEO employed Examiners-In-Charge of both Freddie Mac and Fannie Mae.  Moreover, OFHEO employees authored numerous "Working Papers" about the mortgages held by Freddie Mac and Fannie Mae.  As such, discovery from OFHEO is unquestionably relevant, and is reasonably calculated to lead to the discovery of admissible evidence in this Action—a point you appear to have conceded by including three FHFA custodians in your initial proposal.

Adam Abensohn, Esq.                                                              -4-
Henry Brownstein, Esq.


          We would appreciate a prompt response to this letter.


                                Sincerely,


                                Jordan T. Razza


cc (by e-mail):          Christine Chung, Esq.
                      Adam Abensohn, Esq.
                      Manisha Sheth, Esq.
                      Jeffrey Miller, Esq.
                      Joshua Ellis
                      (Quinn Emanuel Urquhart & Sullivan, LLP)

                      Hector Torres, Esq.
                      Christopher Johnson, Esq.
                      Michael Hanin, Esq.
                      Kanchana Leung, Esq.
                      (Kasowitz, Benson, Torres & Friedman, L.L.P.)

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-293-6330

WWW.SULLCROM.COM

*1701 Pennsylvania Avenue, N.W.*

*Washington, D.C. 20006-5805*

NEW YORK • LOS ANGELES • PALO ALTO

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

July 16, 2012

Via E-mail

Richard A. Schirtzer, Esq.,
        Quinn Emanuel Urquhart & Sullivan LLP,
            51 Madison Avenue, 22nd Floor,
                New York, New York  10010-1601.

Adam M. Abensohn, Esq.,
        Quinn Emanuel Urquhart & Sullivan LLP,
            51 Madison Avenue, 22nd Floor,
                New York, New York  10010-1601.

>           Re:     *Federal Housing Finance Agency* v. *Nomura Holding America Inc., et al.*, 11 CIV. 6201 DLC (S.D.N.Y.)

Dear Richard and Adam:

On behalf of Nomura Holding America, Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc. and Nomura Securities International, Inc., (collectively, "Nomura"), I write in response to Richard's letter of July 12, 2012, with regard to certain discovery issues specific to Nomura.  Nomura reserves its rights with respect to all other discovery matters, including matters that will be addressed jointly by defendants in the coordinated cases brought by FHFA.

*First*, concerning the additional GSE custodians proposed in our June 25 letter, your contention that "Defendants failed to provide meaningful information about the reasons such [custodians] should be appropriate for inclusion" is incorrect with respect to Nomura.  At our June 29 meet and confer, we provided the information below showing that the following individuals worked in the PLS group for one of the GSEs and had direct interactions with Nomura:

Richard A. Schirtzer, Esq.                                                        -2-
Adam M. Abensohn, Esq.

| Custodian | Information Provided to FHFA on June 29 |
|---|---|
| Howard Mason (Freddie) | Reviewed loan tapes for Nomura deals at issue in this case |
| James Jeffery (Freddie) | Reviewed loan tape for a Nomura deal offered near the same time as deals at issue in this case |
| Donna Brown (Freddie) | Reviewed loan tape for a Nomura deal offered near the same time as deals at issue in this case |
| Cindy Workman (Fannie) | Reviewed loan tape for a Nomura deal offered near the same time as deals at issue in this case |
| Michelle Baker (Freddie) | Conducted onsite operational review for Nomura's application with Freddie's Counterparty Credit Risk Management department |
| Margaret Davis (Fannie) | Nomura's new "Underwriting Consultant" as of November 2005 |
| Julian Boddy (Fannie) | Involved in gathering HMDA data for Nomura deals |
| Amy DeBone (Freddie) | Sent Freddie Mac "Investor Requirements" to Nomura |
| Chad Levrini (Freddie) | Sent Freddie Mac "Investor Requirements" to Nomura |

We reported that the remaining proposed custodians identified in our June 25 letter appeared to have been outside the PLS groups at the GSEs, and you informed us that those individuals would not be made custodians for that reason. We stated that we disagreed with the proposition that individuals outside the PLS groups are unlikely to have discoverable information and reserved our right to seek documents from *all* of the custodians identified in our June 25 letter. However, we asked as a preliminary matter that FHFA consider adding the above-listed individuals—who did work in the PLS group—as custodians. Adam agreed to consider the information we had provided and to respond, and I understand that Richard's July 12 letter is intended to provide that response. Because that letter addresses none of the custodians listed above except Mr. Levrini, I request that you explain why the other eight individuals were not added as custodians.

*Second*, as to your request that Defendants "confirm[] that their custodian lists cover the functions proposed by FHFA on June 21," we discussed this matter at our

Richard A. Schirtzer, Esq.                                                   -3-
Adam M. Abensohn, Esq.


June 26 meet and confer.  I pointed out that Alex Ng's June 21 e-mail requested this
confirmation because of FHFA's "concern that the number of individuals named in
Defendants' Initial Disclosures and Responses to FHFA's First Set of Interrogatories is
far greater than the number of proposed custodians."  As we explained on June 26,
because Nomura included as custodians nearly all individuals listed on its Initial
Disclosures, we did not understand this request for confirmation to apply to Nomura.  In
any event, we believe that our custodians cover the relevant job functions listed in Mr.
Ng's e-mail to the extent those functions were performed at Nomura with respect to the
securitizations at issue in this case, except that we will search for documents concerning
certain functions by means other than searches of custodian files.

> *Third*, please explain why you have rejected the following proposed
search terms, which we requested in our June 25 letter:

> > NSI
> > BPO
> > CoreLogic
> > HistoryPro
> > History Pro

The first is a common abbreviation for a corporate defendant in this case.  With respect to
the other four terms, you expressed concern at our June 29 session that they would
capture only documents related to forensic analyses done in preparing the complaints.
We explained that these terms concern diligence performed for the securitizations at issue
in this case, and you agreed to consider applying them for the time period surrounding
our deals.

> With respect to the "supplemental common search terms" that you
proposed for all defendants in your June 21 e-mail, we asked at our June 26 meet and
confer that you provide a list of particular terms from your general template that you
wanted Nomura to add, and you agreed to do so.  We have not received this list.
Nevertheless, given the request in your July 12 letter for a response regarding this topic,
Nomura joined defendants' response sent to you on July 13 by Ted Edelman.

> *Fourth*, attached as Exhibit A is a list of the date range we propose to
search for each custodian.

> *Fifth*, as to your proposal that both sides agree to review "certain files,
folders, or shared drives that relate exclusively to specific securitization deals without the
use of search terms," we agree to this proposal to the extent such files, folders or shared
drives exist.

Richard A. Schirtzer, Esq.                                                                -4-
Adam M. Abensohn, Esq.


    *Finally*, as I informed you at our June 26 meet and confer, Nomura does not keep loan files on a systematic basis and is unable to confirm whether the loan files it does have are the same as those in FHFA's possession or in the possession of third parties.  However, subject to these understandings, Nomura intends to produce the loan files in its possession, custody or control that can be located after a reasonable search, to the extent those loan files relate to loans in the collateral pools backing the certificates at issue in this case.  This position is consistent with FHFA's refusal to respond to Defendants' First Set of Requests for Production of Documents "to the extent they seek documents relating to mortgage loans other than those in the collateral pools backing the particular Certificates that the GSEs purchased in the Securitizations."  Please let me know as soon as possible if you disagree with this approach.

    We remain available to meet and confer regarding these issues.


           Sincerely,

           /s/ Amanda Davidoff

           Amanda Davidoff


cc: Bruce Clark (Sullivan & Cromwell LLP)
  David Dehoney (Sullivan & Cromwell LLP)
  Thomas Rice (Simpson Thacher & Bartlett LLP)
  David Woll (Simpson Thacher & Bartlett LLP)
  Alan Turner (Simpson Thacher & Bartlett LLP)
  Jen Ghaussy (Quinn Emanuel Urquhart & Sullivan LLP)
  Joshua Ellis (Quinn Emanuel Urquhart & Sullivan LLP)

**Exhibit A**

| Name[1] | Title/Position | Date Range to be Searched |
|---|---|---|
| Crowley, Timothy | *Vice President, Transaction Management* Nomura Securities International (2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| Findlay, David | *Senior Managing Director and Chief Legal Officer* Nomura Holding and Nomura Securities *Director* Nomura Asset Acceptance Corp. and Nomura Home Equity Loan, Inc. | Sep. 1, 2005 to May 30, 2007 |
| Graham, John | *Managing Director* Nomura Credit & Capital *President and CEO* Nomura Asset Acceptance Corp | Sep. 1, 2005 to May 30, 2007 |
| Hartnagel, Jeff | *Due Diligence* Nomura Securities International (2005-2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| Kang, Dale | *Collateral* Nomura Securities International (2005-2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| Katz, Steve | *Managing Director, Credit and Whole Loan Trading* Nomura Securities International (2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |

---

[1]      All information provided in this chart is as of the date of one or more of the FHFA Securitizations.

| Name[1] | Title/Position | Date Range to be Searched |
|---|---|---|
| Kim, Su | *AVP, Collateral* Nomura Securities International (2005-2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| Kohout, Joseph | *Director, Due Diligence Manager* Nomura Securities International (2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| LaRocca, N. Dante | *Managing Director, General Information* Nomura Securities (2005-2006) Nomura Credit & Capital (2007) *President and CEO* Nomura Home Equity Loan, Inc. (2001-2008) | Sep. 1, 2005 to May 30, 2007 |
| Lee, Randy | *Assistant Vice President/Associate Vice President, Structuring* Nomura Securities International (2005-2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| Leschak, Jeane | *Director, Transaction Management* Nomura Securities International (2005-2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| Lin, Brian | *Director, Structuring* Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| Lo, John | *Vice President, Collateral/Data* Nomura Securities International (2005-2006) | Sep. 1, 2005 to May 30, 2007 |

| Name[1] | Title/Position | Date Range to be Searched |
|---|---|---|
| Marvin, Brett | *Managing Director, Credit and Whole Loan Trading* Nomura Securities International (2005-2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| McCabe, Don | *Head of Sales & Marketing* Nomura Securities International | Sep. 1, 2005 to May 30, 2007 |
| McLaughlin, Tim | *Vice President, Structuring* Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| Murphy, Brian | *Director* Nomura Credit & Capital | Sep. 1, 2005 to May 30, 2007 |
| Orfe, Michael | *Associate Vice President, Collateral* Nomura Securities International (2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| Sabo, Mendy | *Due Diligence* Nomura Securities International (2005-2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| Stairiker, Kara | *Transaction Management* Nomura Securities International (2005-2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |
| Sugai, Erica | *Transaction Management* Nomura Securities International (2006) Nomura Credit & Capital (2007) | Sep. 1, 2005 to May 30, 2007 |

BRENDAN V. SULLIVAN, JR.
RICHARD M. COOPER
JERRY L. SHULMAN
ROBERT B. BARNETT
DAVID E. KENDALL
JOHN J. BUCKLEY, JR.
TERRENCE O'DONNELL
DOUGLAS R. MARVIN
JOHN K. VILLA
BARRY S. SIMON
KEVIN T. BAINE
STEPHEN L. URBANCZYK
PHILIP J. WARD
F. WHITTEN PETERS
JAMES A. BRUTON, III
PETER J. KAHN
MICHAEL S. SUNDERMEYER
JAMES T. FULLER, III
DAVID D. AUFHAUSER
BRUCE R. GENDERSON
F. LANE HEARD III
STEVEN R. KUNEY
PAUL MOGIN
MARK S. LEVINSTEIN
DANIEL F. KATZ
WILLIAM R. MURRAY, JR.
EVA PETKO ESBER
STEPHEN D. RABER
DAVID C. KIERNAN
LON E. MUSSLEWHITE
HEIDI K. HUBBARD

GLENN J. PFADENHAUER
GEORGE A. BORDEN
ROBERT J. SHAUGHNESSY
DAVID S. BLATT
ARI S. ZYMELMAN
DANE H. BUTSWINKAS
DENNIS M. BLACK
PHILIP A. SECHLER
LYNDA SCHULER
CHARLES D. NIEMEIER
PAUL K. DUEFFERT
R. HACKNEY WIEGMANN
ROBERT M. CARY
KEVIN M. HODGES
DAVID M. ZINN
JOSEPH G. PETROSINELLI
STEVEN M. FARINA
KEVIN M. DOWNEY
THOMAS G. HENTOFF
PAUL B. GAFFNEY
EMMET T. FLOOD
ROBERT A. VAN KIRK
MARCIE R. ZIEGLER
KENNETH C. SMURZYNSKI
JOHN E. SCHMIDTLEIN
CRAIG D. SINGER
JAMES L. TANNER, JR.
J. ANDREW KEYES
M. ELAINE HORN
ENU MAINIGI
MICHAEL F. O'CONNOR

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

www.wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

PAUL T. HOURIHAN
WILLIAM J. BACHMAN
MARGARET A. KEELEY
EDWARD J. BENNETT
TOBIN J. ROMERO
BETH A. LEVENE
THOMAS G. WARD
WILLIAM T. BURKE
LISA M. DUGGAN
JOHN E. JOINER
NICHOLAS J. BOYLE
ADAM L. PERLMAN
ANDREW W. RUDGE
DENEEN C. HOWELL
ALEX G. ROMAIN
DAVID A. FORKNER
JONATHAN M. LANDY
CHRISTOPHER N. MANNING
RYAN T. SCARBOROUGH
JENNIFER G. WICHT
STEPHEN D. ANDREWS
KANNON K. SHANMUGAM
MALACHI B. JONES
THOMAS H. L. SELBY
KEVIN HARDY
EDWARD C. BARNIDGE
JOSEPH M. TERRY
AARON P. MAURER
JON R. FETTEROLF
STEPHEN P. SORENSEN
F. GREG BOWMAN

ANA C. REYES
JONATHAN B. PITT
DAVID I. BERL
ELLEN E. OBERWETTER
EDWARD C. REDDINGTON
DANIEL P. SHANAHAN
VIDYA ATRE MIRMIRA
JESSAMYN S. BERNIKER
RICHMOND T. MOORE
KENNETH J. BROWN
LUBA SHUR
PATRICK H. KIM
WILLIAM P. ASHWORTH
LANCE A. WADE
CHARLES DAVANT, IV
DOV P. GROSSMAN
HOLLY M. CONLEY
MATTHEW V. JOHNSON
CARL R. METZ
JOHN McNICHOLS
_____
OF COUNSEL
PAUL MARTIN WOLFF
WILLIAM E. McDANIELS
JOHN W. VARDAMAN
JEREMIAH C. COLLINS
DAVID POVICH
JOHN G. KESTER
ROBERT P. WATKINS
CAROLYN H. WILLIAMS
GERSON A. ZWEIFACH

July 26, 2012

Via Electronic Mail (christinechung@quinnemanuel.com)

Christine H. Chung
Quinn Emanuel
51 Madison Avenue, 22nd Floor
New York, New York 10010

> Re:  *FHFA v. Bank of America Corp. et al.*, 11 Civ 6195 (S.D.N.Y.)
> *FHFA v. Merrill Lynch & Co., Inc. et al.*, 11 Civ 6202 (S.D.N.Y.)

Dear Christine:

We received FHFA's July 24 Amended Objections and Responses to the Rule 30(b)(6) deposition notice ("Amended Objections"). They raise more questions than they answer, however, and underscore the immediate need for the Rule 30(b)(6) deposition that defendants noticed a month ago.

FHFA's description of the PLAT and addition of custodians from the SF CPRM group confirm our understanding that information from within the GSEs' whole loan businesses played a part in the GSEs' decisions regarding PLS. The information provided in the Amended Objections reflects that persons at Fannie who were members of or communicated with the PLAT regarding the Securitizations or the Originators during the relevant period, as well as persons at Freddie in AMO, CCRM and EORM, are highly relevant persons. At a minimum, these persons include: (1) persons working under Pam Johnson (Fannie), including persons listed under her on FHFA00000008; (2) persons working under Ron Feigles (Freddie) and persons in EORM and CCRM who reviewed originator performance; and (3) persons who we know to have audited or assessed Originators – specifically, Michael Sobczak (Fannie), Karen King (Fannie), Mary Meyers (Freddie), and Pam Padget (Freddie). Please add these persons as custodians. FHFA's Amended Objections also make clear the valuable role that the single-

WILLIAMS & CONNOLLY LLP
Christine H. Chung
July 26, 2012
Page 2

family function had in PLAT's "cross-functional" mission and we, therefore, reiterate defendants' request that FHFA add Tom Lund, former head of Fannie's single family business, who was involved in alerting Fannie to risks associated with single family and PLS. FHFA's Amended Objections also list several GSE Chief Risk Officers as custodians, but noticeably absent is David Andrukonis, Freddie Mac's CRO during the early months of the relevant period. Please add him to your custodian list.

An immediate and complete 30(b)(6) deposition continues to be essential to defendants' identification of relevant GSE custodians. The Amended Objections strongly suggest that many persons played indisputably critical roles, but remain missing from FHFA's custodian list. Merely by way of example,

- In its Amended Objections, FHFA lists certain persons but omits other persons who we understand performed the same or similar critical functions as the listed persons, or who worked within the same business unit or group. For example, Andrew Bonsalle is identified as Senior Vice President – Capital Markets Mortgage Assets (FHFA00000008), a position FHFA identified in its Amended Objections as having responsibility for "various activities related to the purchase of PLS." Yet, Mr. Bonsalle is not listed in the Amended Objections nor is he identified as a custodian.   Other such persons include Jim Cotton, Manoj Singh, Jim Berkovec, Gareth Davies, Shelley Poland, Bob Ryan, Peter Zorn, Chris Morris, Andrew Gillmer, Martin Young, Jorge Reis, Glenn Errigo, and Indy Weerasinghe. FHFA's Amended Objections do not disclose whether there are other persons who held analogous positions to those whom FHFA has identified but have not been designated as custodians.

- FHFA's Amended Objections list the following persons as members of relevant groups — including Lynda Maggio, Scott Sheppard, Clinton Lively, Ramona O'Bannon, Sid Kizziar, Allen Price, Sidney Vince Credle, Devin Parent, Robert Vignato, Hermond Palmer, and Richard Bauerband — and yet these persons are not identified as custodians. The Amended Objections also do not disclose whether there are other employees in these relevant groups who are also not designated as custodians.

- The organizational charts you provided reflect certain personnel in Freddie's Non-Agency PLS group involved in "Bulk Transactions," "Bulk Pricing," and "Structured Transactions." It is unclear what these employees did and why they were not included in your custodian list. By way of example, we understand that Freddie's Bulk Transactions Director, Sally Williamson (n/k/a Sally Baker), was a direct point of contact for communications between Freddie and sponsors

WILLIAMS & CONNOLLY LLP
Christine H. Chung
July 26, 2012
Page 3

concerning Freddie's selection of loans to be included in pools backing GSE
Certificates.  Yet, she is not designated as a custodian.

- FHFA mentions on p. 11 of its Amended Objections that Custodian Kent Willard
  is not listed on the organizational chart FHFA produced.  Defendants should be
  provided with any organizational charts depicting his position, as well as the
  names of other present or former GSE personnel who dealt with the Originators or
  Securitizations but who are not listed on the organizational charts provided.

- With respect to so-called information barriers, the Amended Objections suggest
  that it is FHFA's position that the GSEs' purported restrictions on the
  dissemination of "loan level" and "pool specific" information precluded
  dissemination of any and all information regarding originators' policies, practices,
  performance, and procedures.  Defendants are entitled to question a
  knowledgeable person about any such restrictions and see any documentation
  relating thereto, including any documentation to support FHFA's suggestion that
  the MBS Trading Firewall policy applied to PLS (as opposed to only agency
  MBS), and any inconsistent or contrary writings or practices.

- Please send us the periodic organization charts for each of the Fannie and Freddie
  departments described in FHFA's Amended Objections, as you did for Mike
  Aneiro's and Ron Ratcliffe's organizations.  We have been significantly
  hampered in our preparation of the Rule 30(b)(6) deposition and in our review of
  your proposed custodian list by the fact that we have received departmental
  organization charts during the relevant time period for only two of the relevant
  departments.  We cannot determine whether there are additional employees about
  whom to ask questions without being able to review these charts.

These are just a handful of the questions FHFA's Amended Objections leave unanswered.  Of
course, we have many other questions.  We look forward to the efficient discovery of all relevant
information concerning custodians through the Rule 30(b)(6) process, which is the most efficient
vehicle for obtaining information regarding potential custodians and the other areas described in
our notice.  We reserve all rights to amend or supplement our requests.

Finally, following up on your July 12 letter regarding date ranges for searches, and
reserving all rights to insist on a more inclusive date range, could you please confirm that FHFA
intends to search all documents in the date range for all custodians, even when a custodian held
multiple positions during his or her tenure?  Freddie's Aaron Pas is a good example — even
though Mr. Pas worked in Non-Agency PLS, he is described elsewhere in your response.  We

WILLIAMS & CONNOLLY LLP
Christine H. Chung
July 26, 2012
Page 4

want to be sure that these employees' documents will be searched throughout the date range regardless of the position they held at the time.

Thank you for your prompt attention to these matters.

Sincerely,

*Ted Bennett /by smc*

Edward Bennett

cc:     Counsel of Record (via e-mail)

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1648

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER
DAVID MERCADO

ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN
DAVID R. MARRIOTT

MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI

TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
PAUL C. SAUNDERS

July 26, 2012

<u>FHFA v. Credit Suisse Holdings (USA), Inc., 1:11-cv-6200-DLC</u>
<u>FHFA v. JPMorgan Chase & Co., 1:11-cv-6188-DLC</u>
<u>FHFA v. First Horizon Nat'l Corp., 1:11-cv-6193-DLC</u>
<u>FHFA v. Morgan Stanley, 1:11-cv-6739-DLC</u>
<u>FHFA v. Ally Financial Inc., 1:11-cv-7010-DLC</u>
<u>FHFA v. General Electric Co., 1:11-cv-7048-DLC</u>

Dear Counsel:

      I write on behalf of the Credit Suisse defendants in the above-captioned actions regarding FHFA's proposed custodians. Based on preliminary searches, inquiries and a review of the Fannie Mae and Freddie Mac organizational charts produced by FHFA, Credit Suisse has identified several current and former employees at each of the GSEs who may have information relevant to these actions, but who are not included in FHFA's proposed custodian list attached as Exhibit A to your letter of July 25, 2012. Credit Suisse requests that you add these individuals as custodians.[1] If you decline to add any of these individuals, please explain the basis for that exclusion.

---

    [1] While Credit Suisse has attempted to provide a brief explanation of its current understanding of these proposed custodians' significance, this explanation is based solely on the limited information available to Credit Suisse at this time, and should not be construed as a substitution for FHFA's own diligent search of the information available to it as required by the Federal Rules. Credit Suisse reserves its rights with respect to this and all other discovery matters, including its rights to conduct a 30(b)(6) deposition concerning the identification of additional appropriate GSE custodians and to supplement its custodian requests.

Credit Suisse requests that you add the following Fannie Mae employees:

| Boddy, Julian | Mr. Boddy was involved in substantive communications with Credit Suisse concerning loan-level data for one or more of the securitizations at issue in these actions. |
|---|---|
| Ives, Robert | Mr. Ives is identified as Fannie Mae's Vice President for Mortgage Trading during the relevant time period (FHFA00000025), and, as such, is likely to have documents relevant to these actions. |
| Johnson, Kimberly | Ms. Johnson is identified as Fannie Mae's Vice President for Capital Markets and Credit Risk Management during the relevant time period (FHFA00000024), and, as such, is likely to have documents relevant to these actions. |
| Lawler, Thomas | Mr. Lawler was involved in substantive communications with Credit Suisse concerning relevant issues, including PLMBS underwritten by Credit Suisse. |
| Maloney, Mickey | Mr. Maloney is identified as Fannie Mae's Director of Mortgage Trading during the relevant time period (FHFA00000025), and, as such, is likely to have documents relevant to these actions. |
| Sahadi, Eric | Mr. Sahadi is identified as Fannie Mae's Director of Mortgage Securities Trading during the relevant time period (FHFA00000025), and, as such, is likely to have documents relevant to these actions. |
| Workman, Cindy | Ms. Workman was involved in substantive communications with Credit Suisse concerning loan-level data for one or more of the securitizations at issue in these actions. |

Credit Suisse requests that you add the following Freddie Mac employees:

| Belbase, Eknath | Mr. Belbase is identified as Freddie Mac's Director of Market/Credit Risk and Strategy during the relevant time period (FHFA00000062), and, as such, is likely to have documents relevant to these actions. |
|---|---|
| Chrisman, Chad | Mr. Chrisman was involved in substantive communications with Credit Suisse concerning relevant issues, including the management of Freddie Mac's mortgage securities portfolio. |
| Gillmer, Andrew | Mr. Gillmer was involved in substantive communications with Credit Suisse concerning marketing materials for one or more of the securitizations at issue in these actions. |
| Gupta, Sundeep (Sonny) | Mr. Gupta was involved in substantive communications with Credit Suisse concerning potential loan pools for one or more of the securitizations at issue in these actions. |

| Heller, Emily | Ms. Heller was involved in substantive communications with Credit Suisse concerning relevant issues, including the management of Freddie Mac's mortgage securities portfolio. |
| Keleher, Steve | Mr. Keleher was involved in substantive communications with Credit Suisse concerning marketing materials for one or more of the securitizations at issue in these actions. |
| McCreary, Anthony | Mr. McCreary was involved in substantive communications with Credit Suisse concerning relevant issues, including the performance of subprime loans and PLMBS underwritten by Credit Suisse. |
| Poland, Shelley | Ms. Poland is identified as Freddie Mac's Vice President of Mortgage Credit Risk Management during the relevant time period (FHFA00000134), and, as such, is likely to have documents relevant to these actions. |
| Ryan, Bob | Mr. Ryan is identified as Freddie Mac's Vice President of Portfolio Management and Pricing during the relevant time period (FHFA00000134), and, as such, is likely to have documents relevant to these actions. |
| White, Douglas | Mr. White was involved in substantive communications with Credit Suisse concerning relevant issues, including Freddie Mac's purchase of mortgage loans from Credit Suisse. |

   Please also confirm that you are searching for responsive documents in all of the following email repositories: absdata@freddiemac.com, abs_docs@freddiemac.com, fre_pricing@freddiemac.com and gse_goal_analysis@freddiemac.com.

   If, based on your knowledge and the diligence you have conducted so far in connection with these actions, you believe that any other custodian (including supervisors of any of the employees identified above) is likely to have documents relevant to these actions, Credit Suisse requests that you identify any such individual and add that individual as a custodian.

Please let me know if you have questions concerning any of the foregoing.

Sincerely,

Lauren A. Moskowitz

Philippe Z. Selendy
Manisha M. Sheth
Christine Chung
Wing F. Ng
    Quinn Emanuel Urquhart & Sullivan, LLP
       51 Madison Avenue, 22nd Fl.
         New York, NY 10010

Marc E. Kasowitz
Hector Torres
Christopher P. Johnson
Michael Hanin
Kanchana Wangkeo Leung
    Kasowitz, Benson, Torres & Friedman, LLP
       1633 Broadway
         New York, NY 10010

BY EMAIL

# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                      :

FEDERAL HOUSING FINANCE AGENCY, etc.,    :
                                        :   11 Civ. 5201 (DLC)
              Plaintiff,    :
        v.                         :

UBS AMERICAS, INC., et al.,                :
              Defendants.    :
------------------------------------------------------------------ x
                                        :

FEDERAL HOUSING FINANCE AGENCY, etc.,    :
                                        :   11 Civ. 6188 (DLC)
              Plaintiff,    :
        v.                         :

JPMORGAN CHASE & CO., et al.,             :
              Defendants.    :
------------------------------------------------------------------ x
                                        :

FEDERAL HOUSING FINANCE AGENCY, etc.,    :
                                        :   11 Civ. 6189 (DLC)
              Plaintiff,    :
        v.                         :

HSBC NORTH AMERICA HOLDINGS, INC., et  :
al.,                                         :
              Defendants.    :
------------------------------------------------------------------ x
                                        :

FEDERAL HOUSING FINANCE AGENCY, etc.,    :
                                        :   11 Civ. 6190 (DLC)
              Plaintiff,    :
        v.                         :

BARCLAYS BANK PLC, et al.,               :
              Defendants.    :
------------------------------------------------------------------ x

```
------------------------------------------------------------- x
                                                              :
                                                              :
FEDERAL HOUSING FINANCE AGENCY, etc.,                         :
                                                              :
                 Plaintiff,                                   :   11 Civ. 6192 (DLC)
        v.                                                    :
                                                              :
DEUTSCHE BANK AG, et al.,                                     :
                                                              :
                 Defendants.                                  :
------------------------------------------------------------- x
                                                              :
                                                              :
FEDERAL HOUSING FINANCE AGENCY, etc.,                         :
                                                              :
                 Plaintiff,                                   :   11 Civ. 6193 (DLC)
        v.                                                    :
                                                              :
FIRST HORIZON NATIONAL CORP., et al.,                         :
                                                              :
                 Defendants.                                  :
------------------------------------------------------------- x
                                                              :
                                                              :
FEDERAL HOUSING FINANCE AGENCY, etc.,                         :
                                                              :
                 Plaintiff,                                   :   11 Civ. 6195 (DLC)
        v.                                                    :
                                                              :
BANK OF AMERICA CORP., et al.,                                :
                                                              :
                 Defendants.                                  :
------------------------------------------------------------- x
                                                              :
                                                              :
FEDERAL HOUSING FINANCE AGENCY, etc.,                         :
                                                              :
                 Plaintiff,                                   :   11 Civ. 6196 (DLC)
        v.                                                    :
                                                              :
CITIGROUP INC., et al.,                                       :
                                                              :
                 Defendants.                                  :
------------------------------------------------------------- x
```

```
-------------------------------------------------------------------- x
                                                                      :
                                                                      :
FEDERAL HOUSING FINANCE AGENCY, etc.,                                 :
                                                                      :
                   Plaintiff,                                         :   11 Civ. 6198 (DLC)
            v.                                                        :
                                                                      :
GOLDMAN, SACHS & CO., et al.,                                         :
                                                                      :
                   Defendants.                                        :
-------------------------------------------------------------------- x
                                                                      :
                                                                      :
FEDERAL HOUSING FINANCE AGENCY, etc.,                                 :
                                                                      :
                   Plaintiff,                                         :   11 Civ. 6200 (DLC)
            v.                                                        :
                                                                      :
CREDIT SUISSE HOLDINGS (USA), INC., et al.,                           :
                                                                      :
                   Defendants.                                        :
-------------------------------------------------------------------- x
                                                                      :
                                                                      :
FEDERAL HOUSING FINANCE AGENCY, etc.,                                 :
                                                                      :
                   Plaintiff,                                         :   11 Civ. 6201 (DLC)
            v.                                                        :
                                                                      :
NOMURA HOLDING AMERICA, INC., et al.,                                 :
                                                                      :
                   Defendants.                                        :
-------------------------------------------------------------------- x
                                                                      :
                                                                      :
FEDERAL HOUSING FINANCE AGENCY, etc.,                                 :
                                                                      :
                   Plaintiff,                                         :   11 Civ. 6202(DLC)
            v.                                                        :
                                                                      :
MERRILL LYNCH & CO., INC., et al.,                                    :
                                                                      :
                   Defendants.                                        :
-------------------------------------------------------------------- x
```

```
------------------------------------------------------------------ x
                                                          :
                                                          :
                                                          :
FEDERAL HOUSING FINANCE AGENCY, etc.,                     :
                                                          :
                    Plaintiff,                            :   11 Civ. 6203 (DLC)
            v.                                            :
                                                          :
SG AMERICAS, INC., et al.,                                :
                                                          :
                    Defendants.                           :
------------------------------------------------------------------ x
                                                          :
                                                          :
FEDERAL HOUSING FINANCE AGENCY, etc.,                     :
                                                          :
                    Plaintiff,                            :   11 Civ. 6739 (DLC)
            v.                                            :
                                                          :
MORGAN STANLEY, et al.,                                   :
                                                          :
                    Defendants.                           :
------------------------------------------------------------------ x
                                                          :
                                                          :
FEDERAL HOUSING FINANCE AGENCY, etc.,                     :
                                                          :
                    Plaintiff,                            :   11 Civ. 7010 (DLC)
            v.                                            :
                                                          :
ALLY FINANCIAL INC., et al.,                              :
                                                          :
                    Defendants.                           :
------------------------------------------------------------------ x
                                                          :
                                                          :
FEDERAL HOUSING FINANCE AGENCY, etc.,                     :
                                                          :
                    Plaintiff,                            :   11 Civ. 7048 (DLC)
            v.                                            :
                                                          :
GENERAL ELECTRIC COMPANY, et al.,                         :
                                                          :
                    Defendants.                           :
------------------------------------------------------------------ x
```

**DEFENDANTS' FIRST SET OF INTERROGATORIES
TO PLAINTIFF FHFA**

Pursuant to Fed. R. Civ. P. 26 and 33, Defendants hereby request that Plaintiff

Federal Housing Finance Agency ("FHFA") respond to the following interrogatories.  These

interrogatories seek information needed for Defendants to respond to the structure and schedule

for the management of these cases proposed in the Court's May 15, 2012 order.  Given the June

6, 2012 deadline for submissions in response to the Court's proposal, Defendants request that

Plaintiff provide the information requested on or before May 31, 2012.

**DEFINITIONS**

1.      The term "Defendants" refers to all defendants named in the 16 above-captioned

actions.

2.      The terms "you," "your," and "Plaintiff" mean Plaintiff FHFA, the Office of

Federal Housing Enterprise Oversight ("OFHEO"), Federal Home Loan Mortgage Corporation

("Freddie Mac"), Federal National Mortgage Association ("Fannie Mae") (collectively "GSEs"),

their attorneys, and all persons acting or purporting to act on their behalf.

3.      The words "and" and "or" are to be construed both conjunctively and

disjunctively, and each includes the other wherever a dual construction will serve to bring within

the scope of these interrogatories any responses that would otherwise not be brought within their

scope.

4.      The term "any" shall be construed to mean "any and all."

5.      The term "Communication" means anything that is transmitted, sent and/or

received, by and/or through any and all means, including, but not limited to, verbal, written,

electronic or any other form of communicating.

1

3.     Identify all persons employed by you or acting on your behalf who participated in, were involved in, approved, or were responsible in any way for the GSEs' relationships, including as purchaser of loans, with any mortgage loan originator disclosed in the prospectus supplements for the Securitizations.  Please specify which person(s) had responsibility for which originator(s).

May 17, 2012

Respectfully submitted,

/s/ Thomas C. Rice
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Alan C. Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017-3954

*Attorneys for Defendants Deutsche Bank AG,
Taunus Corporation, Deutsche Bank Securities
Inc , DB Structured Products, Inc., Ace
Securities Corp., Mortgage IT Securities Corp.*

/s/ Jay B. Kasner
Jay B. Kasner (jay.kasner@skadden.com)
Scott Musoff (scott.musoff@skadden.com)
Robert A. Fumerton
(robert.fumerton@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, NY  10036

*Attorneys for Defendants UBS Americas Inc.,
UBS Real Estate Securities Inc., UBS Securities
LLC, Mortgage Asset Securitization
Transactions, Inc., David Martin, Per Dyrvik,
Hugh Corcoran and Peter Slagowitz*

# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL HOUSING FINANCE AGENCY,
etc.,

                    Plaintiff,

        -v-

UBS AMERICAS, INC., et al.

                    Defendants.

---

Other Cases Brought By This Plaintiff:

11 Civ. 6188 (DLC)
11 Civ. 6189 (DLC)
11 Civ. 6190 (DLC)
11 Civ. 6192 (DLC)
11 Civ. 6193 (DLC)
11 Civ. 6195 (DLC)
11 Civ. 6196 (DLC)
11 Civ. 6198 (DLC)
11 Civ. 6200 (DLC)
11 Civ. 6201 (DLC)
11 Civ. 6202 (DLC)
11 Civ. 6203 (DLC)
11 Civ. 6739 (DLC)
11 Civ. 7010 (DLC)
11 Civ. 7048 (DLC)

**Case No. 11 CIV. 5201 (DLC)**

**DEFENDANTS' JOINT SECOND
REQUEST FOR PRODUCTION**

        Pursuant to Fed. R. Civ. P. 26 and 34, Defendants hereby request that Plaintiff Federal

Housing Finance Agency ("FHFA") produce the following articles, documents, or things for

inspection or copying by July 9, 2012 at the law offices of Skadden, Arps, Slate, Meagher &

Flom LLP, Four Times Square, New York, New York 10036.  The following definitions and

instructions shall apply:

1

## DEFINITIONS

1.      The Uniform Definitions for Discovery Requests and rules of construction shall apply. *See* S.D.N.Y. Local Civil Rule 26.3.

2.      The term "Actions" means the above-captioned civil actions pending in the United States District Court for the Southern District of New York.

3.      The term "Complaints" means the operative complaints in the Actions, individually and collectively, and all exhibits and appendices thereto.

4.      The term "Defendants" refers to all defendants named in the Actions.

5.      The term "Fannie Mae" means the Federal National Mortgage Association and all current and former officers, directors, and employees thereof.

6.      The term "Freddie Mac" means the Federal Home Loan Mortgage Corporation and all current and former officers, directors, and employees thereof.

7.      The term "FCIC" refers to the Financial Crisis Inquiry Commission.

8.      The term "FCIC Report" refers to The Financial Crisis Inquiry Report: Final Report of the National Commission on the Causes of the Financial and Economic Crisis in the United States.

9.      The term "GSEs" means Fannie Mae and/or Freddie Mac, including their purported conservator, FHFA, the plaintiff in this case, individually and collectively.

10.     The term "Securitizations" refers to each and every securitization, individually and collectively, referred to in the Complaints.

11.     The term "GSE Certificates" means the particular Certificates, individually and collectively, that the GSEs purchased in the Securitizations.

12.    The term "Housing Goals" means any periodic goals, subgoals or targets applicable to the GSEs set by any government entity, agency or department, or by law, regulation, directive, or guidance, including by the United States Department of Housing and Urban Development, designed to expand housing opportunities among targeted areas, communities, or demographic groups, directly or indirectly, including goals relating to borrower identity, borrower income, borrower debt, geographic region, volume of loans, number of loans, or aggregate principal balances of loans.

13.    The term "include," or any variant thereof, means including without limitation.

14.    The terms "relating to," "concerning," "regarding," and "reflecting," and any variant thereof, mean relating to, regarding, concerning, referring to, with respect to, reflecting, describing, involving, evidencing, pertaining to, containing, setting forth, showing, disclosing, or constituting.

15.    The term "Mortgage Loans" means any residential first or second lien mortgage loan, individually and collectively.

16.    The term "Certificate Mortgage Loans" means any Mortgage Loan that was in a group or pool that directly backed any of the GSE Certificates at the time of the closing of a Securitization or thereafter, individually and collectively.

17.    The term "Originator" refers to any entity that originated or issued any of the Certificate Mortgage Loans, including all "Non-Party Originators" referred to in the Complaints and including all current and former employees thereof.

18.    The terms "Residential Mortgage-Backed Securitizations" and "RMBS" refer to securities, options, credit default swaps, or other derivatives backed by or referencing Mortgage Loans, individually and collectively.

3

19.     The term "Offering Documents" means all Registration Statements, Prospectuses, Prospectus Supplements, Forms S-3, and Forms S-3A relating to any of the Securitizations, and any other document used in the marketing, solicitation, or sale of any certificate from any of the Securitizations, individually and collectively.

20.     The term "Trust" means each Trust enumerated in each of the Complaints. *See, e.g.*, *FHFA v. UBS*, Second Amended Complaint ¶¶ 2, 33-37.

21.     The term "SEC" means the Securities and Exchange Commission.

22.     The terms "you," "your," and "Plaintiff" mean Plaintiff FHFA, all of the FHFA's predecessor agencies or entities, including the Office of Federal Housing Enterprise Oversight ("OFHEO") and the Federal Housing Finance Board, and all entities for which plaintiff is the purported conservator, including Fannie Mae and Freddie Mac, and all persons and entities acting or purporting to act on behalf of each of the foregoing entities, individually and collectively.

23.     The use of any definition for the purposes of these document requests shall not be deemed to constitute an agreement or acknowledgment on the part of Defendants that such definition is accurate, meaningful, or appropriate for any other purpose in the Actions.

## INSTRUCTIONS

1.     You should respond to each Document request separately.  You should produce any responsive Documents as they are kept in the ordinary course of your business.

2.     Documents shall be produced and numbered in such a manner that ensures that the source of each Document may be determined.  Absent unusual circumstances, Documents should be Bates-numbered.

3.      Each requested Document should be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto.

4.      These requests shall be deemed to be continuing so as to require supplemental productions as you obtain additional Documents between the time of the initial production hereunder and the time of trial in any of the Actions.

5.      Should you seek to withhold any Document based on some limitation of the discovery (including a claim of privilege or immunity), identify the Document for which the limitation is claimed, and describe the basis for withholding such Document, including any claim of privilege or immunity, in sufficient detail as to permit the Defendants and the Court to assess the validity of the basis for withholding such Document.

6.      If you object to any request, state with specificity the grounds for such objection and the request or requests to which each objection applies.  Any request to which an objection is made should be responded to insofar as it is not deemed objectionable.

7.      Whenever necessary to bring within the scope of any Document request that which might otherwise be construed to be outside its scope: (a) the use of any verb in any tense shall be construed as the use of that verb in all other tenses, and (b) the use of a word in its singular form shall be deemed to include within its use the plural form and vice versa.

8.      Each request shall be construed independently and without reference to any other request herein for purposes of limitation, unless a request so specifies.

9.      Unless otherwise specified, the time period covered by each Document request is from June 30, 2004 through the present.

## DOCUMENT REQUESTS

1.      All Documents concerning any tender, request for, or offer to purchase any of the GSE Certificates or Securitizations, in whole or in part.

2.      All Documents concerning your participation in creating, forming or structuring any of the GSE Certificates or Securitizations of which any of the GSE Certificates were to be a part, or discussing which Mortgage Loans or characteristics of loans would populate any of the GSE Certificates or Securitizations.

3.      For each of the GSE Certificates or Securitizations, all Documents concerning any preliminary, tentative, or firm commitment by you to purchase any of the GSE Certificates or any amount of any of the Securitizations, including but not limited to any such commitments made prior to the date that the Prospectus Supplement for the Securitization was filed with the SEC.

4.      All agreements and Documents concerning any agreement, or the negotiation of any agreement, between you and any Defendant concerning any of the GSE Certificates or Securitizations, including any term sheet, draft term sheet, agreement, side letter, and all Documents relating thereto.

5.      All Documents concerning your analysis, consideration, review, evaluation, assessment, or decision-making process in 2005, 2006, 2007, or 2008 concerning any purchase of RMBS, including decision trees or flowcharts, computerized models (including automated valuation models and housing credit models) and their inputs and outputs, predictions forecasted, and assumptions used.

6.      All Documents relating to any purported solicitation, marketing, or sale to you by any Defendant of any of the GSE Certificates or Securitizations, including any Documents you

received from or provided to any Defendant or any other person or entity in connection with any such solicitation, marketing, or sale.

7.      For each of the GSE Certificates and Securitizations, all Documents and Communications relating to any analysis, review, quality control, or diligence concerning any of the Certificate Mortgage Loans, GSE Certificates, or Securitizations, before or after closing, including any guidelines, manuals, or reference materials relating to any such review.

8.      For any Offering Documents that you claim you received concerning any of the GSE Certificates or Securitizations, all Documents relating to any analysis, review, assessment, or evaluation concerning any of the contents of any such Offering Documents.

9.      All Documents relating to your investment guidelines, standards, requirements, or practices relating or applicable to your purchase of any of the GSE Certificates or Securitizations.

10.     All Documents concerning your allegations in the Complaints that, in any Document or Communication, any (a) loan-to-value ratio or combined loan-to-value ratio, (b) information concerning owner occupancy of any property, (c) adherence to any underwriting guideline, or (d) information concerning credit ratings was misstated, omitted, misrepresented, or erroneous.

11.     All Documents and Communications reflecting that the GSEs were misled by any allegedly misstated, omitted, or erroneous information in any of the Offering Documents or any other Document received from or Communication with any Defendant.

12.     All Documents concerning the accuracy, reliability, or use of automated valuation models to calculate the value of properties underlying Mortgage Loans.

13.     All Documents and Communications reflecting your knowledge or awareness of any allegedly misstated, omitted, erroneous, or misrepresented information in any of the Offering Documents relating to any of the GSE Certificates or Securitizations, including relating to loan-to-value ratios, combined loan-to-value ratios, occupancy status, adherence to underwriting guidelines, or any other misstatement, omission, error, or misrepresentation you allege in the Complaints.

14.     All Documents and Communications reflecting your knowledge that any loan-to-value ratios, combined loan-to-value ratios, occupancy status, or adherence to underwriting guidelines was misstated, omitted, misrepresented, or erroneous in any offering document for any securitization or certificate purchased from any Defendant.

15.     All Documents relating to any "loan level review" or "forensic review" referred to in any of the Complaints, including Documents sufficient to identify the loans from each of the Securitizations included in the sample of loans used in any such review, all Documents relating to how that sample was selected, and all Documents relating to your use or contemplated use of any "automated valuation model" to analyze any of the GSE Certificates or Securitizations.

16.     For each loan reviewed in any "loan level review" or "forensic review" referred to in any of the Complaints about which you contend information or data was misstated, omitted, misrepresented, or erroneous, all Documents relating to that contention, including all Documents regarding information provided to you or reflecting your knowledge or awareness concerning the subject matter you claim was misstated, omitted, misrepresented, or erroneous.

17.     All Documents relating to any audit or review, whether formal or informal, conducted by you or on your behalf, concerning the mortgage loan securitization practices of any

Defendant, including Documents relating to to any Defendant's mortgage loan acquisition and due diligence practices.

18.     All Documents relating to any audit or review, whether formal or informal, conducted by you or on your behalf, concerning the mortgage loan origination or underwriting practices of any Originator.

19.     All Documents concerning any underwriting policies, guidelines, or practices applicable to any of the GSE Certificates, Securitizations, or Certificate Mortgage Loans.

20.     All Documents concerning any meeting between the GSEs and any Originator relating to any of the GSE Certificates or Securitizations or any Originator's underwriting guidelines, processes, practices, or procedures.

21.     All Documents concerning underwriting policies, guidelines, or practices of any Originator at any time in 2005, 2006, 2007, or 2008, including any Documents received from any Originator concerning its or their loan underwriting or origination guidelines, processes, practices, or procedures.

22.     All Documents concerning your knowledge, awareness, belief, or suspicion that any guidelines, standards, or practices for underwriting Mortgage Loans, including any of the Certificate Mortgage Loans, were changing, deteriorating, loosening, lessening, or were being deviated from or abandoned at any time in 2005, 2006, 2007, or 2008.

23.     All Documents concerning your participation or involvement in the development, formulation, preparation, audit, review, or approval of any loan underwriting or origination guidelines, processes, practices, or procedures at any Defendant or Originator, or which were applicable to any of the GSE Certificates, Securitizations, or Certificate Mortgage Loans,

9

including any system, protocol, or method concerning the making of exceptions to any such guideline, process, practice, or procedure.

24.     All Documents and Communications relating to the statement in, or the subject matter contained in,  the OFHEO 2008 Report to Congress that "[t]he rapid growth in subprime and nontraditional mortgage lending from 2001 through 2006 was accompanied by a steady deterioration of underwriting standards, as typically occurs in a credit boom."  OFHEO 2008 Report to Congress, at 6.

25.     All Documents relating to the subject matter discussed in the report prepared by the FHFA's Office of Inspector General entitled "FHFA's Oversight of Fannie Mae's Single-Family Underwriting Standards," dated March 22, 2012, at page 4 that "from 2005 to 2008, Fannie Mae granted variances" from its underwriting guidelines that "included many higher-risk features, such as loans made with unverified income or assets, or little or no down payment" and purchased loans that "were characterized, on average, by higher LTV ratios and lower borrower credit scores. . . ."

26.     All documents concerning any analysis, review, evaluation, or assessment performed by you or on your behalf relating to the quality of any Mortgages Loans originated by any Originator.

27.     All Documents concerning any analysis, assessment, evaluation of, or your reliance on credit ratings or credit ratings agencies, including in pricing, evaluating, or purchasing RMBS or any of the GSE Certificates or Securitizations.

28.     All Documents concerning your understanding of the methodologies or procedures used by any credit ratings agency to assign or revise ratings for RMBS, including all

10

Communications with any credit ratings agency concerning any RMBS you purchased or considered for purchase.

29.     All Documents and Communications concerning any of the articles referenced in the attached Exhibit A, including all Communications with any author, publisher, or attorney for any author or publisher concerning any of these articles.

30.     Documents sufficient to identify all of your policies, practices, and procedures concerning the review, analysis, quality control, evaluation, assessment, or due diligence performed by you or any third party concerning any RMBS sold or purchased by you in 2005, 2006, 2007, or 2008.

31.     All Documents relating to any working group, committee, or board meeting at which any of the GSE Certificates, Securitizations, Certificate Mortgage Loans, or any Originator were discussed, including all notes, reports, presentations, agendas and other documents or analyses prepared in anticipation of, disseminated in connection with, or made available at such meetings or in connection therewith.

32.     All Documents relating to any monitoring, assessment, review, or evaluation of the performance of any of the GSE Certificates, Securitizations, or Certificate Mortgage Loans, including payments to you, credit ratings downgrades, or delinquencies or defaults.

33.     All Documents relating to the trust administrator websites for any of the GSE Certificates or Securitizations or your use thereof, including any remittance report or disclosure to investors relating to any of the GSE Certificates, Securitizations, or Certificate Mortgage Loans.

34.     All Documents concerning your knowledge or awareness of any litigation, investigation, inquiry, or judicial, legislative, or administrative proceeding or investigation

11

relating to mortgage loan underwriting, origination practices, statements made concerning loan-to-value ratio, combined loan-to-value ratios, or borrower occupancy of a property, or any other subject matter or allegation raised in the Complaints.

35.     Documents sufficient to show when you sought, consulted with, or engaged litigation counsel or other counsel in connection with the each of the GSE Certificates, Securitizations, or any other issue relating to mortgage loan underwriting standards or practices set forth in any of the Complaints.

36.     All Documents and Communications concerning any investigation you undertook or that was undertaken on your behalf relating to any of the allegations in the Complaints.

37.     All Documents and Communications relating to the statement in, or the subject matter contained in, the OFHEO 2008 Report to Congress that the credit quality of Fannie Mae and Freddie Mac's assets "deteriorated during the year, particularly assets purchased in 2006 and 2007, which generally had higher-risk characteristics than assets acquired in prior years, reflecting weaker underwriting standards prevalent in the market."  OFHEO 2008 Report to Congress, at 13.

38.     All Documents relating to any decision by you, or any directive from any third party, regulator, government agency, or department, or the United States Congress or any committee or subcommittee thereof, to stop or decrease your purchases of RMBS or any category or type of RMBS or Mortgage Loans, including non-prime loans.

39.     All Documents relating to any analysis, review, assessment, or evaluation of any appraiser, mortgage broker, Originator, or credit ratings agency that had any involvement with any of the GSE Certificates, Securitizations, or Certificate Mortgage Loans.

40.     Documents sufficient to show all securitizations you sponsored, securitized, underwrote, or sold that included in its collateral pool any loan made by any Originator.

41.     All Documents relating to the underwriting and origination guidelines, and any departures therefrom or exceptions thereto, used by any Originator in originating or underwriting Mortgage Loans backing any securitization you sponsored, securitized, underwrote, or sold, including Documents concerning the appraisal of property, loan-to-value ratios, combined loan-to-value ratios, borrower debt, borrower debt-to-income ratios, or occupancy of property.

42.     Documents sufficient to show the due diligence you performed, or was performed on your behalf, and the underwriting guidelines used relating to any securitization you sponsored, securitized, underwrote, or sold that included in the collateral pool any loan made by any Originator.

43.     All Documents relating to any claim or demand you made to any Originator to repurchase any loan, including any loan backing a securitization you sponsored, securitized, underwrote, or sold.

44.     Documents sufficient to identify each person and each committee involved in each of the following:  (a) purchasing, composing, or aggregating pools of Mortgage Loans for securitization; (b) structuring or arranging the terms of your securitizations; (c) performing due diligence or obtaining third-party due diligence for securitizations you sponsored, securitized, underwrote, or sold; and (d) obtaining credit ratings for your securitizations.

45.     Documents sufficient to show your due diligence practices and procedures, and the underwriting guidelines used, for any private placement of any RMBS you sponsored, securitized, underwrote, or sold after January 1, 2008, including offering documents relating to any such private placements.

46.     All Documents concerning any knowledge, awareness, belief, or suspicion by the
GSEs at any time in 2005, 2006, 2007, or 2008 that it was purchasing loans with greater or
potentially greater risk of default or non-payment compared to loans purchased in a prior year or
years, including as referenced by the statement of FHFA Director DeMarco to the effect that "the
GSEs were taking on riskier loans" and "the underwriting was worsening." *See* FCIC
Memorandum of Meeting of Ed DeMarco, available at http://fcic.law.stanford.edu/resource/
interviews.

47.     All Documents concerning any risk or potential risk associated with any of the
GSE Certificates, Securitizations, or RMBS, in 2005, 2006, 2007, or 2008.

48.     All minutes, transcripts, recordings, or other records of every meeting of any
board, committee, working group, or other group of persons that considered any of the
following:  (a) risks associated with any of the GSE Certificates, Securitizations, or RMBS; (b)
risks associated with "stated income," interest only, "pay option," "low doc," "no doc," or
reduced or no documentation Mortgage Loans; (c) risks associated with subprime or Alt-A
Mortgage Loans; (d) risks associated with any underwriter, originator, issuer, or sponsor
involved in any of the GSE Certificates, Securitizations, Mortgage Loans, or RMBS; (e) default
or delinquency rates or trends; or (f) risk associated with any need, requirement, attempt, or
effort to meet Housing Goals or adjust any measure of risk to meet Housing Goals, including (i)
Fannie Mae's January 2006 Board meeting at which then-Chief Financial Officer Robert Levin
proposed a strategic initiative to increase Fannie Mae's purchase of products, including subprime
Mortgage Loans, and (ii) the July 2005 meeting at which the Board of Directors of Fannie Mae
discussed the risks associated with RMBS, and all notes, reports, presentations, agendas, and

other Documents or analyses prepared in anticipation of, disseminated in connection with, or made available at these meetings.

49.    All Documents concerning Fannie Mae's June 27, 2005 presentation entitled "Facing Strategic Crossroads," in which Tom Lund wrote or stated:  "We are at a strategic crossroad . . . We face two stark choices: 1. Stay the course [or] 2. Meet the Market Where the Market Is."

50.    All Documents or Communications relating to the statements in, or the subject matter contained in, the OFHEO 2007 Report to Congress at page 39 that:

> Management has expanded the Enterprise's purchase and guarantee of higher-risk mortgages.  In order to increase market share, meet mission goals, stay competitive and be responsive to sellers' needs, the Enterprise has increased the use of credit policy waivers and exceptions.  Untested and alternative market products accounted for approximately 24 percent of 2006 new purchases and currently comprise 11 percent of the total single-family mortgage portfolio. Internal measures of credit quality reflect that the quality of incremental new purchases declined in 2006 as evidenced by a rise in expected default costs.

51.    All Documents concerning any change in or adjustment to any underwriting or mortgage loan sourcing or purchasing strategy, standard, or practice in an effort to meet, in whole or in part, any mission or policy goal, including Housing Goals, in 2005, 2006, 2007, or 2008, including as referenced in Fannie Mae's 2006 Form 10-K (*see, e.g.*, pages 28 and 42-43), a December 21, 2007 Letter to Brian Montgomery, Assistant Secretary of Housing, referenced at page 515 of the FCIC Report, or a June 17, 2010 letter from Daniel Mudd to the FCIC.

52.    All Documents concerning any income, profit, or other benefit or potential benefit the GSEs obtained or sought or intended to obtain by purchasing any of the GSE Certificates, Securitizations, or RMBS in 2005, 2006, 2007, or 2008.

15

53.    Documents sufficient to identify your executive, management, and employee compensation and bonus policies, procedures, practices, and structure in 2005, 2006, 2007, and 2008, including any compensation or bonus relating to meeting any goal or target, including Housing Goals.

54.    All Documents concerning the risks or potential risks involved in the purchase or potential purchase of any of the GSE Certificates, Securitizations, Certificate Mortgage Loans, Mortgage Loans, RMBS, or other products consisting of Mortgage Loans, generally or specifically, including all reports, memoranda, Communications, and notes, and minutes, transcripts, or recordings of any committee or group of persons that considered such risks or potential risks, in whole or in part.

55.    All Documents relating to any analysis, pricing, calculation, discussion, review, assessment, or evaluation of any potential or actual risks, revenues, income, profits, losses, or defaults associated with subprime, Alt-A, "stated income," "interest only," "pay option," "low doc," and "no doc" loans or RMBS backed by such loans.

56.    All Documents concerning any mission or policy goal, including Housing Goals, in 2005, 2006, 2007, or 2008, including all Documents concerning whether the purchase or potential purchase of any of the GSE Certificates, Certificate Mortgage Loans, or any RMBS could or would be used to satisfy, in whole or in part, any mission or policy goal, including Housing Goals, in 2005, 2006, 2007, or 2008.

57.    Documents sufficient to identify any (a) loan-to-value ratios or combined loan-to-value ratios of any RMBS purchased by you in 2005, 2006, 2007, or 2008, individually in any RMBS or in any group of RMBS, including any mean or average loan-to-value or combined loan-to-value ratios; (b) rate of owner occupancy in any RMBS purchased by you in 2005, 2006,

16

2007, or 2008, individually in any RMBS or in any group of RMBS, including any mean or average rate of owner occupancy; or (c) rates or volume of exceptions made to underwriting guidelines for any RMBS purchased by you in 2005, 2006, 2007, or 2008, individually in any RMBS or in any group of RMBS, including any mean or average rate or volume of exceptions.

58.     All documents concerning any analysis, review, evaluation, or assessment of (a) loan-to-value ratios or combined loan-to-value ratios for any RMBS purchased by you in 2005, 2006, 2007, or 2008, individually in any RMBS or in any group of RMBS; (b) rates of owner occupancy for any RMBS purchased by you in 2005, 2006, 2007, or 2008, individually in any RMBS or in any group of RMBS; or (c) rates or volume of exceptions made to underwriting guidelines for any RMBS purchased by you in 2005, 2006, 2007, or 2008, individually in any RMBS or in any group of RMBS, including any mean or average rate or volume of exceptions.

59.     All Documents and Communications relating to any of the statements in, or the subject matter contained in, the OFHEO 2008 Report to Congress at page 40 that:

> Throughout 2007 and at a level much higher than management's plan, [Freddie Mac] continued to purchase and guarantee higher-risk mortgages.  These purchases have performed more poorly than expected.  The performance can be attributed to mortgages with high loan-to-value ratios, nonowner-occupied properties, low FICO® scores, high debt-to-income ratios, limited or no documentation and underwriting through non-Freddie Mac lending systems.  Evidence of risk layering is apparent, as a large number of loans share multiple risk attributes.

60.     All Communications between you and any Originator concerning loan origination or underwriting policies, practices, or procedures, or any of the GSE Certificates, Securitizations, or Certificate Mortgage Loans.

61.     All Communications with any auditor, accountant, or regulator concerning any risk or potential risk associated with purchasing or holding any RMBS or any of the GSE Certificates or Securitizations in 2005, 2006, 2007, or 2008, and all Documents related thereto.

62.     All Documents concerning any analysis, evaluation, assessment, or review of any of the GSE Certificates, Securitizations, or Certificate Mortgage Loans, including by Clayton Holdings, Inc., The Bohan Group, Inc., or any other person or entity, including all Communications with Clayton Holdings, Inc., The Bohan Group, Inc., or any other person or entity relating thereto.

63.     All Communications between you and any investor, investment advisor, broker, analyst, or stock exchange concerning any of the Securitizations, GSE Certificates, Certificate Mortgage Loans, your purchase or holding of RMBS, or your policies, practices, or procedures concerning risk, risk management, or risk mitigation concerning RMBS.

64.     All Communications with any Trust concerning any of the GSE Certificates or Securitizations.

65.     All Communications between you and any credit ratings agency concerning any of the GSE Certificates or Securitizations.

66.     All Communications between you and any person or entity (whether or not identified in any of the Complaints as a witness or source) concerning any matter alleged in any of the Complaints, and all Documents provided to you by any such person or entity or to any such person or entity by you.

67.     All Documents concerning the causes or potential causes of defaults or delinquencies of any Mortgage Loans at any time after 2005.

18

68.     All Documents concerning statements made by you or on your behalf concerning any change, downturn, deterioration, crisis, problem, instability, or meltdown in the housing or credit markets in 2006 or thereafter, including as referenced by Fannie Mae in its Memorandum of Law In Support of Fannie Mae's Motion to Dismiss Claims Under the Securities Exchange Act of 1934, filed in *In re Fannie Mae Sec. Lit.*, No. 1:08-cv-07831-PAC (S.D.N.Y. Sept. 18, 2009) ("in late 2006 and throughout 2008, the housing and credit markets suffered an extraordinary meltdown").

69.     All Documents and Communications relating to the statement, or subject matter discussed, in the OFHEO 2008 Report to Congress that the GSEs "both experienced poor financial performance in 2007 largely due to the rapid deterioration in credit performance associated with house price declines and disruption of the mortgage markets."  OFHEO 2008 Report to Congress, at 1.

70.     All Documents concerning your contention that any of the GSE Certificates has depreciated or decreased in value.

71.     All Documents concerning any payment to you paid or payable from any Trust consisting of a pool of loans from which payments are to be made for any of the GSE Certificates or Securitizations.

72.     Documents sufficient to identify any belief, statement, projection, or assumption by you concerning the Housing Price Index or the predicted, expected, projected, or anticipated movement in housing prices in 2005 or thereafter, including in any geographical area, including locally, by state, regionally, or nationwide.

73.     All Documents reflecting any valuation of any of the GSE Certificates, including the value of the GSE Certificates recorded in the financial statements, books, or records of the

GSEs, including by month, fiscal quarter, and year, between January 1, 2005 and the last-scheduled trial in any of the Actions.

74.     All Documents concerning any attempt by you to sell any of the GSE Certificates, or any offer received to purchase any of the GSE Certificates from you.

75.     Documents sufficient to identify any intellectual property owned or developed by you and used to analyze, assess, value, or monitor any of the GSE Certificates, Securitizations, Mortgage Loans, or RMBS.

76.     All Documents concerning any accounting policy or practice relating to any of the GSE Certificates or Securitizations, including any policy or practice relating to any classification of any of the GSE Certificates, Securitizations, or RMBS, including classification as trading, available-for-sale, or held to maturity.

77.     All Documents concerning any adjustment to or reclassification, or potential adjustment to or reclassification, of any other-than-temporary impairment concerning any of the GSE Certificates, Securitizations, or RMBS, including as a result of any implementation or potential implementation of Financial Accounting Standards 115-2 and 124-2.

78.     All Documents concerning any other-than-temporary impairments in any of the GSEs' Certificates, Securitizations, or RMBS, including as reflected in any of the GSEs' financial statements, books, or records, including any statement ascribing any cause of or reason for any such impairment, in whole or in part.

79.     All Documents concerning any valuation or any method for valuation of any of the GSE Certificates, Securitizations, or RMBS, including any method for measuring "intrinsic value," including any statement by you concerning any valuation or method for valuing any of the GSE Certificates, Securitizations, or RMBS.

80.     All Documents concerning any anticipated, expected, projected, or previous default or delinquency rate, or range of rates, for any Mortgage Loans in any of the GSE Certificates or Securitizations, and all Documents concerning any assumptions relating thereto.

81.     All Documents concerning any statement, analysis, assessment, review, or evaluation by you concerning the relationship between the number of payments made on Mortgage Loans prior to default and the materiality, effect, or impact of any underwriting deficiency, defect, or deviation concerning such Mortgage Loans.

82.     All Documents or Communications concerning any effort, attempt, or activity by you since January 1, 2005 to limit, hedge, offset, mitigate, or otherwise affect your actual or potential losses, gains, or exposure with respect to any of the GSE Certificates, Securitizations, or RMBS, including but not limited to purchases or potential purchases of credit default swaps.

83.     Documents sufficient to show any transaction or proposed, contemplated, or potential transaction involving any of the GSE Certificates after your purchase thereof.

84.     All Documents relating to the litigation entitled *Federal Home Loan Mortgage Corp. v. American Home Mortgage Corp.*, 07-cv-1335 (N.D. Tex.), including all Documents relating to Freddie Mac's decision to bring that action.

85.     Documents sufficient to identify each confidential witness cited in any of the Complaints.

86.     All Documents concerning any of the GSE Certificates.

87.     All Documents concerning any of the Securitizations.

88.     All Documents concerning any of the Certificate Mortgage Loans, including all loan files (including all Documents that are maintained during the life of any of the Certificate

Mortgage Loans, including in the ordinary course of originating, underwriting, approving, funding, or servicing a loan, and including any supplemental materials received post-funding).

89.     Documents sufficient to identify (a) each of the Certificate Mortgage Loans which you believe, contend, allege, or assert is materially inconsistent with, violates, breaches, or makes erroneous or incomplete, affirmatively or by omission, any statement or representation contained in any of the Offering Documents, including any statement or representation that is the subject of any of the Complaints; and (b) for each of the above Certificate Mortgage Loans, documents sufficient to identify each inconsistency, violation, and breach.

90.     All Documents supporting your allegations in the Complaints that any qualities or characteristics of the Certificate Mortgage Loans were inconsistent with, violated, breached, or made erroneous or incomplete, affirmatively or by omission, any statement or representation contained in any of the Offering Documents.

91.     All Documents on which you intend to rely to support any of your allegations or claims in any of the Actions.

92.     All Documents relating to any effort to preserve documents relating to the Actions, the subject matter in any of the Complaints, or any allegation in any of the Complaints.

DATED this 8th day of June 2012.

  /s/ Thomas C. Rice
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw com)
Alan C. Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017-3954

*Attorneys for Defendants Deutsche Bank AG,
Taunus Corporation, Deutsche Bank Securities
Inc , DB Structured Products, Inc., Ace
Securities Corp., Mortgage IT Securities Corp.*

  /s/ Richard A. Spehr
Richard A. Spehr (rspehr@mayerbrown.com)
Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY  10019

*Attorneys for Defendants HSBC North America
Holdings Inc., HSBC USA Inc., HSBC Markets
(USA) Inc., HSBC Bank USA, NA., HSI Asset
Securitization Corporation, HSBC Securities
(USA) Inc., Neal Leonard, Gerard Mattia, Todd
White, Norman Chaleff, and Jon Voigtman*

  /s/ Jay B. Kasner
Jay B. Kasner (jay.kasner@skadden.com)
Scott Musoff (scott.musoff@skadden.com)
Robert A. Fumerton
(robert.fumerton@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, NY  10036

*Attorneys for Defendants UBS Americas Inc.,
UBS Real Estate Securities Inc., UBS Securities
LLC, Mortgage Asset Securitization
Transactions, Inc., David Martin, Per Dyrvik,
Hugh Corcoran and Peter Slagowitz*

  /s/ Brad S. Karp
Brad S. Karp (bkarp@paulweiss.com)
Susanna M. Buergel (sbuergel@paulweiss.com)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064

*Attorneys for Citigroup Inc., Citigroup
Mortgage Loan Trust Inc., Citigroup Global
Markets Realty Corp., Citigroup Global
Markets Inc., Susan Mills, Randall Costa, Scott
Freidenrich, Richard A. Isenberg, Mark I.
Tsesarsky, Peter Patricola, Jeffrey Perlowitz
and Evelyn Echevarria*

  /s/ James P. Rouhandeh
James P. Rouhandeh
Brian S. Weinstein
Daniel J. Schwartz
Nicholas N. George
Jane M. Morril
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017

*Attorneys for Defendants Morgan Stanley,
Morgan Stanley & Co. Incorporated (n/k/a
Morgan Stanley & Co. LLC), Morgan Stanley
Mortgage Capital Holdings LLC (successor-in-
interest to Morgan Stanley Mortgage Capital
Inc.), Morgan Stanley ABS Capital I Inc.,
Morgan Stanley Capital I Inc., Saxon Capital,
Inc., Saxon Funding Management LLC, Saxon
Asset Securities Company, Gail P. McDonnell,
Howard Hubler, Craig S. Phillips, Alexander C.
Frank, David R. Warren, John E. Westerfield,
and Steven S. Stern*


  /s/ Bruce Clark
Bruce Clark (clarkb@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

Amanda F. Davidoff (davidoffa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006

*Attorneys for Defendants First Horizon
National Corporation, First Tennessee Bank
National Association, FTN Financial Securities
Corporation, First Horizon Asset Securities,
Inc., Gerald L. Baker, Peter F. Makowiecki,
Charles G. Burkett, and Thomas Wageman*

  /s/ Penny Shane
Penny Shane (shanep@sullcrom.com)
Sharon L. Nelles (nelless@sullcrom.com)
Jonathan M. Sedlak (sedlakj@sullcrom.com)
David A. Castleman
(castlemand@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

*Attorneys for Defendants JPMorgan Chase &
Co., JPMorgan Chase Bank, N.A., J.P. Morgan
Mortgage Acquisition Corporation, J.P.
Morgan Securities LLC, J.P. Morgan
Acceptance Corporation I, Bear Stearns & Co.,
Inc., EMC Mortgage LLC, Structured Asset
Mortgage Investments II Inc., Bear Stearns
Asset Backed Securities I LLC, WaMu Asset
Acceptance Corporation, WaMu Capital
Corporation, Washington Mutual Mortgage
Securities Corporation, Long Beach Securities
Corporation and certain of the Individual
Defendants*


  /s/ David H. Braff
David H. Braff (braffd@sullcrom.com)
Brian T. Frawley (frawleyb@sullcrom.com)
Jeffrey T. Scott (scottj@sullcrom.com)
Joshua Fritsch (fritschj@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

*Attorneys for Barclays Capital Inc., Barclays
Bank PLC, Securitized Asset Backed
Receivables LLC, Paul Menefee, John Carroll,
and Michael Wade*

/s/ David Blatt
_____
David Blatt (dblatt@wc.com)
John McNichols (jmcnichols@wc.com)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005

*Attorneys for Bank of America Corporation; Bank of America, N.A.; Asset Backed Funding Corp.; Banc of America Funding Corp.; Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Lending, Inc., Merrill Lynch Mortgage Capital Inc., First Franklin Financial Corp., Merrill Lynch Mortgage Investors, Inc., Merrill Lynch Government Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Inc.*

/s/ Richard W. Clary
_____
Richard W. Clary (rclary@cravath.com)
Michael T. Reynolds (mreynolds@cravath.com)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019

*Attorneys for Credit Suisse Securities (USA) LLC, Credit Suisse Holdings (USA), Inc., Credit Suisse (USA), Inc., DLJ Mortgage Capital, Inc., Credit Suisse First Boston Mortgage Securities Corporation, Asset Backed Securities Corporation, Credit Suisse First Boston Mortgage Acceptance Corporation, Andrew A. Kimura, Jeffrey A. Altabef, Eveleyn Echevarria, Michael A. Marriott, Zev Kindler, John P. Graham, Thomas E. Siegler, Thomas Zingalli, Carlos Onis, Steven L. Kantor, Joseph M. Donovan, Juliana Johnson, and Greg Richter*

/s/ Richard H. Klapper
_____
Richard H. Klapper (klapperr@sullcrom.com)
Theodore Edelman (edelmant@sullcrom.com)
Michael T. Tomaino, Jr.
(tomainom@sullcrom.com)
Jordan T. Razza (razzaj@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

*Attorneys for Goldman, Sachs & Co, GS Mortgage Securities Corp., Goldman Sachs Mortgage Company, The Goldman Sachs Group, Inc., Goldman Sachs Real Estate Funding Corp., Peter C. Aberg, Howard S. Altarescu, Robert J. Christie, Kevin Gasvoda, Michelle Gill, David J. Rosenblum, Jonathan S. Sobel, Daniel L. Sparks, Mark Weiss*

/s/ Bruce E. Clark
_____
Bruce E. Clark (clarkb@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

Amanda F. Davidoff (davidoffa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006

*Attorneys for Defendants Nomura Securities International, Inc., Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca*

  /s/ Jay B. Kasner
Jay B. Kasner (jay.kasner@skadden.com)
Scott Musoff (scott.musoff@skadden.com)
George Zimmerman
(george.zimmerman@skadden.com)
Robert A. Fumerton
(robert.fumerton@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, NY 10036

*Attorneys for SG Americas, Inc., SG Americas
Securities Holdings, LLC, SG Americas
Securities, LLC, SG Mortgage Finance Corp.,
and SG Mortgage Securities, LLC, Arnaud
Denis, Abner Figueroa, Tony Tusi, and Orlando
Figueroa*

  /s/ Greg A. Danilow
Greg A. Danilow (greg.danilow@weil.com)
Vernon Broderick
(vernon.broderick@weil.com)
WEIL, GOTSHAL, & MANGES LLP
767 Fifth Avenue, 25th Fl.
New York, NY 10153

*Attorneys for General Electric Company,
General Electric Capital Services, Inc., GE
Mortgage Holding, LLC, GE-WMC Securities,
LLC*

  /s/ David Potter
David Potter (dpotter@lpgllp.com)
LAZARE, POTTER & GIACOVAS LLP
950 Third Avenue
New York, New York 10022

Jeffrey A. Lipps (lipps@carpenterlipps.com)
Jennifer A.L. Battle
(battle@carpenterlipps.com)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 N. High Street
Columbus, Ohio 43215

*Attorneys for Defendants Ally Securities, LLC*

  /s/ Sandra D. Hauser
Sandra D. Hauser
(sandra.hauser@snrdenton.com)
Patrick Fitzmaurice
(patrick.fitzmaurice@snrdenton.com)

SNR DENTON US LLP
1221 Avenue of the Americas
New York, New York 10020

*Attorneys for Matthew Perkins*

  /s/ Richard A. Spehr
Richard A. Spehr (rspehr@mayerbrown.com)
Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY  10019

*Attorneys for Ally Financial Inc. and GMAC
Mortgage Group, Inc.*

  /s/ Thomas C. Rice
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Alan Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017

*Attorneys for Defendant RBS Securities Inc.*

  /s/ Joel C. Haims
Joel C. Haims (jhaims@mofo.com)
LaShann M. DeArcy (ldearcy@mofo.com)
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104

*Attorneys for Tom Marano and Michael
Nierenberg*

  /s/ Dani R. James
Dani R. James
Jade A. Burns
KRAMER LEVIN NAFTALIS & FRANKEL
LLP
1177 Avenue of the Americas
New York, New York 10036

*Attorneys for Defendant Jeffrey L. Verschleiser*

  /s/ Richard A. Edlin
Richard A. Edlin (edlinr@gtlaw.com)
Ronald D. Lefton (leftonr@gtlaw.com)
Candace Camarata (camaratac@gtlaw.com)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166

*Attorneys for Defendant Jeffrey Mayer*

  /s/ Pamela Rogers Chepiga
Pamela Rogers Chepiga
Josephine A. Cheatham
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
pamela.chepiga@allenovery.com
allie.cheatham@allenovery.com

*Attorneys for Defendant Samuel L. Molinaro, Jr*

27

**EXHIBIT A**

| | | |
|---|---|---|
| 11.17.01 | WASHINGTON POST | "Freddie Mac Easing Rules for So-So Credit" |
| June 2003 | Mortgage Banking | "Not Exactly Prime: the Secondary Market for Loans not in Prime Condition is Growing" |
| 03.16.04 | WALL STREET JOURNAL | "Creative Mortgages Fuel Home Sales; Banks Push Variety of New Loans to Offset Rising Costs; the Price of a Missed Payment" |
| 04.24.04 | WASHINGTON POST | "Liars, Liars, Loans on Fire" |
| 04.04 | BALTIMORE SUN | "Liar Loans are bad news for mortgage insurers" |
| 06.24.04 | N.Y. TIMES | "The Ever More Graspable, and Risky, American Dream" |
| 07.04 | REALTY TIMES | "Should Lenders Dump No-Tell Loans" |
| 07.19.04 | BUSINESS WEEK | "Lenders Switch on their Back Up Systems" |
| 10.26.04 | AMERICAN BANKER | "How Lenders Cut Risk on Low-Doc Loans" |
| 01.15.05 | WASHINGTON POST | "Low Payment Mortgages Can Take Off Quickly" |
| 01.16.05 | CHICAGO TRIBUNE | "Just how sour could those sweet Mortgages Turn?" |
| 06.26.05 | WALL STREET JOURNAL | "Mortgage Lenders Loosen Standards; Despite Growing Concerns, Banks Keep Relaxing Credit-Scores, Income and Debt-Load Rules" |
| 07.15.05 | N.Y. TIMES | "A Hands-Off Policy on Mortgage Loans" |
| 09.22.05 | WALL STREET JOURNAL | "How American Lenders Shelter Themselves" |
| November 2005 | MORTGAGE BANKING | "The Future of Automated Decision Making" |
| 11.16.05 | WALL STREET JOURNAL | "Is getting a home loan becoming too easy?" |
| 04.24.06 | BUSINESS WEEK | "Mortgage Lenders:  Who's Most at Risk" |
| 10.05.08 | N.Y. TIMES | "Pressured to Take More Risk, Fannie Reached the Tipping Point" |

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
FEDERAL HOUSING FINANCE AGENCY, :
etc.,                                                                :
                                                                          :   11 Civ. 5201 (DLC)
                                   Plaintiff,               :
                                                                          :
                                                                          :
                                                                          :
                           v.                                     :
                                                                          :
UBS AMERICAS INC., et al.,                          :   **NOTICE OF RULE 30(B)(6)**
                                                                          :   **DEPOSITION**
                                   Defendants.           :
                                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
Other Cases Brought By This Plaintiff:              :
                                                                          :
11 Civ. 6188 (DLC)                                         :
11 Civ. 6189 (DLC)                                         :
11 Civ. 6190 (DLC)                                         :
11 Civ. 6192 (DLC)                                         :
11 Civ. 6193 (DLC)                                         :
11 Civ. 6195 (DLC)                                         :
11 Civ. 6196 (DLC)                                         :
11 Civ. 6198 (DLC)                                         :
11 Civ. 6200 (DLC)                                         :
11 Civ. 6201 (DLC)                                         :
11 Civ. 6202 (DLC)                                         :
11 Civ. 6203 (DLC)                                         :
11 Civ. 6739 (DLC)                                         :
11 Civ. 7010 (DLC)                                         :
11 Civ. 7048 (DLC)                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

     **PLEASE TAKE NOTICE** that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Defendants will take the deposition upon oral examination of Plaintiff Federal

Housing Finance Agency, at 9:00 am on Thursday, July 12, 2012, at the offices of Skadden,

Arps, Slate, Meagher & Flom LLP, through the officer(s), director(s), agent(s), or such other

person(s) with the most knowledge concerning the topics listed in Schedule A hereto.

## SCHEDULE A

1.  Any systematic deletion and/or destruction of potentially relevant documents by Freddie Mac or Fannie Mae at any time from January 1, 2004 through the present, including but not limited to the implementation of auto-deletion policies, the overwriting of back-up tapes, and the destruction of custodial files following an employee's departure from the GSEs.

2.  Any document preservation memos that were issued by Freddie Mac or Fannie Mae in connection with any litigation, investigation or regulatory proceeding concerning mortgage loans or residential mortgage-backed securities ("RMBS") at any time from January 1, 2004 through the present, including any steps taken to preserve potentially relevant documents.

3.  The organizational structure of Fannie Mae and Freddie Mac, including but not limited to the respective individuals, positions, departments, committees or other groups at Fannie Mae or Freddie Mac that had a role in each Securitization in the above-captioned Actions ("Securitization"), or that had a role in Your purchase of mortgage loans or Your securitizations of mortgage loans, including but not limited to those individuals, positions, departments, committees or other groups who had responsibility for, involvement in or knowledge of:

    (i)     Your assessment of the potential risks and benefits of non-agency mortgage backed securities;

    (ii)    approval of Your purchase of non-agency mortgage backed securities and/or in development of any limits or setting of any goals concerning such purchases;

    (iii)   any pre- or post-purchase credit analyses, due diligence processes, pricing analysis and/or other tools or analyses used by You to assess Your investments or potential investments in non-agency mortgage backed securities;

    (iv)    any assessments or analyses concerning underwriting standards or methods employed in connection with the underlying loans supporting the Securitizations;

    (v)     any assessments or analyses concerning any rating agency ratings relating to the Securitizations; and

    (vi)    communications with any third parties regarding the Certificates or Your investment in them.

8

As to each such individual, position, department, committee or other group, the organizational relationships between and among them; the names and Composition of any groups or other bodies that were responsible for overseeing or supporting more than one of them; and a description of the tools employed in the ordinary course of business to carry out communication and coordination between and among them.

4.   The Composition of each group responsible for any aspect of Your purchase of mortgage loans, including Your due diligence, Your communications with mortgage loan originators, Your pricing decisions, Your monitoring of the performance of the mortgage loans, and Your communications with any third parties, including but not limited to any operational reviews of third parties in connection with the mortgage loans or Your purchase of them from the time period beginning January 1, 2004 through September 6, 2007.

5.   The Composition of each group responsible for any aspect of Your securitizations of mortgage loans, including Your due diligence, Your communications with potential investors in Your securitizations, Your pricing decisions, Your monitoring of the performance of the securitizations, and Your communications with any third parties regarding the securitizations from the time period beginning January 1, 2004 through September 6, 2007.

6.   The Composition of each group responsible for any aspect of Your economic modeling relating to the housing or mortgage markets, housing or mortgage industry trends, the Certificates or the Securitizations, Your own securitizations, and mortgage loans You purchased from the time period beginning January 1, 2004 through the present.

7.   The Composition of each group responsible for the development or application of any intellectual property or other tools used to detect appraisal bias from the time period beginning January 1, 2004 through the present.

8.   The Composition of each group responsible for or having knowledge of the effectiveness and limitations of automated valuation modeling from the time period beginning January 1, 2004 through the present.

9.   For each Securitization, the identities of any external due diligence firms that assisted Fannie Mae or Freddie Mac.

10.   The systems through which Fannie Mae and Freddie Mac maintain hard-copy files in the ordinary course that are relevant to each Securitization, private label RMBS investments generally, and the subject of discovery requests in this Action.

11.   The systems through which Fannie Mae and Freddie Mac maintain electronic files in the ordinary course that are relevant to each Securitization, private label RMBS investments generally, and the subject of discovery requests in this Action.

12.   The Composition of each group responsible for the decision to file the Actions.

# EXHIBIT 7

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **HON. EILEEN BRANSTEN**

_____
_Justice_

PART 3

Index Number : 602825/2008
MBIA INSURANCE
vs.
COUNTRYWIDE HOME LOANS
SEQUENCE NUMBER : 048
COMPEL

INDEX NO. 602825/08

MOTION DATE 2/15/12

MOTION SEQ. NO. 048

The following papers, numbered 1 to __3__ , were read on this motion to/for  compel _____

| | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). 1 |
| Answering Affidavits — Exhibits _____ | No(s). 2 |
| Replying Affidavits _____ | No(s). 3 |

Upon the foregoing papers, it is ordered that this motion is

**IS DECIDED**

**IN ACCORDANCE WITH ACCOMPANYING MEMORANDUM DECISION**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: 4-23-12

_____ J.S.C.
**HON. EILEEN BRANSTEN**

1. CHECK ONE: ............................................  ☐ CASE DISPOSED    ☑ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...................MOTION IS:  ☐ GRANTED  ☑ DENIED  ☐ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ...............................  ☐ SETTLE ORDER    ☐ SUBMIT ORDER
☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 3
-------------------------------------------------------------------x
MBIA INSURANCE CORPORATION,

                    Plaintiff,

          -against-                          Index No.:     602825/08
                                             Motion Date:  2/15/12
COUNTRYWIDE HOME LOANS, INC.,                Motion Seq. No.: 048
COUNTRYWIDE SECURITIES CORP.,
COUNTRYWIDE FINANCIAL CORP.,
COUNTRYWIDE HOME LOANS
SERVICING, LP AND BANK OF AMERICA
CORP.,

                    Defendants.
-------------------------------------------------------------------x
PRESENT: HON. EILEEN BRANSTEN

          In motion sequence number 048, defendants Countrywide Home Loans, Inc.,

Countrywide Securities Corporation, Countrywide Financial Corporation and Countrywide

Home Loans Servicing, LP (collectively, "Countrywide" or the "Countrywide Defendants")

move pursuant to CPLR 3124 and New York Insurance Law ("NYIL") § 3105 to compel

plaintiff MBIA Insurance Corporation ("MBIA") to produce documents relating to MBIA's

insuring of home equity line of credit ("HELOC") and closed-end, second-lien (CES)

securitizations, other than the securitizations at issue in this matter, from January 1, 2004

through July 31, 2007. MBIA opposes.

## **BACKGROUND**

          The base facts of this matter have been discussed extensively in previous decisions

of this court. Thus, only details necessary to this motion are referenced herein.

This action stems out of fifteen residential mortgage-backed securitizations (the "securitizations"). The securitizations were collateralized by residential mortgages that were originated and purchased by defendant Countrywide Home Loans, Inc. ("CHL").  MBIA insured the securitizations, guaranteeing payments to the securitizations' investors.

From the onset of discovery in this matter, Countrywide has sought from MBIA documents relating to MBIA's insuring of residential mortgage-backed securitizations ("RMBS") with entities other than Countrywide.  MBIA has denied the relevancy of the documents, but has produced documents that it contends represent MBIA's policies and procedures for insuring HELOC and CES securitizations.

Countrywide, in response to discovery requests by MBIA, has similarly denied the relevance of information beyond that directly pertaining to the securitizations.

This court has consistently limited both parties' discovery requests to the fifteen securitizations at issue in this case through written decisions and at conferences.

On May 25, 2011, MBIA filed a motion for partial summary judgment (motion sequence number 037). Pertinent to this motion, MBIA sought therein a declaration that in order to prevail on its claims it need only prove that an alleged misrepresentation by Countrywide induced MBIA to issue financial guarantee insurance policies on terms to which it would not have agreed had MBIA known the true facts and that MBIA need not show a causal connection between Countrywide's alleged misrepresentations and MBIA's

claims made pursuant to MBIA's insurance policies.  MBIA supported its argument with N.Y. Insurance Law §§ 3105 and 3106.  MBIA had not raised these sections of the New York Insurance Law prior to its motion.

Following MBIA's filing for partial summary judgment based in part on NYIL §§ 3105 and 3106, Countrywide renewed its discovery requests for information relating to MBIA's insuring of HELOC and CES securitizations other than those at issue in this matter. Countrywide contended, and contends in this motion, that under NYIL § 3105 it is entitled to information concerning MBIA's practice of accepting or rejecting risks similar to the securitizations at issue.  MBIA stated that it had produced all relevant materials in providing its underwriting manuals, rules and bulletins.

This court issued its decision on MBIA's motion for partial summary judgment on January 3, 2012.  Therein, the court held that MBIA's claims for fraud and breach of warranty may be informed by NYIL § 3105.  The court found that MBIA may show materiality on these claims by showing that it relied on Countrywide's alleged misrepresentations when MBIA decided to insure the securitizations, when, had MBIA known the allegedly true facts, MBIA might not have taken the same action, or would have taken action in a different manner. *See* Decision and Order of January 3, 2012 (the "1/3/12 Order").

Following the court's 1/3/12 Order, Countrywide renewed its requests to MBIA seeking discovery pertaining to MBIA's practices of insuring risks similar to the

securitizations.   MBIA refused, again on grounds that it had already produced relevant documents.

Countrywide now brings motion sequence number 048 to compel MBIA to produce documents identifying, in Countrywide's words: "(1) documents identifying [s]imilar [r]isks considered by MBIA; and (2) documents concerning any actions taken by MBIA with respect to those [s]imilar [r]isks" during the same time period as MBIA insured the securitizations. Countrywide Memo.,[1] p. 8.   Countrywide contends that it must obtain the requested materials in order to prepare its defense on materiality.   Countrywide asserts that the documents are relevant to compare the risks MBIA insured in the securitizations to other securitization risks MBIA considered insuring during the same time period.

Specifically, Countrywide seeks documents relating twenty-three HELOC and CES securitizations that MBIA insured as well as documents relating to an unnumbered amount of additional HELOC and CES securitizations that MBIA considered insuring, but did not. Collectively, the "Similar Risks."   Countrywide contends that these documents will allow them to identify and assess the Similar Risks.

In order to identify Similar Risks, Countrywide seeks documents showing "(i) applications for financial guarantee insurance (sometimes known as bids or requests for bids; (ii) transaction documents governing the deals; (iii) any credit enhancement considered

---

[1] The Countrywide Defendants' Memorandum of Law in Support of Motion to Compel Production of Documents Concerning Plaintiff's Practice of Insuring Similar Risks ("Countrywide Memo.").

or used for the deals; and (iv) information concerning the underlying mortgage loans found in loan tapes and models." Countrywide Memo., p. 9.

In order to assess Similar Risks, Countrywide seeks documents showing: "(i) credit memoranda; (ii) risk assessments fo the deals or underlying mortgage loans such as results of loan file due diligence; (iii) pricing determinations made on the premiums to be charged for the deals; and (iv) documents concerning the decision to accept or reject the application for financial guaranty insurance." *Id.*

Countrywide contends that these documents are the minimum amount of discovery necessary for its defense on the issue of materiality.

## **Analysis**

### 1.   Countrywide's Motion to Compel is Properly Considered

The court first notes that Countrywide's motion to compel is properly considered at this time. Countrywide brought a motion to compel in 2009. That motion was denied on January 29, 2010. That motion did not consider whether Countrywide's requests for information on Similar Risks were relevant or material under MBIA's claims as informed by New York Insurance Law. MBIA's motion for partial summary judgment and this court's January 3, 2012 decision thereon was MBIA's first argument based on New York Insurance Law. Requested discovery related to New York Insurance Law was therefore not decided in Countrywide's 2009 motion to compel or in the court's January 29, 2010 decision.

The January 30, 2012 conference call between the parties and the court did not result in denial of Countrywide's requests brought in this motion, and did provide Countrywide leave to file the instant motion.

### 2.   Standard of Law

New York embraces a liberal discovery standard, requiring full disclosure of all evidence material and necessary to the prosecution or defense of an action. *Spectrum Sys. Int'l Corp. v. Chemical Bank*, 78 N.Y.2d 371, 376 (1991) quoting CPLR § 3101 (a). "Material and necessary" facts are those that will "will assist preparation for trial by sharpening the issues and reducing delay and prolixity." *Allen v. Crowell-Collier Pub. Co.*, 21 N.Y.2d 403, 406-07 (1968). CPLR § 3101 embodies the policy determination that expansive discovery is encouraged in New York in order to provide fair and effective resolution of disputes on the merits. *Id.*, citing 3A Weinstein-Korn-Miller, N.Y. Civ. Prac. ¶¶ 3101.01-3101.03. The requirements of pretrial disclosure extend not only to directly admissible proof, but to that which may lead to the disclosure of admissible proof, including that which may only be used in cross-exam. *See Polygram Holding, Inc. v. Cafaro*, 42 A.D.3d 339, 341 (1st Dep't 2007).

### 3.   Analysis

Countrywide asserts that it is entitled to documents that allow it to identify and assess Similar Risks (*see* p. 5, *supra*). Countrywide contends that under NYIL § 3105, evidence of MBIA's practice in insuring or rejecting Similar Risks is not only relevant, but is directly

*MBIA v. Countrywide*

Index No. 602825/08
Page 7

admissible under NYIL § 3105(c) in support of Countrywide's materiality defense.  Further,

Countrywide contends that MBIA's actual practices are not reflected in the underwriting

policies, procedures and guidelines that MBIA contends it has produced.  Countrywide

argues that MBIA had no underwriting policies at all for HELOC and CES securitizations

until at least June 2006.  *See* O'Connell Affirm., Exs. 19, 20.[2]  On this basis, Countrywide

contends that MBIA had no risk policies in place from January 1, 2004 until June 2006, when

MBIA insured six of the fifteen securitizations at issue.  Countrywide therefore asserts that

the documents it now seeks are the only manner in which it may assess Similar Risks for the

January 1, 2004 until June 2006 time period.

Countrywide further asserts that the documentary evidence sought will show that

MBIA's actual practice in insuring risks diverged from its stated guidelines.  *See* O'Connell

Affirm., Exs. 5-7, 21.  It states that MBIA employees have testified that they did not recall

MBIA's written underwriting policies or practices, and that at least one employee did not

comply with MBIA's written standards.  O'Connell Affirm., Exs. 22, 23.  Countrywide thus

argues that MBIA first did not have applicable underwriting policies, procedures and

guidelines and, when it did, the policies, procedures and guidelines were not followed.

Countrywide contends that it must therefore be allowed the discovery requested in this

motion to enable it to show MBIA's actual practices in insuring Similar Risks.

---

[2]  Affirmation of Justin D. O'Connell in Support of the Countrywide Defendants' Motion
to Compel Production of Documents Concerning Plaintiff's Practice of Insuring Similar Risks
("O'Connell Affirm.").

*MBIA v. Countrywide*                                      Index No. 602825/08
                                                                    Page 8

In opposition, MBIA asserts that the documents requested by Countrywide relating to HELOC and CES securitizations not here at issue have no bearing on this case, and therefore will not help to sharpen issues for trial. Rather, MBIA claims, providing the requested discovery will not only confuse the issues before the court, but will delay the pretrial schedule and the trial of this action. Further, MBIA contends that the possible relevance of Countrywide's requested disclosure is outweighed by the expense, burden and prejudice MBIA will suffer from being forced to produce the volume of documents that Countrywide requests. Finally, MBIA contends that NYIL does not require the expansive discovery requested and that MBIA's burden is satisfied by producing its underwriting guidelines and its representatives for deposition and trial.

For an insurer to present evidence of materiality of misrepresentations under NYIL § 3105(c), the insurer "must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins or rules pertaining to similar risks, to establish that it would not have issued the same policy if the correct information had been disclosed in the application." *Curanovic v. New York Cent. Mut. Fire Ins. Co.*, 307 A.D.2d 435, 437 (3d Dep't 2003). This court, citing multiple cases, has formerly held that an insurer may present evidence of materiality of representations or misrepresentations by an insured by providing "underwriting manuals, bulletins, or rules pertaining to similar risks, which show that it would not have issued the same policy if the correct information had been disclosed in the application." *East 115th Street Realty Corp. v. Focus & Struga Bldg.*, 27

*MBIA v. Countrywide*

Index No. 602825/08
Page 9

Misc.3d 1206(A), *7 (N.Y. Sup. Ct., N.Y. Co. March 9, 2010) citing *Roudneva v. Bankers Life Ins. Co. of New York*, 35 A.D.3d 580, 581 (2d Dep't 2006). This case differs in that the insured seeks to present a defense based upon materiality. However, the court finds that the standard remains the same. Countrywide may posit its defense based on materiality through MBIA's underwriting guidelines, or lack thereof, and testimony of MBIA's underwriters and employees.

Countrywide asserts that MBIA's cited case law is inapposite while itself overstating the case law deciding summary judgment when Countrywide argues that New York courts "require full disclosure of [an insurer's] practices with respect to applicants with similar histories." Countrywide Memo., p. 12; Countrywide Reply Memo.[3] In *Sonkin Assocs., Inc. v. Columbian Mut. Life Ins. Co.*, 150 A.D.2d 764 (2d Dep't 1989), a decision upon motion for summary judgment, the Second Department stated that the defendant insurance company could prove that it would have rejected the insured's application by showing "proof as to its underwriting practices with respect to applicants with similar histories." *Id.* at 764. The court did not state that the required proof must be of comparative case studies, and the court finds nothing showing that underwriting practices and polices are insufficient to prove standards used for all applicants for insurance.

---

[3] The Countrywide Defendants' Reply Memorandum of Law in Support of Motion to Compel Production of Documents Concerning Plaintiff's Practice of Insuring Similar Risks ("Countrywide Reply Memo.").

Similarly, *Lenhard v. Genesee Patrons Co-Op Ins. Co.*, 31 A.D.3d 831 (3d Dep't 2006), also a motion for summary judgment, does not as strongly support Countrywide's argument as it asserts. In *Lenhard*, the court did hold that the movant therein was required to meet their burden by "clear and substantially uncontradicted evidence [citation omitted], which could include documentation showing that the insurer had refused coverage in the past under similar circumstances." *Id.* at 833. The quoted language reflects the court restating the standard of law for summary judgment, and notes that the movant could have met their burden on summary judgment by showing that it had refused house insurance coverage in situations similar to the insured at issue. The Third Department did not state that the only manner in which the insured was able to meet its burden was by direct comparison, and this court will not extend the holding in that manner.

Further, the recent First Department case *Ashkenazi v. AXA Equitable Life Ins. Co.*, 91 A.D.3d 576 (1st Dep't 2012) is not dispositive. Therein, the First Department held that the plaintiff had demonstrated that additional discovery was needed on whether the defendant's underwriting guidelines are complete, whether the defendant ignored its own underwriting requirements and whether certain information was material to defendants's underwriting. The First Department based its decision on trial transcripts that were not provided to this court, and are not freely available. That court ordered additional discovery, but did not order discovery of all similar policies issued by the defendant.

Here, Countrywide has alleged, with supporting documents and testimony that MBIA lacked underwriting policies concerning HELOCs and CESs prior to June of 2006 and that MBIA employees did not follow its existing guidelines. Countrywide has thus shown that it is aware of MBIA's practices and procedures, or lack of, with regard to the securitizations at issue.

MBIA has, in turn, has asserted that Countrywide is in possession of its underwriting guidelines for the securitizations issued prior to 2006, (*see* O'Connell Affirm., Ex. 5) and that those guidelines were followed. Sheth Affirm.[4], Ex. 10, Deposition Transcript of Theresa M. Murray at 33. MBIA acknowledges that it did not have a specific finalized set of underwriting guidelines for structured risk prior to 2006, but contends that underwriting guidelines in place prior to that were utilized. *See* MBIA Memo.,[5] p. 17, n.14. MBIA further contends that it has produced all relevant MBIA underwriting guidelines, policies and practices.

The court finds that MBIA has produced the relevant information for Countrywide to present a defense based upon materiality under common law and NYIL § 3105. The alleged materiality of statements made by Countrywide hinges on the securitizations at issue in this

---

[4] Affirmation of Manisha M. Sheth in Opposition to the Countrywide Defendants' Motion to Compel Documents Concerning Plaintiff's Practice of Insuring Similar Risks ("Sheth Affirm.").

[5] Plaintiff's Memorandum of Law Opposition to the Countrywide Defendants' Motion to Compel Documents Concerning Plaintiff's Practice of Insuring Similar Risks ("MBIA Memo.").

matter and whether any statements Countrywide made caused MBIA to insure the securitizations when, had it known the alleged true facts, it would not have insured the securitizations or would have insure them on different terms. *See Process Plants Corp. v. Beneficial Natl. Life Ins., Co.*, 53 A.D.2d 214, 216–217 (1st Dep't1976); *see also Equitable Life Assur. Soc. of U.S. v. Schusterman*, 255 A.D. 54, 56 (1st Dep't 1938). MBIA's actual practice in insuring the securitizations may be determined from the securitizations, documents, including guidelines or lack thereof, that MBIA has produced and relevant witness testimony.

Further, equity does not dictate that MBIA produce eight categories of documents across twenty-three known insured securitizations and an unknown number of securitization that MBIA did not insure between January 1, 2004 and July 31, 2007. The burden and delay of the discovery far outweighs the probative value of the material. *Andon ex rel. Andon v. 302-304 Mott Street Assocs.*, 94 N.Y.2d 740, 747 (2000).

(Order on following page.)

*MBIA v. Countrywide*

Index No. 602825/08
Page 13

## <u>Order</u>

For the above reasons, it is hereby:

ORDERED that defendants Countrywide Home Loans, Inc., Countrywide Securities

Corporation, Countrywide Financial Corporation and Countrywide Home Loans Servicing,

LP's motion to compel is denied.

This constitutes the decision and order of the court.

Dated: New York, New York
April 23, 2012

ENTER

Hon. Eileen Bransten, J.S.C.

# EXHIBIT 8

**REDACTED**

# EXHIBIT 9

# REDACTED

# EXHIBIT 10

# REDACTED

# EXHIBIT 11

**REDACTED**

# EXHIBIT 12

**REDACTED**

# EXHIBIT 13



36050360

Feb 18 2011
5:01PM

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     A. William Urquhart (Bar No. 140996)
2    billurquhart@quinnemanuel.com
     Harry A. Olivar, Jr. (Bar No. 143089)
3    harryolivar@quinnemanuel.com
     Danielle L. Gilmore (Bar No. 171457)
4    daniellegilmore@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:     (213) 443-3000
6  Facsimile:     (213) 443-3100

7  Attorneys for Plaintiff
   MBIA Insurance Corporation

8  [Additional Counsel Listed on Signature Pages]

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                      COUNTY OF LOS ANGELES

11                          CENTRAL DISTRICT

| | |
|---|---|
| 12  MBIA INSURANCE CORPORATION, a<br>New York corporation,<br>13<br>14             Plaintiff,<br>15        vs.<br>16  INDYMAC ABS, INC., a Delaware<br>Corporation, HOME EQUITY MORTGAGE<br>17  LOAN ASSET-BACKED TRUST, SERIES<br>2006-H4, a Delaware statutory trust; HOME<br>18  EQUITY MORTGAGE LOAN ASSET-<br>BACKED TRUST, SERIES INDS 2007-1, a<br>19  New York common law trust; HOME<br>EQUITY MORTGAGE LOAN ASSET-<br>20  BACKED TRUST, SERIES INDS 2007-2, a<br>New York common law trust; CREDIT<br>21  SUISSE SECURITIES (USA), L.L.C., a<br>Delaware limited liability corporation; UBS<br>22  SECURITIES, LLC, a Delaware corporation;<br>JPMORGAN CHASE & CO., a Delaware<br>23  corporation; MICHAEL PERRY, an<br>individual; A. SCOTT KEYS, an individual;<br>24  JILL JACOBSON, an individual; KEVIN<br>CALLAN, an individual; and JOHN and<br>25  JANE DOES 1-100,<br>26             Defendants. | CASE NO. BC422358<br><br>**JOINT DISCOVERY STATUS REPORT**<br><br>[Assigned to the Hon. Carl J. West]<br><br>Conf:       February 24, 2011<br>Time:       3:00 p.m.<br>Dept.:      322<br><br>Filing Date:   September 22, 2009<br>Trial Date:    None |

27

28

03446.61649/3961440.6

1    Pursuant to the Court's December 10, 2010 Minute Order and February 2, 2011 posting

2 directing the parties to meet and confer, Plaintiff MBIA Insurance Corporation ("MBIA") and

3 Defendants Credit Suisse Securities (USA) LLC, UBS Securities LLC and J.P. Morgan Securities

4 LLC (collectively, the "Underwriter Defendants") submit the following Joint Discovery Status

5 Report.

6 **I.    DISCOVERY DISPUTES REMAINING AFTER THE PARTIES' MEET AND**

7 **CONFER**

8    On January 28, 2011, the parties exchanged objections and responses to the outstanding

9 requests for production of documents.  Over the course of meet and confer discussions that

10 followed, the parties were able to resolve several disputes, but were unable to reach agreement

11 concerning the one issue addressed in Section II below.

12 **II.    THE PARTIES' POSITIONS REGARDING THE SCOPE OF DISCOVERY**

13    **A.    MBIA's Position**

14       **1.    Introduction**

15    The Underwriters have refused to produce discoverable materials regarding their

16 knowledge of IndyMac's business practices that are central to this case – despite extensive prior

17 involvement with IndyMac, they say they will produce only documents relating to the three

18 securitizations MBIA insured (and will only search files of those "deal teams").  Having asked to

19 perform just one "comprehensive[]"[1] search for documents, the Underwriters cannot properly limit

20 that search to exclude discoverable materials.  And the Underwriters' full knowledge of

21 IndyMac's business practices at issue in this case is plainly discoverable – regardless of how they

22 obtained it.  As the Court advised the Underwriters at the last status conference, MBIA has "got to

23 be able to ask around and look around to see what your people knew;"[2] the Underwriters have no

24 proper basis for seeking to limit the group of persons whose knowledge is discoverable.

25 ───────────────────

26   [1]  *Id.* at 13:1:2; *see also id.* at 13:2-5 ("I will have my head handed to me if I go and ask my
clients to go through this process and produce documents and have a second round.").
27   [2]  *Id.* at 20:3-4.

28

**2.**     **The Restrictions the Underwriters Seek to Impose on MBIA's**

**Document Discovery Are Untenable**

The Underwriters concede they obtained information from IndyMac in connection with several securitizations beyond the three securitizations insured by MBIA, and the Underwriters' knowledge of IndyMac's practices is necessarily memorialized in documents beyond those limited to those three securitizations.  MBIA has *not* requested all paper on all IndyMac deals underwritten by the Underwriters, but has limited the requests to specific categories of information related to relevant IndyMac business practices.  Request No. 61 to Credit Suisse Securities, for example, seeks documents showing the Underwriters' knowledge of, among other things, (1) "IndyMac's compliance or non-compliance with its stated underwriting guidelines," (2) "IndyMac's methods of selection of loans for inclusion in securitization transactions," (3) the "quality of the mortgage loans serving as collateral in any IndyMac residential mortgage-backed securitizations," and (4) "known or suspected fraud in the origination of any of the mortgage loans."  The Underwriters, however, have refused to produce or search for responsive documents beyond the three securitizations, maintaining that discovery must be limited to those deals.[3] (Notably, in response to the Underwriters' discovery requests, MBIA has agreed to produce all of its documents relating to IndyMac, regardless of the source.)  The Underwriters have produced no law that supports such a narrow limitation on discovery.  That no law supports the Underwriters' position is unsurprising, given the broad scope of permissible discovery.  *See Emerson Elec. Co. v. Super. Ct.*, 16 Cal. 4th 1101, 1108 (1997) (scope of discovery is expansive) (citing *Greyhound Corp. v. Super. Ct.*, 56 Cal. 2d 355, 377-78 (1961) (discovery statute is construed broadly to uphold the right to discovery wherever possible)); *Colonial Life & Accident Ins. Co. v. Super. Ct.*,

---

[3]   The Underwriters also propose to limit their search for responsive documents to "the archived emails of the employees who directly participated in the underwriting deals at issue for the three month window surrounding the closing date of the securitizations." February 14, 2011 letter from J. Christopher Jennings at 1.

1   31 Cal. 3d 785, 790 (1982) (any doubt as to discoverability is resolved in favor of permitting

2   discovery).

3        Consistent with the above case law, the Court stated at the last status conference that "in

4   order to not run into the problem that you're suggesting and that is [that] multiple searches are a

5   major burden on [your] clients, [your clients] only want to do this once; if that's your primary

6   concern and your goal then I would err on the side of probably permitting a broader request to be

7   enforced so you only had to do it once."[4]

8                         *(a)     IndyMac's Relevant Practices, and the Underwriters' Full*

9                              *Knowledge of IndyMac's Relevant Practices, Are Discoverable*

10        The Underwriters' position that discovery must be limited to their knowledge from three

11   deals is contrary to law.  No one disputes that MBIA's claims, and the Underwriters' defenses,

12   place the Underwriters' knowledge at issue.  Knowledge of an entity is not restricted to the "deal

13   team;" in securities cases, a plaintiff can introduce "[p]roof of a corporation's collective

14   knowledge and intent."  *In re Worldcom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 497 (S.D.N.Y.

15   2005).   The knowledge of a corporation is "the sum of the knowledge of all the employees."  *Id.*

16   (quoting *United States v. Bank of New England*, 821 F.2d 844 (1st Cir. 1987)).  The principle of

17   collective knowledge comports with the reality that "[c]orporations compartmentalize knowledge,

18   subdividing the elements of specific duties and operations into smaller departments.  The

19   aggregate of those components constitutes the corporation's knowledge of a particular operation."

20   *Id.*  When companies are defendants in securities cases, courts "concentrate on the firm's

21   collective state of mind, not that of individual partners or employees."  *Id.*; *see*, *e.g.*, *Chill v. Gen.

22   Elec. Co.*, 101 F.3d 263 269-70 (2d Cir. 1996); *In re Philip Serv. Corp. Sec. Litig.*, No. 98 Civ.

23   0835 (MBM), 2004 WL 1152501, at * 7-8 (S.D.N.Y. May 24, 2004); *In re Oxford Health Plans,

24   Inc. Sec. Litig.*, 51 F. Supp. 2d 290, 295 (S.D.N.Y. 1999).

25

26   _____

27        [4]   Dec. 10, 2010 Tr. at 18:14-20.

28

1    The Underwriters' effort to limit discovery by arguing that their diligence for the

2  securitizations MBIA insured was relegated to a few individuals not only is contrary to law, but it

3  also would exclude plainly relevant materials.  Under the Underwriters' proposed limitation, for

4  example, MBIA could not discover documents showing that the Underwriters' employees who

5  worked on previous securitizations, but not these three, knew that IndyMac was systematically

6  lying about its underwriting practices, its appraisal practices, its loan-to-value ratios, or the

7  characteristics of its borrowers.  If this were the law, the Underwriters could solidify a due

8  diligence defense by assigning a brand-new team to each securitization – in their view, their other

9  employees' prior knowledge of the issuer's wrongdoing would not only not "count," it would not

10  even be discoverable.

11    This view of the world is supported by no law whatsoever and is contrary to the above-

12  cited authorities.  The Underwriters' scienter with respect to IndyMac's misrepresentations

13  encompasses the knowledge of the Underwriters' employees, whether or not the Underwriters

14  assigned them to any particular deal.

15    At the meet and confer, the Underwriters would not agree to permit discovery even as to

16  their *officers* who had prior involvement with IndyMac on other deals.  It is basic California law

17  that "[k]nowledge of an officer of a corporation is imputed to the corporation."  *Peregrine*

18  *Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658 (1st Dist. 2005)

19  (citing *Sanders v. Magill*, 9 Cal. 2d 145, 153 (1937); *United California Bank v. Maltzman*, 44 Cal.

20  App. 3d 41, 51-52 (2d Dist. 1974)).  There is plainly no basis for the Underwriters to resist

21  discovery of what their officers (and hence, the Underwriters) knew about IndyMac's relevant

22  business practices.

23    **(b)      The Underwriters' Good Faith/Lack of Knowledge Defense Puts**

24    **Both Their Knowledge, and Their Inquiry into Such Knowledge,**

25    **Further at Issue**

26    The Underwriters assert a "good faith" or "due diligence" defense – that they "did not

27  know, and in the exercise of reasonable care could not have known, of [the alleged]

28

misrepresentations or omissions."  Answers, Twenty-Ninth Defense, 9:17-19; *see also* Cal. Corp. Code § 25501 (providing an affirmative defense if an Underwriter "exercised reasonable care and did not know (or if he or she had exercised reasonable care would not have known) of the untruth or omission").  This affirmative defense highlights the unfairness and impropriety of the restrictions the Underwriters propose.  When as here due diligence is asserted, "the standard of care by which [an Underwriter's] conduct must be measured is not defined solely by industry practice, but must be judged by a more expansive standard of reasonable prudence."  *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001); *see also In re Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994) ("[T]he standard of reasonableness shall be that required of a prudent man in the management of his own property."); *In re Worldcom*, 346 F. Supp. 2d 628, 663 (S.D.N.Y. 2004) (same); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 208 (1975) (due diligence is a "negligence standard.").  This standard requires that underwriters "exercise a *high degree* of care in investigation and independent verification of the company's representations."  *Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 582 (E.D.N.Y. 1971) (emphasis added).  The underwriter "must make an investigation reasonably calculated to reveal all of those facts which would be of interest to a reasonably prudent investor.*"  Id.* at 577.  The "task of the underwriter [is] to go behind the publicly available information and, using its direct access to the issuing company, conduct a searching inquiry . . . ." *In re Worldcom, Inc. Sec. Litig.*, No. 02-Civ.-3288(DLC), 2005 WL 408137, at *3 (S.D.N.Y.  Feb. 22, 2005).

Any "searching inquiry" by the Underwriters into the truth of the Offering Materials should have involved investigation into the Underwriters' *own prior knowledge* of IndyMac's practices, even if obtained by a different deal team.  MBIA is entitled to obtain discovery of what the Underwriters knew or *could have learned*, had they searched their own files and interviewed their own personnel.  This is hardly an exacting standard, given that "[n]o greater reliance in our self-regulatory system is placed on any single participant in the issuance of securities than upon the underwriters." *In re Worldcom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 662 (S.D.N.Y. 2004) (citing *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 48 F.2d 341, 370 (2d Cir. 1973); *see also*

*id.* at 662 (underwriters are the "first line of defense with respect to material misrepresentations and omissions in registration statements."). *See generally In re Worldcom*, 346 F. Supp. 2d at 662 (courts must be "particularly scrupulous in examining [underwriters'] conduct").

The Underwriters cannot rely on the position that their "deal" team "never heard anything negative." *Rauscher*, 254 F.3d at 858; *see also Feit*, 332 F. Supp. at 581 ("[T]he underwriters must play devil's advocate"). *A fortiori,* a defense of "we knew it from other deals, but this deal had a new team" is not a defense at all.   The Underwriters' assertion of a "good faith" or "due diligence" defense requires them to show that they made probative inquiries of any persons likely to possess relevant information. *See Toolworks*, 50 F.3d at 622 (customers, retailers); *Weinberger* 1990 WL 260676, at *3 (management, employees, suppliers, distributors); *Int'l Rectifier*, 1997 WL 529600, at *8 (consultants).  Such inquiries obviously should have extended to the Underwriters' own employees with relevant knowledge of IndyMac, and MBIA is entitled to discover what those employees knew.  The discovery restrictions proposed by the Underwriter Defendants cannot be reconciled with the legal standard.

### 3.    MBIA's Proposal

MBIA proposes the following:   (1) The Court should rule that the Underwriters may not properly restrict discovery (and particularly discovery into their corporate knowledge) to the three securitizations MBIA insured and to employees on the "deal teams" for those securitizations; and (2) that the parties be directed to meet and confer further regarding the Underwriters' document productions, and the parameters for electronic searches, in light of that ruling.

### B.    The Underwriter Defendants' Position

MBIA demands that all three Underwriter Defendants, regardless of their role in underwriting the securitizations at issue, should collect, restore, review and produce *all* documents that relate in any way to IndyMac, including any securitization that the Underwriter Defendants underwrote in any capacity over a four year period, from 2004 to 2007.  (*See* MBIA's Fourth Set of Requests for Production of Documents ("RFPs") No. 61 (as to Credit Suisse), No. 58 (as to JPMS), and No. 60 (as to UBS).)  In a fourteen part request, MBIA demands "[a]ll DOCUMENTS

1 that constitute or reflect any information communicated to or by YOU, in the course of any

2 transactions or dealing with INDYMAC or otherwise, RELATING TO or REFERRING TO

3 aspects of INDYMAC's business during the time period from January 1, 2004 to December 31,

4 2007."  In its Requests, MBIA broadly defines "INDYMAC" as "IndyMac ABS, Inc., IndyMac

5 Securities Corp., IndyMac Bank, AND/OR IndyMac Bancorp."  MBIA defines "aspects of

6 INDYMAC's business" to include anything from "business strategy" for securitizations to

7 IndyMac's "method of selection of loans," and includes such aspects as "any issuance by

8 INDYMAC of mortgage loans to borrowers who could not afford to repay the mortgage loans, or

9 who INDYMAC knew or should have know were including misstatements in their loan

10 applications."  The  request on its face is not even limited to securitizations, but presumably would

11 include documents reflecting investment banking work, lender relationships, analyst coverage, and

12 any number of other connections these global financial services firms may have had with

13 IndyMac.

14     MBIA apparently would have the Underwriter Defendants restore four years of archived

15 emails from every single one of innumerable employees who worked on any one of countless

16 IndyMac securitizations or who might have "otherwise" received any information about IndyMac,

17 even if that employee never worked on, or was even entirely unaware of, the deals at issue.  MBIA

18 would also have the Underwriter Defendants restore four years of archived emails for every single

19 officer of all three Underwriter Defendants, even if those officers never worked on any IndyMac-

20 related deal (to say nothing of the three deals at issue).  The information MBIA seeks is

21 breathtaking in its scope, and paralyzing in its demands, and the Underwriter Defendants'

22 objections should be sustained.

### 1.    MBIA's Discovery Seeks Documents That Are Not Relevant.

24     During the parties' meet and confer sessions, MBIA asserted that its overbroad requests

25 were justified on the ground that any information about IndyMac known by officers and

26 employees of the Underwriter Defendants, even if they did not work on the securitizations at issue,

27 is imputed to the company.  The knowledge of Underwriter Defendants' officers and employees

28

1  who did not work on any of the three securitizations at issue, however, is not imputed to the

2  company and is not otherwise relevant to the subject matter of this action, and thus is not a proper

3  area of discovery under California law.  *See* Cal. Civ. Proc. Code § 2016.010.

4      First, California law places strict limitations on discovery of corporate officers who were

5  not directly involved in the transaction or occurrence at issue.  In *Liberty Mutual Ins. Co. v.*

6  *Superior Court*, 10 Cal. App. 4th 1282 (1992), the California Court of Appeal granted an

7  insurance company president's motion for protective order to prevent his deposition because the

8  plaintiff could not show that the president had unique or superior personal knowledge of

9  discoverable information relating to its suit against the company.  *Id.* at 1289.  The court noted

10  that "[t]he head of a large national corporation will generally not have knowledge of a specific

11  incident or case handled several levels down the corporate pyramid."  *Id.* at 1287.  Here, MBIA

12  cannot show why any officer of the Underwriter Defendants, or other employee who did not work

13  on the IndyMac securitizations at issue here, would have any knowledge of IndyMac's alleged

14  failure to abide by its underwriting standards in connection with the three securitizations at issue.

15      Second, even assuming officers and lower level employees had knowledge of IndyMac's

16  underwriting practices generally (which MBIA has not established), MBIA is not entitled to a

17  fishing expedition into those employees files if they would have no knowledge of IndyMac's

18  underwriting practices concerning the loans underlying the three securitizations at issue.

19      In *AIG Global Sec. Lending Corp. v. Banc of America Sec. LLC*, Case No. 01-CIV-11448

20  (JGK) (HBP), 2006 WL 1206333 (S.D.N.Y. May 2, 2006), the court refused to permit the very

21  discovery MBIA seeks here.  In that case, investors in Helig-Meyers asset-backed securities

22  alleged that the underwriter, Banc of America, committed securities fraud under various

23  provisions of the federal securities law, common law fraud, and negligent misrepresentation, by

24  allegedly making false and misleading statements in the offering documents.  *AIG Global Sec.*

25  *Lending Corp. v. Banc of America Sec. LLC*, 254 F. Supp. 2d 373, 376 (S.D.N.Y. 2003).

26      During discovery, Banc of America requested and then moved to compel the production of

27  all "documents concerning all of plaintiffs' prior investments in Heilig-Meyers," and "information

28

-8-

relating to Heilig-Meyers known by or available to any of plaintiffs' employees from 1996 through 2001." *AIG Global*, 2006 WL 1206333, at *1.  The plaintiff investors refused to produce that information, arguing that discovery into the knowledge of its employees should be limited to "information known to or in the actual possession of the specific individuals who made the investment decisions at issue in the action." *Id.*

The court agreed with the plaintiff investors that "the knowledge of other employees is not attributable to their corporate employers with respect to the investment decisions at issue here and is, therefore, irrelevant." *Id.*  The court held that inquiry into the knowledge of a corporation "is limited to the specific individuals involved in the transaction at issue, including any employees who had an obligation to provide information to those individuals concerning the transaction at issue." *Id.*  Specifically, even

> if employees of plaintiffs, other than those who participated in the securities purchase in issue, had previously investigated Heilig-Meyers or had previously purchased other Heilig-Meyers securities, any knowledge of those employees acquired in the course of those other transactions, unless actually communicated to the specific employees who made the investment decision that gave rise to [] this action, is not chargeable to the plaintiffs or the specific employees who made the investment decision at issue here.

*Id.* at *2.

The court also noted that the same result would apply if the investors had sought the discovery from the defendant, as MBIA does here:  in "assessing a corporate defendant's [*e.g.*, underwriter's] scienter, courts have rejected a 'collective scienter' theory" and stated that it would be "bizarre" to not apply the rule with reciprocity.  *Id.* at *3 (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)).  The Ninth Circuit has rejected the theory of collective scienter as a means to impose liability for securities fraud on a corporation in cases like this one.  *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) (requiring plaintiffs to "plead scienter with respect *to those individuals* who actually made the false statement" (emphasis added)).

The information MBIA is seeking here is precisely what the court in *AIG Global* held was not relevant in a securities fraud case.  Moreover, law at issue is also identical:  section 12(a)(2) of

-9-

1   the Securities Act of 1933, which is the model for sections 25401 and 25501 of the California

2   Corporate Securities Act at issue in this case.  *AIG Global* is therefore "persuasive authority."

3   *Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 937 (2011) ( "[F]ederal cases construing federal

4   securities laws are persuasive authority when interpreting our state law."); *Liberty Mutual*, 10 Cal.

5   App. 4th at 1288 (federal decisions on discovery are "persuasive" authority in California courts).

6         The knowledge of employees, including officers, who did not work on any of the three

7   securitizations at issue is particularly inapt in this case, where the allegedly false statements do not

8   concern information about the operations of the Underwriter Defendant companies.  Rather, they

9   concern entirely separate IndyMac entities that conducted business operations from the other side

10   of the country.  There is no reason to think that the Underwriter Defendants' employees, including

11   officers, who did not work on the securitizations at issue, would be in any position to have

12   knowledge concerning whether IndyMac complied with its loan underwriting standards

13   concerning any of the loans pooled in the securities at issue.  Certainly, there is no inference – to

14   say nothing of a "strong inference" – "that at least some corporate officials knew of the [alleged]

15   falsity."  *Glazer Capital Mgmt.*, 549 F.3d at 744.

16         Thus, MBIA may not rely upon the knowledge of any employees, including officers, of the

17   Underwriter Defendants who did not work on any of the three securitizations at issue, to show

18   either that the Underwriter Defendants are not entitled to the due diligence defense under

19   section 25501, or that the Underwriter Defendants "intent[ed] to deceive or defraud" MBIA or the

20   Note Purchasers under section 25504.1.  The theory of collective scienter does not support it, and

21   the *AIG Global* decision, which reflects California law, forbids it.  Any discovery from the

22   Underwriter Defendants that seeks documents that do not concern the deals at issue here or from

23   employees who did not work on those deals, is not relevant to the subject matter of this litigation.

24        **2.**      **MBIA's Discovery Would Impose An Undue Burden.**

25         In light of the lack of any relevance to the issues in this case, any burden placed on the

26   Underwriter Defendants by MBIA's requests would be undue.  *See* Weil & Brown, Cal. Practice

27   Guide: Civ. Proc. Before Trial (The Rutter Group 2010) ¶¶ 8:66.2, pp. 8C-1 (noting that

28

1   "'relevancy' may vary with [the] size and complexity of the case and must be considered with

2   regard to the *burden and value* of the information sought" (emphasis in original) (citing

3   *Bridgestone/Firestone, Inc. v. Superior Court*, 7 Cal. App. 4th 1384, 1391 (1992)).  Here, the

4   burden MBIA would impose on the Underwriter Defendants would be undue even if there were

5   some modicum of relevant information sought in MBIA's requests (and there is not).  Over the

6   course of four years, from 2004 to 2007, the three Underwriter Defendants collectively underwrote

7   IndyMac securitizations over 100 times.  (*See* Deutsche Bank National Trust Investor Reporting

8   website, available at https://tss.sfs.db.com/investpublic/ (listing residential mortgage-backed

9   securities issued by IndyMac).)  That is a conservative figure because it only includes

10  securitizations where Deutsche Bank was the Indenture Trustee.  Extrapolating from the working

11  group lists for the securitizations at issue, no doubt hundreds, if not thousands, of employees

12  among the three Underwriter Defendants had dealings with IndyMac.  Countless emails would

13  have to be restored in order to search for documents responsive to MBIA's irrelevant demands, all

14  at incalculable time and expense.  Indeed, MBIA demands the search of hundreds of thousands, if

15  not millions, of irrelevant pages of documents.

16          There is no basis to put the Underwriter Defendants to such unreasonable expense and

17  burden in order to collect information that has no relevance to this litigation under California law.

18  This Court should thus sustain the Underwriter Defendants' objections to MBIA's requests that

19  seek information that does not relate directly to the three securitizations at issue.

20  DATED:  February 18, 2011                QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
21

22

23                                           By  /s/ Danielle L. Gilmore
                                             _____
24                                                Danielle L. Gilmore
                                                 Attorneys for MBIA Insurance Corp.
25

26

27

28

1   DATED:  February 18, 2011            GIBSON, DUNN & CRUTCHER, LLP

2

3                                        By /s/ J. Christopher Jennings

4                                            J. Christopher Jennings
                                             Attorneys for Defendants
5                                            Credit Suisse Securities (USA) LLC
                                             J.P. Morgan Securities LLC and
6                                            UBS Securities LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 14

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    A. William Urquhart (Bar No. 140996)
2   billurquhart@quinnemanuel.com
    Harry A. Olivar, Jr. (Bar No. 143089)
3   harryolivar@quinnemanuel.com
    Danielle L. Gilmore (Bar No. 171457)
4   daniellegilmore@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:    (213) 443-3000
6   Facsimile:     (213) 443-3100

7   Attorneys for Plaintiff
    MBIA Insurance Corporation
8
    [Additional counsel listed on the signature pages]
9

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 18 2011

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
      JAVIER LOPEZ

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      COUNTY OF LOS ANGELES

12                         CENTRAL DISTRICT

13  | MBIA INSURANCE CORPORATION, a New York corporation, | CASE NO. BC422358 |
14  | | **JOINT DISCOVERY STATUS REPORT** |
15  | Plaintiff, | Date:    July 21, 2011 |
16  | vs. | Time:    2:30 p.m. |
    | | Dept.:   322 |
17  | INDYMAC ABS, INC., a Delaware Corporation; HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES 2006-H4, a Delaware statutory trust; HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES INDS 2007-1, a New York common law trust; HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES INDS 2007-2, a New York common law trust; CREDIT SUISSE SECURITIES (USA), L.L.C., a Delaware limited liability corporation; UBS SECURITIES, LLC, a Delaware corporation; JPMORGAN CHASE & CO., a Delaware corporation; MICHAEL PERRY, an individual; A. SCOTT KEYS, an individual; JILL JACOBSON, an individual; KEVIN CALLAN, an individual; and JOHN and JANE DOES 1-100, | Filing Date:   September 22, 2009 |
    | | Trial Date:    None |

Defendants.

CONFORMED

03446.61649/4249284.4

1   Plaintiff MBIA Insurance Corporation ("MBIA"), Defendants Credit Suisse Securities

2   (USA) LLC, UBS Securities LLC and J.P. Morgan Securities LLC (collectively, the "Underwriter

3   Defendants"), and Defendants Michael W. Perry, A. Scott Keys, Kevin Callan, and Jill Jacobson

4   (collectively, the "Individual Defendants") submit the following Joint Discovery Status Report

5   prior to the July 21, 2011 discovery conference.

6   **I.      MBIA'S STATEMENT**

7          After meeting and conferring with the Underwriter Defendants, the Individual

8   Defendants, and with those third parties (OneWest Bank FSB ("OneWest Bank") and the FDIC)

9   that have custody of IndyMac's loan files and electronic documents, MBIA submits that the

10  discovery disputes in Section A below require the Court's assistance.  MBIA discusses the status

11  of the parties' document productions in Section B and the pre-trial schedule in Section C below.

12         **A.      Discovery Issues Requiring the Court's Assistance**

13                  1.      <u>MBIA's Third Set of Special Interrogatories to Underwriter Defendants</u>

14         Consistent with the Court's statements at the February 24, 2011 Status Conference

15  about the Underwriter Defendants producing documents from a sample of other IndyMac

16  securitizations, MBIA served the Underwriter Defendants with a Third Set of Interrogatories

17  consisting of three interrogatories (the "Interrogatories") on June 30, 2011 seeking to obtain a list

18  of such IndyMac securitizations in which the Underwriter Defendants were involved.  The

19  Interrogatories ask the Underwriter Defendants to identify IndyMac mortgage-backed

20  securitizations (beyond the three insured by MBIA) in which the Underwriter Defendants were

21  involved as underwriters in or around the same time period as the three securitizations MBIA

22  insured.[1]  These interrogatories seek to gather the information necessary to determine what deals

23

24  _____

25         [1]   The text of the Interrogatories is as follows:  "INTERROGATORY NO. 28: IDENTIFY
    all securitizations YOU underwrote from January 1, 2006 to September 1, 2007 that were issued

26  by INDYMAC and backed by home equity lines of credit;"  "INTERROGATORY NO. 29:
    IDENTIFY all securitizations YOU underwrote from January 1, 2006 to September 1, 2007 that

27  were issued by INDYMAC and backed by closed-end second lien mortgages;"
    "INTERROGATORY NO. 30: IDENTIFY all securitizations YOU underwrote from January 1,

28      (footnote continued)

1  would be appropriate for sampling, as the Court suggested.  *See* Feb. 24, 2011 Hearing Tr. at 6:4-5

2  (Court: "I was suggesting, quite frankly, that we do a little sampling now.")[2]

3      In the parties' meet and confer discussions regarding the Interrogatories, the

4  Underwriter Defendants stated they would not produce the lists of securitizations requested by

5  MBIA.   The first objection articulated by the Underwriter Defendants was that the timeframe for

6  the requests is too broad.  Keeping in mind that the point of obtaining documents relating to other

7  securitizations is to obtain discovery regarding the Underwriters' knowledge of IndyMac's

8  relevant business practices (to negate their due diligence/lack of knowledge defense), and that

9  there is virtually no burden involved in preparing a list, the time period MBIA has selected is

10 reasonable.   The period selected for the list, from January 1, 2006 to September 1, 2007, is only

11 slightly broader than the period in which the Underwriters worked on the three IndyMac

12 securitizations that MBIA insured, from December 21, 2006 to March 22, 2007.

13      The Underwriter Defendants also objected that the Interrogatories are too broad in

14 terms of the types of IndyMac mortgage-backed securitizations (HELOCs, closed-end seconds,

15 and fixed-rate seconds) they include.  But these are precisely the same types of collateral backing

16 the three IndyMac securitizations insured by MBIA.

17      The Underwriter Defendants' objections, which each lack merit, are designed to

18 further their original, rejected effort to limit discovery in its entirety to the three IndyMac

19 securitizations insured by MBIA.  The Court, however, disapproved this approach in the February

20 24, 2011 Hearing, suggesting "that we do a little sampling now."[3]  There is no basis for the

21 Underwriter Defendants to refuse to provide even the list that is the necessary first step in such

22 sampling.  Particularly given the pre-trial schedule that is being contemplated, with a discovery

23 cutoff less than a year away, there is no reason for the Underwriter Defendants to delay this

24 process any longer.

25 _____

26 2006 to September 1, 2007 that were issued by INDYMAC and backed by fixed-rate second lien
   mortgages."

27     [2]   Atteberry Decl. Ex. 1.
       [3]   Feb. 24, 2011 Hr'g Tr. at 6:4-5.

28

2.    <u>The Individual Defendants' Production of Their IndyMac Emails and</u>
<u>Other Documents in an FDIC Database to Which They Have Access.</u>

MBIA understands that the Individual Defendants have access to a document database containing their IndyMac emails and documents provided to them by the Federal Deposit Insurance Corporation ("FDIC") and possibly other sources. Defendants A. Scott Keys, Kevin Callan, and Jill Jacobson have agreed to work with outside counsel for the FDIC to provide MBIA access to the database. However, MBIA is concerned that such access may not be forthcoming based on its own unsuccessful efforts with the FDIC. The Individual Defendants should provide MBIA promptly with a description of the documents that are contained in these databases and make them available to MBIA as part of party discovery.

3.    <u>Discovery of IndyMac's Loan Files and Electronic Documents in the</u>
<u>Custody of OneWest Bank and the FDIC</u>

Having met with a lack of cooperation in its effort to obtain access to IndyMac's loan files underlying the three IndyMac securitizations it insured, MBIA has been forced to file a Motion to Compel Production of Business Records from OneWest Bank to obtain access to the loan files for inspection and copying of appropriate samples. MBIA asked that the Court set a hearing for this motion after its upcoming trial, or on a Friday during the trial, if available. MBIA has also been engaged in extensive discussions with the FDIC as receiver for IndyMac Federal Bank, FSB, regarding production of emails from IndyMac employees and other electronic documents in the custody of the FDIC. After the discussion at the May 12, 2011 status conference, the FDIC has no longer been persisting in its objection that the Court lacks jurisdiction to compel it to produce documents. But progress continues to be slower than MBIA desires; MBIA will determine shortly whether it needs to file a motion to compel seeking the assistance of the Court in the FDIC's production.

**B.**    **Status Update Regarding Party Productions**

MBIA and the Individual Defendants have meet and conferred regarding MBIA's First and Second Sets of Requests for the Production of Documents. With the major exception noted above, Defendant Michael W. Perry has stated that he will produce responsive documents

1  by July 31, 2011.  The remaining Individual Defendants have represented (again, with the

2  exception noted above) that they do not have any responsive documents.

3       MBIA has meet and conferred with the Underwriter Defendants regarding their

4  productions and does not have any issues at this time.

5       MBIA is currently processing the electronic searches agreed on by the parties and

6  anticipates commencing a rolling production of electronic documents shortly.  MBIA anticipates

7  substantial completion of its document production by September 30, 2011.

8      **C.**    **MBIA's Position Regarding the Pre-Trial Schedule**

9       MBIA agrees with the Court's statements about the pre-trial schedule in its June

10  28, 2011 Minute Order.  MBIA believes that a discovery cutoff date should be set at the next

11  conference, after completion of electronic document productions by the parties and after the

12  outcome of MBIA's motion(s) to compel production of loan files from OneWest and, if necessary,

13  of IndyMac's emails and other electronic documents from the FDIC.

14

15  **II.**    **UNDERWRITER DEFENDANTS' STATEMENT**

16      **A.**    **Status Of Review And Production Of Emails From The Underwriter**

17          **Defendants.**

18      Since the parties' last appearance before the Court at the May 24, 2011 Status Conference,

19  the Underwriter Defendants and MBIA have resolved all outstanding disputes regarding the scope

20  of the collection, review, and production of emails.  The Underwriter Defendants will proceed

21  with the rolling production of documents and anticipate completing production of documents in

22  response to MBIA's outstanding Requests for Production before September 30, 2011, in

23  accordance with the Court's June 28, 2011 Minute Order.  (6/28/2011 Minute Order, at 1.)

24      The Underwriter Defendants request that MBIA provide an update to the Court and the

25  parties regarding the status of the review and production of email documents to be completed by

26  September 30, 2011, in addition to an explanation of the files and documents MBIA has produced

27  to date.

28      **B.**    **MBIA's Third Set Of Special Interrogatories To The Underwriter Defendants.**

1    On June 30, 2011, just two days after this Court ordered that MBIA produce documents
2    related to the *Tripp* litigation in response to the Underwriter Defendants' request for documents,
3    MBIA served its Third Set of Special Interrogatories ("Interrogatories") requesting that each
4    Underwriter Defendant identify all IndyMac-issued securitizations involving a broad range of
5    collateral in which it was involved for a close to two-year period.  At the Underwriter Defendants'
6    request, MBIA met and conferred with the Underwriter Defendants on July 14 and 15, 2011, but
7    the parties were unable to reach an agreement regarding the necessity and relevance of such
8    information at this time.

9          1.    MBIA's Interrogatories are outside the scope of discovery in this case and
10                MBIA can make no showing of need for such information at this time.

11   MBIA's Interrogatories seek from the Underwriter Defendants the identity of all
12   securitizations underwritten by each Underwriter Defendant and issued by IndyMac from January
13   1, 2006 to September 1, 2007 which were backed by "home equity lines of credit," (Interrogatory
14   No. 28), "closed-end second lien mortgages," (Interrogatory No. 29), or "fixed-rate second lien
15   mortgages," (Interrogatory No. 30).[4]  During the parties' meet and confer discussions, MBIA
16   indicated it was seeking such information in order to perform a "sample" of other IndyMac-issued
17   securitizations, and that it intended to request documents related to those securitizations identified
18   by the Underwriter Defendants.

19   In February, this Court denied MBIA's request to seek discovery of the Underwriter
20   Defendants which would require the Underwriter Defendants to collect, restore, review and
21   produce all documents that relate in any way to IndyMac during a four year period, from 2004 to
22   2007, recognizing that MBIA was engaging in "a real fishing expedition," for IndyMac-related
23   information.  (2/242011 Hearing Tr. at 1).  In May, however, as to the Underwriter Defendants'
24   collection and review of emails relating to MBIA's outstanding requests for the production of
25   documents, the Court recognized that "the issue of the knowledge of the underwriting team
26   involved in the securitizations appear[ed] relevant." (5/12/2011 Status Conf. Agenda, at 1.)  The

27
28   [4]    These three Interrogatories as served on JPMS are numbered as Interrogatory Nos. 32-34.

1   Court thus expanded its prior order to require the Underwriter Defendants to collect and review

2   emails during a narrow window surrounding the securitizations at issue for documents relating to

3   the agreed-upon custodians' knowledge of IndyMac's compliance with its underwriting guidelines

4   during that time period.  However, at that time the Court was still explicit that "basic discovery

5   should be limited to the securitizations at issue." (5/12/2011 Status Conf. Agenda, at 1.)

6        In fact, this Court has set forth a specific procedure to be followed for discovery related to

7   securitizations beyond those at issue in this case, as articulated in the Court's February 24, 2011

8   Status Conference Agenda:

9

10        As an alternative to productions directed to securitizations that have not been
          placed at issue by MBIA, the Court suggests that following Underwriters'
11        production of documents related to the securitizations placed at issue by MBIA an
          initial round of depositions be directed to Underwriters' employees involved in
12        the securitizations placed at issue by MBIA. *If these depositions provide
          justification for further productions with respect to other securitizations the*
13        *Court will order further productions; if they do not, no further productions will*
          *be required.*
14

15   (2/24/2011 Status Conf. Agenda, at 1 (emphasis added).)  And at the February 24, 2011 Status

16   Conference, counsel for MBIA agreed with the Court's proposal, recognizing that MBIA would

17   take depositions, and demonstrate a need for such information, before proceeding with discovery

18   beyond the securitizations at issue. (2/24/2011 Hearing Tr., at  ("[Ms. Gilmore:] . . . We would

19   like to go forward with what your Honor has suggested. . . . [W]e would be more than willing to

20   go forward with document production on the three securitizations and take some depositions and

21   then propose a sample as your Honor has suggested here for additional documents *should they be*

22   *necessary*.") (emphasis added).)

23        Moreover, as MBIA is aware, discovery in residential mortgage-backed securities

24   ("RMBS") litigation is typically limited to those securitizations put at issue by the plaintiff's

25   complaint: "[d]ocuments related to securitizations not at issue in this action are unnecessary in

26   order for MBIA to verify whether [an issuer] followed [its] own underwriting policies." *See MBIA*

27   *Inc. Corp. v. Countrywide Home Loans, Inc.*, Case No. 602825/2008, 2010 NY Slip Op 20043, at

28   *4 (N.Y. Super. Ct. Feb. 14, 2010) (denying MBIA's request for discovery of securitizations

1  beyond those at issue in the case); *see also Assured Guaranty Municipal Corp. v. DB Structured*

2  *Prods., Inc.*, Case No. 650705/2010, Slip Op., at *2 (N.Y. Super. Ct. Feb. 8, 2011) (holding

3  discovery requests seeking information regarding "underwriting, due diligence, quality control,

4  and general corporate strategy with respect to other loans and other transactions" overbroad and

5  irrelevant). Therefore, the Underwriter Defendants continue to maintain that the production of

6  information related to securitizations not at issue in this case, without MBIA's demonstration of a

7  need to do so based upon a review of the documents produced by the Underwriter Defendants, is

8  outside the scope of basic discovery in this action.

9                  2.      MBIA's Interrogatories are impermissibly overbroad.

10        Even if MBIA's Interrogatories somehow sought relevant information for which MBIA

11  could demonstrate some need (which it cannot), MBIA's Interrogatories are unreasonably

12  overbroad.  In the first place, MBIA is requesting information about all IndyMac-issued

13  securitizations with certain collateral *regardless of who worked on such securitizations*.  Such

14  information is not relevant and should not be identified here.  *See AIG Global Sec. Lending Corp.*

15  *v. Banc of America Sec. LLC*, Case No. 01-CIV-11448 (JGK) (HBP), 2006 WL 1206333, at *2

16  (S.D.N.Y. May 2, 2006) (holding that information in possession of other employees "acquired in

17  the course of . . . other transactions, unless actually communicated to the specific employees who

18  made the investment decision that gave rise to [] th[e pending] action, [wa]s not chargeable to the

19  plaintiffs or the specific employees who made the investment decision at issue . . . .").

20        Moreover, MBIA's Interrogatories are also grossly overbroad as to time, seeking

21  identification of securitizations for a close to two-year period, from January 1, 2006 to September

22  1, 2007.  Discovery in this action is limited to a six month window surrounding the securitizations

23  at issue, from late October of 2006 through mid-April of 2007, and the securitizations themselves

24  closed between December of 2006 and March of 2007.  (*See* 2/24/2011 Minute Order, at 1.)  And,

25  at MBIA's request, the Underwriter Defendants are in the process of reviewing and producing

26  documents for the identified custodians relating to those custodians' knowledge of IndyMac's

27  compliance with its underwriting guidelines during that time period, which will be completed by

28  September 30, 2011, in accordance with this Court's order.  (6/28/2011 Minute Order, at 1.)

1  MBIA has demonstrated no need to now expand this Court-ordered time frame.  Indeed, MBIA's

2  Interrogatories seek the identification of IndyMac-issued securitizations occurring six months

3  *after* the closing dates of all the securitizations in this case.  There can simply be no relevance to

4  such information.

5      In all events, the Underwriter Defendants understand that the information MBIA seeks

6  here is publicly available information which can be accessed on numerous websites including

7  Edgar.gov and Bloomberg.com.  MBIA should thus not be permitted to once again, embark on

8  what is nothing more than, "a real fishing expedition," requiring the Underwriter Defendants to

9  produce to it publicly-available IndyMac-related information.  (2/242011 Hearing Tr. at 1).

10      The Underwriter Defendants respectfully request that this Court sustain the

11  Underwriter Defendants' objections to MBIA's Third Set of Interrogatories to the Underwriter

12  Defendants.

13

14

15  DATED:  July 18, 2011                    QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
16

17

18                                    By_____
                                            Danielle L. Gilmore
19                                          Attorneys for Plaintiff
                                            MBIA Insurance Corporation
20

21

22

23

24

25

26

27

28

1   DATED:  July 18, 2011                    GIBSON, DUNN & CRUTCHER, LLP

2

3
                                            By /s/ J. Christopher Jennings
4                                               J. Christopher Jennings
                                                Attorneys for Defendants
5                                               Credit Suisse Securities (USA) LLC
                                                J.P. Morgan Securities LLC and
6                                               UBS Securities LLC

7

8   DATED:  July 18, 2011                    WILLKIE FARR & GALLAGHER LLP

9

10
                                            By /s/ Julie A. Smith
11                                              Julie A. Smith
                                                Attorneys for Defendant A. Scott Keys
12

13  DATED:  July 18, 2011                    COVINGTON & BURLING, LLP

14

15
                                            By
16                                              Benjamin J. Razi
                                                Attorneys for Defendant Michael W. Perry
17

18  DATED:  July 18, 2011                    CORBIN, FITZGERALD & ATHEY, LLP

19

20
                                            By /s/ Michael W. Fitzgerald
21                                              Michael W. Fitzgerald
                                                Attorneys for Defendants
22                                              Jill Jacobson and Kevin Callan

23

24

25

26

27

28

1

## PROOF OF SERVICE

2        I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa

3   Street, 10th Floor, Los Angeles, California 90017-2543.

4        On July 18, 2011, I served true copies of the following document(s) described as

5   **JOINT DISCOVERY STATUS REPORT;**

6   **DECLARATION OF JEFFREY A. ATTEBERRY IN SUPPORT OF THE JOINT
DISCOVERY STATUS REPORT DATED JULY 18, 2011**

7
     on the parties in this action as follows:

8
                                **SEE ATTACHED LIST**
9

10
         BY LEXIS NEXIS FILE  & SERVE: I Posted Such Document Directly on the Lexisnexis

11   File & Serve Website (Https://Fileandserve.Lexisnexis.com)

12        I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

13
         Executed on July 18, 2011, at Los Angeles, California.
14

15

16                                         _____
                                           Jeffrey Atteberry
17

18

19

20

21

22

23

24

25

26

27

28

03446.61649/4254015.1

**SERVICE LIST**

| Michael W. Fitzgerald<br>*mwfitz@corbfitzlaw.com*<br>**CORBIN FITZGERALD & ATHEY LLP**<br>601 West Fifth Street, Suite 1150<br>Los Angeles, CA  90071-2024<br>Tel: (213) 612-0001<br>Fas: (213) 612-0061 | Counsel for Defendant<br>**KEVIN CALLAN and JILL JACOBSON** |
|---|---|
| Julie Smith<br>*jasmith@willkie.com*<br>**WILLKIE FARR & GALLAGHER, LLP**<br>1875 K Street NW<br>Washington DC  20006-1238<br>Tel: (202) 303-1000<br>Fax: (202) 303-2000 | Counsel for  Defendant<br>**A. SCOTT KEYS** |
| Dean Kitchens<br>*dkitchens@gibsondunn.com*<br>J. Christopher Jennings<br>*jjennings@gibsondunn.com*<br>**GIBSON DUNN & CRUTCHER LLP**<br>333 South Grand Avenue<br>Los Angeles, CA  90071-3197<br>Tel: (213) 229-7000<br>Fax: (213) 229-7520 | Counsel for Defendants<br>**UBS SECURITIES, LLC; CREDIT SUISSE SECURITIES (USA), LLC; J.P. MORGAN SECURITIES LLC** |
| Tammy Albarran<br>*talbarran@cov.com*<br>**COVINGTON & BURLING LLP**<br>One Front Street<br>San Francisco, CA  94111-5356<br>Tel: (415) 591-6000<br>Fax: (415) 591-6091<br>and<br><br>Benjamin J. Razi<br>*brazi@cov.com*<br>D. Jean Veta<br>*jdveta@cov.com*<br>**COVINGTON & BURLING LLP**<br>1201 Pennsylvania Avenue NW<br>Washington DC  20004-2401<br>Tel: (202) 662-6000<br>Fax: (202) 662-6291 | Counsel for Defendant<br>**MICHAEL PERRY** |

# EXHIBIT 15



36118752

Feb 24 2011
8:47AM

**MBIA v. Indymac ABS., Inc., et al.**
**Case No. BC422358**

**Status Conference Agenda**
**Department 322**
**February 24, 2011**

1.  <u>Issues Relating to the Scope of MBIA's Document Reqeusts</u>
    a.  The requests as proposed are overbroad.
    b.  The Court has suggested that a more phased approach to document productions would be appropriate; however, Underwriters' counsel has indicated that the prospect of having to perform multiple searches is not acceptable.  Accordingly, to the extent the Court limits the current productions, any such limitation shall be without prejudice to MBIA's right to request further productions upon an appropriate showing justifying further document productions.
    c.  The Court will require Underwriters to respond to the document requests as to the specific securitizations that are placed at issue by MBIA.
    d.  The Court will also consider requiring Underwriters to respond to the document requests as to a reasonable sample of securitizations that have not been placed at issue.
    e.  As an alternative to productions directed to securitizations that have not been placed at issue by MBIA, the Court suggests that following Underwriters' production of documents related to the securitizations placed at issue by MBIA an initial round of depositions be directed to Underwriters' employees involved in the securitizations placed at issue by MBIA.  If these depositions provide justification for further productions with respect to other securitizations the Court will order further productions; if they do not, no further productions will be required.
    f.  Have the parties developed the search parameters for production of ESI? If not, what is the anticipated time necessary to develop search parameters?

2.  <u>Form of Production and Timing for Completion</u>
    a.  The form of production should be subject to further discussion among the parties.  While the Court is not convinced that production in native format with all meta-data is appropriate, any alternate form of production offered by Underwriters must be in a searchable electronic format with appropriate "loads" with respect to document specific meta-data. Production of ESI in hard copy is not practical.
    b.  Given the parameters of the productions proposed by the Court, what is the timing for Underwriters' productions?
    c.  What is the timing for MBIA's production of documents requested by Underwriters?

MBIA v. Indymac ABS, Inc., et al.
Case No. BC422358
Status Conference Agenda 2/24/11

1

3.    <u>General Comments on Discovery</u>
   a.  The Court has conducted a cursory review of the discovery responses provided by both sides on 1/28/11.
   b.  The boilerplate objections interposed by both sides do not reflect a meaningful vetting of the discovery.  The vetting process is intended to eliminate objections such as "overbroad and burdensome" or "vague and ambiguous."  If the parties are unwilling to voluntarily engage in a meaningful effort to facilitate an orderly approach to discovery, the Court will enter appropriate orders to insure that the meet and confer process is meaningful and effective.
   c.  To the extent the parties intend to withhold production of documents based on claims of privilege, appropriate privilege logs should be provided concurrent with the productions.

4.    <u>Other Issues</u>
   a.  The parties are reminded that the LNFS Message Board is intended to facilitate communication between the Court and counsel and not as a device for the posting of unilateral requests for substantive or procedural orders.  Postings should generally reflect that counsel have discussed an issue, set forth the parties' respective views on the issue,  and request that the Court address the issue.

MBIA v. Indymac ABS, Inc., et al.
Case No. BC422358
Status Conference Agenda 2/24/11

2

# EXHIBIT 16

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

Aug 04 2011
04:09PM

| DATE: 08/04/11 | | DEPT. 322 |
|---|---|---|
| HONORABLE CARL J. WEST | JUDGE | E. SABALBURO | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C. PIEDRA, C.A. | Deputy Sheriff | NONE | Reporter |

| 3:30 pm | BC422358 | Plaintiff Counsel | |
| | MBIA INSURANCE CORPORATION VS INDYMAC ABS INC ET AL * | Defendant Counsel | |
| | Related to BC445785; DEEMED COMPLEX (10-28-09) | | NO APPEARANCES |

**NATURE OF PROCEEDINGS:**

COURT ORDER

The Court will set the Motion to Compel Productions by the FDIC for hearing on 9/23/11 concurrent with the hearing on the motion directed to One West. Briefing of the FDIC motion will be on the same schedule previously set by the Court for the One West motion: Opposition brief will be due 8/15/11; Reply will be due 9/9/11. The Court requests that parties file one original and two courtesy copies of all pleadings pertaining to the Motion to Compel in Department 322.

MBIA is to give notice of the briefing schedule to counsel for the FDIC.

Through inadvertance, the following was not issued in a minute order on 7/21/11:
The Court provides the following comments on open discovery issues addressed in the Parties' Joint Discovery Status Report filed 7/18/11.
1.   MBIA's Third Set of Special Interrogatories to Underwriter Defendants:  Defer, without prejudice. As previously indicated by the Court, the current round of productions should be completed and an initial round of PMK depositions should be taken before the scope of Underwriter's discovery obligation is expanded significantly beyond the securitizations at issue.
2.   Individual Defendants should be prepared to

Page   1 of   2   DEPT. 322

**MINUTES ENTERED**
08/04/11
**COUNTY CLERK**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 08/04/11 | | | DEPT. 322 |
|---|---|---|---|
| HONORABLE CARL J. WEST | JUDGE | E. SABALBURO | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C. PIEDRA, C.A. | Deputy Sheriff | NONE | Reporter |

| 3:30 pm | BC422358 | Plaintiff |
|---|---|---|
| | | Counsel |
| | MBIA INSURANCE CORPORATION | |
| | VS | Defendant |
| | INDYMAC ABS INC ET AL | Counsel |
| | * | |
| | Related to BC445785; | |
| | DEEMED COMPLEX (10-28-09) | NO APPEARANCES |

**NATURE OF PROCEEDINGS:**

produce, or at the least identify, emails that are
responsive to MBIA's discovery requests if, as MBIA
suggests, the Individual Defendants have access to a
database that will permit identification of the
targeted emails.
3.    MBIA Motion to Compel Production for Inspection
and Copying from OneWest Bank, FSB, in Response to
MBIA's Subpoena:  The Court is prepared to set the
following briefing schedule and hearing date on
MBIA's motion:
a.    Opposition to be filed by 8/15/11;
b.    Reply to be filed by 9/9/11;
c.    Hearing will be set on 9/23/11 at 11:00 a.m. in
Department 322.
4.    The Court continues to believe that the parties
should target a 9/30/11 discovery cutoff.  The Court
will set a further status conference on 9/23/11
concurrent with the hearing on the OneWest Bank
motion and will address scheduling issues at that
time.  The parties will be expected to file a joint
statement on or before 9/16/11 in which they address
any open discovery issues and scheduling issues.
5.    Counsel will be expected to confer with respect
to the Court's comments and advise the Court if they
wish to have a conference call with the Court.

A copy of this minute order is served on parties via
posting on the LexisNexis File & Serve website.

Page    2 of    2    DEPT. 322

```
MINUTES ENTERED
08/04/11
COUNTY CLERK
```

# EXHIBIT 17

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54

-------------------------------------------------------------------X

ASSURED GUARANTY MUNICIPAL CORP.,
Formerly known as FINANCIAL SECURITY
ASSURANCE INC.,

                              Plaintiffs,

         -against-

DB STRUCTURED PRODUCTS, INC. and ACE
SECURITIES CORP.

                              Defendants.

-------------------------------------------------------------------X

DB STRUCTURED PRODUCTS, INC.,

                              Third-Party Plaintiff,

         -against-

GREENPOINT MORTGAGE FUNDING, INC.,

                              Third-Party Defendants.

-------------------------------------------------------------------X

**ORDER**

Index No. 650705/2010

Third-Party Index No.
590783/2010

**KORNREICH, SHIRLEY WERNER, J.:**

The discovery issues raised during the January 11, 2011 preliminary conference and the

telephone conference of February 3, 2011 between Assured Guaranty Municipal Corp. (Assured),

DB Structured Products, Inc.(DB), and GreenPoint Mortgage Funding, Inc. (GreenPoint) are

resolved as follows:

1. Assured's discovery requests 10 and 41 are overbroad. According to Assured, "DB

represented to it that GreenPoint subjected the HELOCs [the loans in the transaction] to quality

control and took other steps to ensure the accuracy of the information pursuant to which the loans

1

were originated." To test the veracity of this representation, Assured seeks "documents concerning the standards DB used to evaluate or approve the HELOC's originator (GreenPoint) as well as any documents concerning DB's review or evaluation of GreenPoint's handling of mortgage loans." Assured requests that "responsive documents be collected and produced *regardless* of whether those documents expressly reference the Transaction name or number." [emphasis supplied] Documents concerning the standards DB used to evaluate or approve GreenPoint's handling of loans, other than the loans at issue in this transaction, are irrelevant because DB's representations with respect to GreenPoint are limited to the origination of the loans in this transaction.

2. Assured's discovery requests 65-69 and 75 are also overbroad. The facts pleaded by Assured in the complaint concern DB's representations about the underwriting, due diligence, and quality control of the loans in the transaction at issue in this case. Documents reflecting DB's and its vendors' approach to underwriting, due diligence, quality control, and general corporate strategy with respect to other loans and other transactions are irrelevant.

3. Finally, Assured seeks to discover DB's investor communications for the transaction at issue. This request is also denied. DB represented to Assured that "the offer and sale of the Securities comply in all material respects with all requirement of law, including requirements of applicable Securities Laws . . . ." Assured alleges that DB breached the Securities Laws and, *a fortiori*, the representation because the Prospectus and Prospectus Supplement contained misrepresentations regarding loan attributes, the underwriting performed during the origination, and the risks associated with the transaction. However, Assured already has the publicly available Prospectus and Prospectus Supplement where the alleged misrepresentations were

2

made.  Even if the same misrepresentations were made to investors in other document, discovery

of those documents would be redundant and, thus, unduly burdensome.  Assured provides no

evidence to suggest that the discovery of DB's communications with its investors would reveal

misrepresentations other than those allegedly contained in the Prospectus and Prospectus

Supplement.  Further, Assured does not explain, and the court does not have a reason for

inferring that discovery of additional misrepresentations would affect Assured's measure of

damages.  The parties harmed by the alleged misrepresentations are the investors who are not

parties to this action.  Assured's contention that but for the misrepresentations to the investors,

Assured would not have insured the Notes is without merit.  There is no causal or counterfactual

link between DB's representations to the investors and Assured's decision to insure the Notes;

the only causally and counterfactually relevant representations to Assured's decision to insure the

Notes were those DB made to Assured.

4. Parties shall produce documents in response to a notice for discovery and inspection

"as they are kept in the regular course of business."  CPLR § 3122(c).  "[D]uring the course of

the action, each party should bear the expenses it incurs in responding to discovery requests."

*Clarendon National Insurance Co v Atlantic Risk Management, Inc.*, 59 AD3d 284, 286 (1st

Dept 2009).  "[T]he requesting party bears the cost of electronic discovery when the data sought

is not 'readily available.'  Data is not readily available upon a showing of undue burden by the

producing party to obtain the data."  [citations omitted] *Silverman v Shaoul*, 2010 NY Misc

LEXIS 6003 * 4 (NY Cty 2010) (producing party bears costs where electronic data neither

archived nor deleted but were simply stored in a number of places and "interspersed with

defendants' various documents for their several business entities.")  GreenPoint bears the cost of

producing the electronic data requested by DB because it has not made a showing that the data is not readily available.

5. GreenPoint's document discovery from non-party Clayton is limited to the production of documents that reference the securitization transaction at issue in this case.

Dated: February 7, 2010                    ENTER

J.S.C.

# EXHIBIT 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
:
:
:
FEDERAL HOUSING FINANCE AGENCY, etc.,            :
                                                 :   11 Civ. 6188 (DLC)
                    Plaintiff,                   :
            v.                                   :
                                                 :
JPMORGAN CHASE & CO., et al.,                    :
                    Defendants.                  :
------------------------------------------------------------------ x
:
:
FEDERAL HOUSING FINANCE AGENCY, etc.,            :
                                                 :   11 Civ. 6196 (DLC)
                    Plaintiff,                   :
            v.                                   :
                                                 :
CITIGROUP INC., et al., Defendants.              :
                                                 :
                                                 :
------------------------------------------------------------------ x
:
:
FEDERAL HOUSING FINANCE AGENCY, etc.,            :
                                                 :   11 Civ. 7010 (DLC)
                    Plaintiff,                   :
            v.                                   :
                                                 :
ALLY FINANCIAL INC., et al.,                     :
                                                 :
                    Defendants.                  :
                                                 :
------------------------------------------------------------------ x

**CITIGROUP-RELATED DEFENDANTS' RESPONSES AND OBJECTIONS TO**
**PLAINTIFF FHFA'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Local Rules of the United States District Court for the Southern District of New York, and any other applicable laws or rules (collectively, the "Applicable Rules"), Citigroup Inc., Citigroup Mortgage Loan Trust, Inc., Citigroup Global Markets Inc., Citigroup Markets Realty Corp. (the "Entity Defendants"), Susan Mills, Randall Costa, Richard A. Isenberg, Scott Freidenrich, Mark I. Tsesarsky, Peter Patricola, Jeffrey Perlowitz, and Evelyn Echevarria (the "Individual Defendants") (with the Entity Defendants, the "Citigroup-Related Defendants"), provide these responses and objections (the "Response") to the definitions ("Definition" or "Definitions"), instructions ("Instruction" or "Instructions") and document request ("Specific Request") set forth in Plaintiff FHFA's Third Request for the Production of Documents, dated June 20, 2012 (the "Request"), without waiver of any objections or defenses that the Citigroup-Related Defendants have asserted in this Response, previously have asserted or hereafter may assert in the above-captioned actions ("Actions").

The Citigroup-Related Defendants object and respond to the Request as follows and, if plaintiff Federal Housing Finance Agency (the "Plaintiff") desires to do so, are willing to meet and confer to discuss the Citigroup-Related Defendants': (i) general objections to the Request, including the Definitions and Instructions ("General Objections"); (ii) objections and limitations asserted against the Specific Request ("Specific Objections"); or (iii) any other objections asserted by the Citigroup-Related Defendants in the Actions (collectively, with the General Objections and Specific Objections, the "Objections").

4.      The Citigroup-Related Defendants object to the Request, including the
Definitions and Instructions set forth therein, to the extent that it purports to require Defendants to
conduct anything beyond a reasonable and diligent search for readily accessible files, including
electronically stored information ("ESI"), from readily accessible sources where responsive
documents reasonably would be expected to be found.  The Citigroup-Related Defendants also
object to the Request to the extent that it purports to require the Citigroup-Related Defendants to
search for and produce information that is not centrally maintained by, or on behalf of, persons
believed to have significant involvement in the transactions involving the Citigroup-Related
Defendants at issue in the Actions ("FHFA Transactions").

5.      The Citigroup-Related Defendants object to the Request, including the
Definitions and Instructions set forth therein, to the extent that it purports to require the production
of documents involving any transactions other than the FHFA Transactions.  Subject to and without
waiver of the Objections, in response to these Request, the Citigroup-Related Defendants will
produce responsive, non-privileged documents relating to the FHFA Transactions located after a
reasonable search of centrally located files and any other locations where responsive documents
may reasonably be expected to be found.

6.      The Citigroup-Related Defendants object to the Request, including the
Definitions and Instructions set forth therein, to the extent that it calls for information or documents
that:  (i) are not in the Citigroup-Related Defendants' possession, custody or control; (ii) require the
Citigroup-Related Defendants to create documents not currently in the Citigroup-Related
Defendants' possession, custody or control; or (iii) are available from a more convenient, more
efficient, less burdensome or less expensive source than the Citigroup-Related Defendants or
through a more convenient, more efficient, less burdensome or less expensive means than the
Requests.  Subject to the Objections, in responding to the Request, the Citigroup-Related

3

**EXHIBIT 19**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
FEDERAL HOUSING FINANCE AGENCY,  :
AS CONSERVATOR FOR THE FEDERAL   :
NATIONAL MORTGAGE ASSOCIATION    :
AND THE FEDERAL HOME LOAN        :
MORTGAGE CORPORATION,            :
                                 :
          Plaintiff,  :        No. 11-cv-6193 (DLC)
      v.                   :
                                 :
FIRST HORIZON NATIONAL           :
CORPORATION, *et al.,*           :
                                 :
          Defendants.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**J.P. MORGAN'S RESPONSES AND OBJECTIONS TO**
**PLAINTIFF FHFA'S SECOND REQUEST FOR THE PRODUCTION**
**OF DOCUMENTS**

information and/or documents provided.  The production of any material does not constitute an admission by J.P. Morgan that such material, or the information contained therein, is relevant to the Action or admissible as evidence.

       3.     J.P. Morgan objects to the Second Request and to each Definition, Instruction and Request contained therein, to the extent that they purport to require J.P. Morgan to undertake a search for, and to produce, electronically stored information ("ESI") that would impose unreasonable search costs and burdens or that would exceed J.P. Morgan's obligations under negotiated agreements and/or the Applicable Rules.  J.P. Morgan also objects to the Requests to the extent that they purport to require J.P. Morgan to search for and produce information that is not centrally maintained by, or on behalf of, persons believed to have been significantly involved with the securitization at issue in the Action.  Any Request that seeks to require J.P. Morgan to exceed such a search is overly broad and unduly burdensome.

       4.     J.P. Morgan objects to the Requests to the extent that they are duplicative of one another or any other discovery request served on J.P. Morgan or any of the other defendants in the Action.

       5.     J.P. Morgan objects to the Second Request and to each Definition, Instruction and Request contained therein, to the extent that they seek information and/or documents protected from disclosure by the attorney-client privilege, the joint defense or common-interest privilege, the attorney work product doctrine, the accountant-client privilege or any other legally recognized privilege, protection, immunity or exemption from discovery, and/or to the extent that it seeks material subject to confidentiality or nondisclosure agreements or requirements.  J.P. Morgan will not produce documents containing such information or will produce such documents in redacted form.

# EXHIBIT 20

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FEDERAL HOUSING FINANCE AGENCY,
AS CONSERVATOR FOR THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION
AND THE FEDERAL HOME LOAN
MORTGAGE CORPORATION,

                Plaintiff,

     – against –

BANK OF AMERICA CORPORATION;
BANK OF AMERICA, NATIONAL
ASSOCIATION; MERRILL LYNCH,
PIERCE, FENNER & SMITH, INC. (f/k/a
BANC OF AMERICA SECURITIES LLC);
ASSET BACKED FUNDING
CORPORATION; BANC OF AMERICA
MORTGAGE SECURITIES, INC.; BANC OF
AMERICA FUNDING CORPORATION;
GEORGE C. CARP; ROBERT CARUSO;
GEORGE E. ELLISON; ADAM D.
GLASSNER; DANIEL B. GOODWIN;
JULIANA JOHNSON; AASHISH KAMAT;
MICHAEL J. KULA; JAMES H. LUTHER;
WILLIAM L. MAXWELL; MARK I. RYAN;
and ANTOINE SCHETRITT,

                Defendants.

**Case No. 11-cv-6202 (DLC)**

ECF Case

## DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S
## <u>SECOND REQUEST FOR PRODUCTION OF DOCUMENTS</u>

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Local Rules of the

United States District Court for the Southern District of New York, and any other applicable

rules (collectively, the "Applicable Rules"), defendants Bank of America Corporation; Bank of

America, National Association; Merrill Lynch, Pierce, Fenner & Smith, Inc. (f/k/a Banc of

information that is not centrally maintained by, or on behalf of, persons believed to have

significant involvement in the Securitizations.  Any Specific Request that seeks to require

Defendants to exceed such a search is overly broad and unduly burdensome.

5.      Defendants object to the Requests to the extent that they purport to require the

production of documents involving any transactions unrelated to the Securitizations.  Subject to

and without waiver of the Objections, in response to these Requests, Defendants will produce

responsive, non-privileged documents relating to the Securitizations, if any, to the extent

Defendants can locate such documents after a reasonable search within certain relevant, readily

accessible, and centrally located  files, if any, and the electronic files of a negotiated set of

relevant custodians, using agreed upon search terms, as outlined in Defendants' June 8, 2012 list

of proposed search terms and custodians, as modified by any mutual agreement of the

parties regarding that proposal.

6.      Defendants object to the Requests to the extent that they purport to require

Defendants to undertake a search for, and to produce, ESI that would impose unreasonable

search costs and burdens or that would exceed Defendants' obligations under the Applicable

Rules.

7.      Defendants object to the Requests to the extent that they are duplicative of one

another or any other discovery request served on any of the other defendants in the Actions.

8.      Defendants object to the Requests to the extent that they:  (i) call for information

or documents that  are not in Defendants' possession, custody or control; (ii) would require

Defendants to create documents not currently in Defendants' possession, custody or control; or

(iii) call for information or documents that are available from a more convenient, more efficient,

less burdensome or less expensive source than Defendants or through a more convenient, more

# EXHIBIT 21

James E. Brandt
Direct Dial: +1.212.906.1278
James.Brandt@lw.com

53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

January 31, 2011

## BY HAND AND E-FILING

Roald Nashi, Esq.
Chambers of Hon. Shirley Werner Kornreich
Commercial Division, Supreme Court, New York County
60 Centre Street, Room 418
New York, New York 10007

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Moscow |
| Barcelona | Munich |
| Beijing | New Jersey |
| Brussels | New York |
| Chicago | Orange County |
| Doha | Paris |
| Dubai | Riyadh |
| Frankfurt | Rome |
| Hamburg | San Diego |
| Hong Kong | San Francisco |
| Houston | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |

Re:   *Assured Guaranty Municipal Corp. v. DB*
      *Structured Products, Inc. et al.,*
      Index No. 650705/2010, Third-Party Index No. 590783/2010

Dear Mr. Nashi:

We represent defendants DB Structured Products, Inc. and Ace Securities Corp. (collectively, "Defendants") in the above referenced case. The core of this case is Assured's allegation that Defendants breached their representations and warranties regarding certain of the 6,276 home equity lines of credit underlying a securitization known as "ACE 2006-GP1," (hereinafter the "GP1 Loans" and the "GP1 Securitization," respectively).

At our January 11, 2010 discovery conference, you asked each party for a one to two page letter covering two discovery issues: (1) whether discovery should be limited to the GP1 Securitization and the GP1 Loans, and (2) whether Assured is entitled to discovery with respect to Deutsche Banks' marketing and sale of the bonds issued in connection with the GP1 Securitization. Instead, Assured submitted *two* letters for a total of nearly six pages. This is Defendants' response.

A.   **Discovery Should Be Limited To The Loans And The Securitization At Issue In The Complaint**

This is a breach of contract case, not a fraud case. It turns on whether *the GP1 Loans* are consistent with the representations and warranties that Defendants' made in connection with the GP1 Securitization, not on whether defendants performed on other contracts, and not on the characteristics of other loans and transactions. Information about unrelated securitizations and mortgage pools is not relevant to whether this contract was breached. It is therefore beyond the proper scope of discovery. *See Vyas v. Campbell*, 771 N.Y.S.2d 375, 376 (2d Dep't 2004) ("While the 'material and necessary' standard set forth in CPLR 3101(a) is to be liberally construed, this does not mean that litigants have carte blanche to demand production of whatever documents they speculate might contain something helpful." (internal citation omitted)).

**LATHAM&WATKINS**LLP

Moreover, requiring Defendants to produce documents related to hundreds of unrelated transactions and thousands of unrelated loans is, by definition, unreasonably burdensome. *See Rodolitz v. Beneficial Nat'l Life Ins. Co.*, 341 N.Y.S.2d 278, 279 (1st Dep't 1973) ("We cannot condone fishing expeditions into thousands of irrelevant files . . . in disregard of relevancy, materiality and necessity. . .").

Indeed, in a similar case brought by MBIA against Countrywide, Judge Bransten recently refused to allow the monoline insurer to expand discovery into unrelated securitizations:

> Documents related to securitizations not at issue in this action are unnecessary in order for [Plaintiff] to verify whether Defendants followed their own underwriting policies. Whether such practices were indeed followed for mortgage loans in one securitization will not be revealed by [Defendants'] policies and practices for mortgage loans in other securitizations . . .

*MBIA Ins. Corp v. Countrywide Home Loans, Inc.*, 895 N.Y.S.2d 643, 648 (NY. Sup. Ct. 2010). The same reasoning should be applied here such that all of Assured's discovery requests are limited to information related to the GP1 Securitization or the GP1 Loans.[1] Opening discovery beyond the 2006-GP1 Securitization will require Defendants to review and produce documents related to well over 100 unrelated securitizations involving hundreds of thousands of wholly irrelevant loans. The time and expense of doing so would be unduly burdensome and would only extend what already promises to be a lengthy discovery process.

**B.      The Alleged Breach Of "The Securities Law Representation" Does Not Support Expanded Securities-Based Discovery**

Assured alleges that Defendants breached a "Securities Law Representation" by misrepresenting in the 2006-GP1 Prospectus and Prospectus Supplement "the loan attributes, the underwriting performed during the origination of the HELOCs, and the risks associated with the Transaction." Compl. ¶ 35; *see also* Compl. ¶¶ 36-38. At bottom, this claim is just a re-cast of Assured's loan-level breach of representation and warranty claims based on alleged defects in the GP1 Loans; it does not have an independent factual predicate. Assured already has the publically available Prospectus and Prospectus Supplement, and the the success or failure of the Securities Law Representation claim will turn on the resolution of the parties' dispute regarding the loan-level representation and warranty claims. No additional discovery is necessary. Moreover, to the extent that Assured can prove that any loans breached applicable representation and warranties, they can be compensated for their full economic loss. The fact that Assured layered a Securities Law Representation claim on top of the other breach claims does not justify wide-ranging discovery into securities sales and marketing materials, which will not provide

---

[1]      Notably, throughout the parties' lengthy meet-and-confer process, Assured has argued that it should not be required to produce information about its own involvement in other transactions. Assured has therefore acknowledged that the expansive discovery that it has now asked the Court to order is unwarranted.

**LATHAM&WATKINS**LLP

information on the core question about the characteristics of the loans or support any additional damages.

   To resolve this case, the Court need only analyze the specific characteristics of the GP1 Loans to determine whether they materially breached the representations and warranties, resulting in losses to Assured.  The parties should have full and fair discovery on those points.  But, from a factual perspective, this is not an enormous case and an expensive and burdensome fishing expedition by Assured (which is certainly well versed in the real issues here, given its extensive involvement in like litigation) is unnecessary and inappropriate.  Respectfully, the Court should reject Assured's attempt to turn the case into a wide ranging fraud-type case or a securities case.  Assured pleaded a contract case, and that is what the parties should be litigating.

                              Respectfully,

                              James E. Brandt
                              of LATHAM & WATKINS LLP


cc:  Patterson Belknap Webb & Tyler LLP (Erik Haas, Robert W. Lehrburger, Carrie A. Syme)
     Murphy & McGonigle, P.C. (James A. Murphy, Cameron S. Matheson)
     Lazare, Potter & Giacovas LLP (David E. Potter)