```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
RESIDENTIAL CAPITAL, LLC, et al.,        :
                                         :           12 Civ. 5116 (DLC)
               Debtors-Plaintiffs,       :
                                         :           OPINION & ORDER
          -v-                            :
                                         :
FEDERAL HOUSING FINANCE AGENCY,          :            Also filed in
                                         :           11 Civ. 6188 (DLC)
               Defendant.                :
                                         :
----------------------------------------X
```

APPEARANCES:

For Debtors-Plaintiffs:

Joel C. Haims
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104

For Defendant:

Andrew K. Glenn
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

DENISE COTE, District Judge:

Before the Court is the Second Circuit's July 15, 2013 Summary Order instructing the Court to supplement the record, In re Residential Capital, LLC, --- Fed. Appx. ---, 2013 WL 3491311 (2d Cir. 2013), as well as the parties' letter briefs addressing the issues presented on remand.

BACKGROUND

On May 25, 2012, plaintiffs Residential Capital, LLC and related debtor entities (collectively, "ResCap") moved pursuant to 11 U.S.C. § 105 to enjoin the defendant from pursuing litigation against ResCap's non-debtor corporate affiliates, including Ally Financial, Ally Securities and GMAC Mortgage Group (the "Ally Defendants").[1]  In the alternative, ResCap sought a judicial order bringing the Ally Defendants within the coverage of the Bankruptcy Code's Automatic Stay.  See 11 U.S.C. § 362(a).

At a conference on July 17, 2012 and in an Order issued that day, the Court denied ResCap's motion, holding that Section 362(a)'s automatic stay did not apply to the non-debtor Ally Defendants and denying ResCap's request for a discretionary stay under Section 105(a).  ResCap appealed.

In a Summary Order of July 15, 2013, the Court of Appeals for the Second Circuit observed that this Court had not considered whether the action against the Ally Defendants would "have an immediate adverse economic consequence for the debtor's estate" and therefore trigger Section 362(a)'s automatic stay. 2013 WL 3491311, at *1 (citing Queenie, Ltd. v. Nygard Int'l,

---

[1] That action, FHFA v. Ally Financial, Inc., et al., 11 Civ. 7010 (DLC) (the "Ally action"), is one of fourteen similar actions brought by FHFA and coordinated before this Court which remain pending.

321 F.3d 282, 287 (2d Cir. 2003)).  The Second Circuit remanded the case to this Court to determine whether, on the current factual record, the Ally action meets this standard and should be subject to an automatic stay under Section 362(a).

On July 17, the Court issued a scheduling Order directing the parties to submit letter briefs regarding the remanded issues.  These were fully submitted on July 31.  On remand, the Court concludes that the Ally action is not likely to have an "immediate adverse economic consequence" for ResCap's estate and is not subject to the automatic stay.


DISCUSSION

In the ordinary course, Section 362(a) of the Bankruptcy Code "operates as a stay" of a "judicial . . . proceeding "against the debtor," and of "any act to obtain possession or property of the estate."  11 U.S.C. §§ 362(a)(1), (2).  While the automatic stay thus does not by its terms apply to actions against parties other than the debtor itself, the Second Circuit has held that it can apply to non-debtors "only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate."  Queenie, 321 F.3d at 287; see also In re 48th Street Steakhouse, Inc., 835 F.2d 427, 431 (2d Cir. 1987) (action against non-bankrupt party that "would inevitably have an adverse impact on property of the bankrupt

3

estate" subject to automatic stay).  The automatic stay has thus been held to apply to proceedings against a debtor's wholly owned corporation, Queenie, 321 F.3d at 288, and an action to terminate a lease that would terminate a debtor's sublease.  In re 48th Street Steakhouse, 835 F.2d at 431.

The current factual record does not support a finding that the Ally action is having an "immediate adverse economic consequence" for ResCap's estate.  At the outset, it is worth noting that ResCap does not argue that its compliance with third party discovery in the Ally action constitutes an "immediate adverse economic consequence."  At the July 17, 2012 conference, the Court found that document production would be a ministerial task for ResCap, and would not occupy the time of executives who are busy managing ResCap's business or negotiating the restructuring.  The Court has also required Ally to bear the costs associated with ResCap's production of loan files and associated documents in the Ally action, further insulating ResCap from any immediate adverse economic impact.

In its briefing, ResCap points to two circumstances that it argues warrant a finding that the Ally action is subject to the automatic stay.  First, ResCap points to insurance policies acquired by Ally Financial that cover itself and all its subsidiaries for liability and defense costs associated with the Ally action.  Second, ResCap points to an indemnification

4

obligation under which ResCap is contractually obligated to indemnify the Ally defendants against liabilities like those raised by the Ally action.  Neither argument has merit.

As to the shared insurance, ResCap is correct that an insurance policy shared between the estate and non-debtors qualifies as part of the bankrupt estate.  <u>See Pfizer v. Law Offices of Peter G. Angelos (In re Quigley Co.)</u>, 676 F.3d 45, 53 (2d Cir. 2012).  Several factors, however, prevent a finding that any "immediate" claim against the shared insurance policy is likely.  First and foremost, ResCap's plan of reorganization filed on July 3, 2013 (the "Plan") contains a provision explicitly relinquishing to Ally all rights and proceeds under the relevant insurance policies.  Moreover, the insurance policies at issue have a $25 million self-insured retention, and ResCap has not submitted any evidence that the Ally defendants are likely to reach this threshold in defending the Ally action, let alone reach it on any timetable that could be characterized as "immediate."  Finally, trial in the Ally action is not scheduled to begin until January 2015, while ResCap reports that the effective date of the Plan is currently anticipated to be in October 2013.  The shared insurance policies thus do not create an "immediate adverse economic consequence for the debtor's estate."

ResCap next argues that it owes contractual indemnification obligations to Ally that would require it to indemnify Ally from liabilities like any judgment against Ally in the Ally action. Again, under the Plan, Ally has agreed to release ResCap from all indemnification claims, and there is no suggestion that ResCap has made any payments to Ally in connection with the Ally action pursuant to any indemnification agreement.  There is thus no factual basis on which to conclude that the indemnification obligation is having or will have any immediate economic impact on ResCap's estate.

ResCap's general response to these observations is that the Court should ignore the Plan as it pertains to shared insurance and indemnification agreements between ResCap and Ally, since the determination of whether the automatic stay applies must be based on the facts as they existed when the bankruptcy case was filed.  In other words, ResCap argues, "the status of the bankruptcy case at any point between commencement and the effective date" is irrelevant.  The Court does not agree.  It would be strange indeed to determine whether a suit against Ally would have an "immediate adverse economic consequence" for ResCap's estate on a purely theoretical basis, without reference to the current factual situation.  In remanding this case, the Second Circuit asked this Court to "supplement the record" in making a determination of whether the automatic stay applies.

There was no indication that this Court should limit itself to the facts as they existed in May 2012, when ResCap filed for bankruptcy, and the Court declines to do so.

Finally, seizing on language in Queenie, ResCap argues that the automatic stay should apply because FHFA's claims against the Ally defendants are "inextricably intertwined" with its allegations against ResCap, and that there is "such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." Queenie, 321 F.3d at 288 (quoting A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)).  ResCap expresses fear that it is therefore "at serious risk of being bound by decisions against the non-debtors."  This argument is merely a re-formulation of the collateral estoppel argument the Court rejected in its July 2012 oral ruling, and does not support the idea that ResCap is subject to any immediate adverse economic consequence as a result of the Ally action.

7

CONCLUSION

The Court concludes that ResCap is not suffering "immediate adverse economic consequences" as a result of the Ally action and that Section 362(a)'s automatic stay does not apply to the Ally action.

SO ORDERED:

Dated:   New York, New York
         August 12, 2012

                                    _____
                                          DENISE COTE
                                    United States District Judge