UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL HOUSING FINANCE AGENCY,
AS CONSERVATOR FOR THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION
AND THE FEDERAL HOME LOAN
MORTGAGE CORPORATION,

                    Plaintiff,

          -v-

JPMORGAN CHASE & CO., et al.,

                    Defendants.

---

Other Cases Brought By This Plaintiff:

11 Civ. 6189 (DLC)
11 Civ. 6190 (DLC)
11 Civ. 6192 (DLC)
11 Civ. 6193 (DLC)
11 Civ. 6195 (DLC)
11 Civ. 6198 (DLC)
11 Civ. 6200 (DLC)
11 Civ. 6201 (DLC)
11 Civ. 6202 (DLC)
11 Civ. 6203 (DLC)
11 Civ. 6739 (DLC)
11 Civ. 7010 (DLC)

**Case No. 11 CIV. 6188 (DLC)
and All Coordinated Cases**

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO COMPEL
PRODUCTION OF DOCUMENTS
WITHHELD ON THE BASIS OF THE
BANK EXAMINATION AND
DELIBERATIVE PROCESS
PRIVILEGES**

<u>**ORAL ARGUMENT REQUESTED**</u>

(Counsel on Signature Pages)

August 30, 2013

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .............................................................................................................................3

I.    THE BANK EXAMINATION PRIVILEGE DOES NOT SHIELD FHFA'S DOCUMENTS ..............................................................................................................3

II.   THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT SHIELD FHFA'S DOCUMENTS .............................................................................................12

III.  GOOD CAUSE EXISTS FOR PRODUCTION OF THE WITHHELD DOCUMENTS ...........................................................................................................15

CONCLUSION ........................................................................................................................18

# Table of Authorities

**Page(s)**

## Cases

*Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407 (S.D.N.Y. 2004) ................................... 12, 13

*Conte v. County of Nassau*, No. CV 06-4746 (JFB) (ETB), 2009 WL 1362784 (E.D.N.Y. May 15, 2009) .......................................................................................... 13, 14

*Davis v. City of New York*, No. 10 Civ. 0699 (SAS), 2011 WL 1742748 (S.D.N.Y. May 5, 2011) ........................................................................................................................ 15

*Delozier v. First Nat'l Bank of Gatlinburg*, 113 F.R.D. 522 (E.D. Tenn. 1986) ........................... 3

*E.B. v. New York City Bd. of Educ.*, 233 F.R.D. 289 (E.D.N.Y. 2005) ................................... 12, 13

*Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012) ..................................................................... 11

*Forstmann Leff Assocs. v. Am. Brands, Inc.*, No. 88 Civ. 4485 (JMC), 1991 WL 168002 (S.D.N.Y. Aug. 16, 1991) ...................................................................... 16, 17, 18

*Fox News Network v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261 (S.D.N.Y. 2012) ...................................................................................................................... 12, 13

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F. 3d 473 (2d Cir. 1999) .............................................. 13

*Gruss v. Zwirn*, No. 09 Civ. 6441 (PGG), 2013 WL 3481350 (S.D.N.Y. July 10, 2013) ...................................................................................................................................... 11

*In re Bank One Sec. Litig., First Chi. S'holder Claims*, 209 F.R.D. 418 (N.D. Ill. 2002) ........................................................................................................................................ 3

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, No. 1:09-md-02072 (MGC) (S.D.N.Y.) ................................................................................................. 2

*In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577 (E.D.N.Y. 1979) ........................... passim

*In re Grand Jury*, 103 F.3d 1140 (3d Cir. 1997) ......................................................................... 5

*In re Powell*, 227 B.R. 61 (D.Vt. 1998) ...................................................................................... 17

*In re Putnam Inv. Mgmt., LLC*, SEC Release No. 614, 2004 WL 885245 (Apr. 7, 2004) ........................................................................................................................................ 6

*In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993) ........................................................ 11

*In re Subpoena Served Upon Comptroller of Currency*, 967 F.2d 630 (D.C. Cir. 1992) .................................................................................................... 3, 7, 17

*In re Sunrise Sec. Litig.*, 109 B.R. 658 (E.D. Pa. 1990) ..................................... 15, 17, 18

*Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) ........................................................... 5

*Jones v. Goord*, No. 95-cv-8026(GEL), 2002 WL 1007614 (S.D.N.Y. May 16, 2002) ................................................................................................................ 6

*Kaufman v. City of New York*, No. 98 CIV. 2648 (MJL) (KNF),1999 WL 239698 (S.D.N.Y. Apr. 22, 1999) .................................................................................. 14

*Kreysar, et al. v. Syron, et al.*, No. 1:09-cv-00832 (MGC) (S.D.N.Y.) .......................................... 2

*Kuriakose v. Fed. Home Loan Mortg. Corp., et al.*, No. 1:08-cv-07281 (JFK) (S.D.N.Y.) ............................................................................................................ 2

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 239 F.R.D. 508 (N.D. Ill. 2006) ................................................................................................................ 4, 6

*Merchants Bank v. Vescio*, 205 B.R. 37 (D. Vt. 1997).................................................. 4

*Morrissey v. City of New York*, 171 F.R.D. 85 (S.D.N.Y. 1997) ................................... 13, 14

*Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88 (S.D.N.Y. 2000) .......................................................................................... 12, 14

*Ohio Pub. Emp. Ret. Sys. v. Fed. Home Loan Mortg. Corp., et al.*, No. 4:08-cv-00160 (JRA) (N.D. Ohio) ...................................................................................... 2

*Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, *modified*, 71 Fed. Cl. 205 (2006) ............................................................................................................ 13, 14

*Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000) .................................................. 6, 9

*Principe v. Crossland Sav., FSB*, 149 F.R.D. 444 (E.D.N.Y. 1993) .................. 3, 16, 17, 18

*Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634 (S.D.N.Y. 1991) ................. 13, 14

*Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217 (D.C. Cir. 1993) ............. 2, 15, 16

*SEC v. Sentinel Mgmt. Grp., Inc.*, No. 07-cv-4684, 2010 WL 4977220 (N.D. Ill. Dec. 2, 2010) ...................................................................................................... 6

*SEC v. Syron*, No. 11 Civ. 9201 (S.D.N.Y.) ..................................................... 2, 5, 11, 12

*Tigue v. U.S. Dep't of Justice*, 312 F.3d 70 (2d Cir. 2002) ................................... 13

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ...................................... 11

*United States v. Nixon*, 418 U.S. 683 (1974) ................................................................5

*United States v. Provident Nat'l Bank*, 41 F.R.D. 209 (E.D. Pa. 1966) ........................3

*United States v. Reynolds*, 345 U.S. 1 (1953) .............................................................15

*United States v. Weissman*, 195 F.3d 96 (2d Cir. 1999) ................................................5

*United W. Bank v. Office of Thrift Supervision*, 853 F. Supp. 2d 12 (D.D.C. 2012) ....................10

*Univ. of Penn. v. EEOC*, 493 U.S. 182 (1990) ...............................................................6

*Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414 (3d Cir. 1991) ...........................................................................................................................6

*Wultz v. Bank of China*, No. 11 Civ. 1266 (SAS), 2013 WL 1453258 (S.D.N.Y. Apr. 9, 2013) ..........................................................................................3, 9, 15

## Other Authorities

12 C.F.R. pt. 1214 (2013) ..............................................................................................4

12 C.F.R. pt. 911, *withdrawn*, 78 Fed. Reg. 39957, 39958 (July 3, 2013) .....................4

12 U.S.C. § 4521(a) .......................................................................................................7

143 Cong. Rec. E2312-01, 1997 WL 696765 (Nov. 9, 1997) ........................................4

145 Cong. Rec. E43-02, 1999 WL 4762 (Jan. 6, 1999) ................................................4

H.R. 1408, 107th Cong. (2001-2002) ...........................................................................4

Defendants respectfully submit this Memorandum of Law, together with the

Declaration of Andrew T. Frankel dated August 30, 2013 ("Frankel Decl."),[1] in support of their

Motion to Compel Plaintiff Federal Housing Finance Agency ("FHFA") to produce documents

FHFA has redacted or withheld on the basis of a "bank examination" and/or "deliberative

process" privilege.

## PRELIMINARY STATEMENT

FHFA possesses a wealth of information relevant to the parties' claims and

defenses in these actions as a result of the unique role it and its predecessor, the Office of Federal

Housing Enterprise Oversight ("OFHEO"), played in supervising the operations of Fannie Mae

and Freddie Mac (the "GSEs").  But FHFA has selectively and improperly withheld or redacted

thousands of documents on the basis of a "bank examination" privilege and "deliberative

process" privilege.  Neither privilege applies here.

*First*, FHFA invokes the *bank* examination privilege, claiming that it is entitled to

do so because FHFA and OFHEO were financial regulators that conducted examinations of

Fannie Mae and Freddie Mac.  But the bank examination privilege does not apply to all

"financial regulators" or "financial" firms—it applies to *banks and their regulators*.  Thus, it

does not apply here as a matter of law because the GSEs are not banks.  Indeed, no court has ever

upheld FHFA or OFHEO's right to withhold documents on this basis.  To do so here for the first

time would violate the well-established judicial doctrine against expanding privileges absent a

compelling justification.

*Second*, FHFA has withheld numerous documents on the basis of the deliberative

process privilege, a qualified executive privilege narrowly applied to the personal opinions of

government officials that, if released, would inaccurately reflect or prematurely disclose agency

---

[1]     All citations to "Ex. __" refer to Exhibits to the Frankel Declaration.

policy.  This privilege has strict substantive and procedural requirements, none of which FHFA has met and which, even if satisfied, generally do not prevent disclosure when an agency is a plaintiff in litigation.

*Finally*, even if FHFA's assertions of the bank examination and deliberative process privileges were facially proper (they are not), good cause clearly exists to compel FHFA to produce the withheld documents.  Settled legal principles make it clear that discovery is favored where a government agency is a litigant.  And FHFA's purported concern about producing these documents is inconsistent with its position in other cases, where it has produced to third parties documents it claims are subject to a bank examination privilege like those withheld here.  Just last year, in *SEC v. Syron*, No. 11 Civ. 9201 (S.D.N.Y.), after claiming the bank examination privilege as to roughly 33,000 documents, FHFA advised another judge of this Court that it did not object to producing the documents for use by the parties in that SEC action and four private class actions, provided that its production was subject to a protective order to address confidentiality concerns.  Ex. A, at 2, 4, 7-8.[2]  Any of FHFA's purported confidentiality concerns here can be mitigated by the Protective Order in these actions in the same manner that FHFA told Judge Sullivan was sufficient in *Syron*.  *See id.*; *see also Schreiber v. Soc'y for Sav. Bancorp, Inc*., 11 F.3d 217, 222 (D.C. Cir. 1993).

While numerous other deficiencies plague FHFA's privilege log, this motion is limited to FHFA's improper invocation of the bank examination and deliberative process privileges over thousands of documents.  The parties are at impasse as to the applicability of these two privileges.  Because neither the bank examination nor the deliberative process

---

[2]      The actions in addition to *SEC v. Syron* in which FHFA consented to disclosure of documents allegedly subject to a bank examination privilege are *Ohio Pub. Emp. Ret. Sys. v. Fed. Home Loan Mortg. Corp., et al*., No. 4:08-cv-00160 (JRA) (N.D. Ohio); *Kuriakose v. Fed. Home Loan Mortg. Corp., et al*., No. 1:08-cv-07281 (JFK) (S.D.N.Y.); *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, No. 1:09-md-02072 (MGC) (S.D.N.Y.); and *Kreysar, et al. v. Syron, et al*., No. 1:09-cv-00832 (MGC) (S.D.N.Y.).  Ex. A, at 8 n.8.

privilege applies in these cases, the status of these documents can be most efficiently addressed

by adjudicating the propriety of FHFA's threshold invocation of these privileges, obviating the

need for any document-by-document review.  Thus, in accordance with the Court's August 12,

2013 Order, Defendants respectfully request that the Court compel FHFA to produce documents

FHFA has withheld or redacted on the basis of either the bank examination or the deliberative

process privilege.

## ARGUMENT

## I.   THE BANK EXAMINATION PRIVILEGE DOES NOT SHIELD FHFA'S DOCUMENTS

The bank examination privilege protects communications with *banking* regulatory

agencies.  *See, e.g.*, *Principe v. Crossland Sav., FSB*, 149 F.R.D. 444, 447 (E.D.N.Y. 1993).  It

does so to provide "protection for the banking industry by promoting and protecting the integrity

of candid relations between banks and government regulatory agencies," *In re Bank One Sec.*

*Litig., First Chi. S'holder Claims*, 209 F.R.D. 418, 426 (N.D. Ill. 2002), without the risk of

"unduly undermin[ing] confidence in the bank" as a result of "public misunderstanding."

*Delozier v. First Nat'l Bank of Gatlinburg*, 113 F.R.D. 522, 526 (E.D. Tenn. 1986); *United*

*States v. Provident Nat'l Bank*, 41 F.R.D. 209, 210 (E.D. Pa. 1966) ("As it is now, the banks feel

free to 'tell all' to the examiner, but if these reports became public, this 'tell all' feeling could

cease. . . .  The effect of these opinions on the public must . . . be considered.  A public,

uneducated in the intricacies of banking finance, could easily misinterpret the meaning of an

examiner's opinion.").[3]  The proponent of the privilege bears the burden of demonstrating that

documents are subject to the privilege.  *See Wultz v. Bank of China*, No. 11 Civ. 1266 (SAS),

2013 WL 1453258, at *4 (S.D.N.Y. Apr. 9, 2013).

---

[3]    *See also In re Subpoena*, 967 F.2d at 633-34 (citing *Delozier*, 113 F.R.D. at 525 and *Provident Nat'l Bank*, 41 F.R.D. at 210); *Principe*, 149 F.R.D. at 449-50.

It is undisputed that the GSEs are not banks.  They hold no bank charter of any kind, they do not hold customer deposits, and they do not otherwise conduct banking activities.  Nor was OFHEO a bank examiner.  In fact, when legislative attempts were made in the late 1990s to pass legislation—preliminarily entitled the "Bank Examination Report Protection Act"—that would have codified the bank examination privilege, OFHEO was omitted from the group of "all the affected Federal banking regulators" that supported the legislation.  *See* 143 Cong. Rec. E2312-01, 1997 WL 696765 (Nov. 9, 1997); 145 Cong. Rec. E43-02, 1999 WL 4762 (Jan. 6, 1999).  That was for good reason, as "[t]he bank examination privilege belongs solely to the FDIC, the Federal Reserve, and other *banking* regulatory entities," such as the Office of the Comptroller of the Currency.  *Merchants Bank v. Vescio*, 205 B.R. 37, 42 (D. Vt. 1997) (emphasis added).[4]  Congress *did* consider enacting a broader supervisory privilege that would have applied to other financial regulators, including OFHEO, *see* H.R. 1408, 107th Cong. (2001-2002), but this legislation was never enacted.  Under these circumstances, it would be particularly inappropriate for this Court to create such a privilege.  For these reasons alone, FHFA cannot carry its burden of demonstrating the applicability of this privilege.  *See Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 239 F.R.D. 508, 514 n.5 (N.D. Ill. 2006) (rejecting assertions of bank examination privilege because "it is undisputed that the regulated entities at issue here *are not banks*") (emphasis added).

To date, no court has ever upheld OFHEO or FHFA's right to withhold documents on the basis of the bank examination privilege.  FHFA has pointed to only one case as

---

[4]   Although 12 C.F.R. pt. 1214 (2013) concerns confidential supervisory information prepared or received by FHFA, this provision has its origin in rules promulgated by the Federal Housing Finance Board, which regulated the Federal Home Loan Banks before the creation of FHFA.  *See* 12 C.F.R. pt. 911 *withdrawn*, 78 Fed. Reg. 39957, 39958 (July 3, 2013).  Defendants take no position regarding the applicability of the privilege to FHFA's communications with the Federal Home Loan Banks.

purportedly "recogniz[ing]" its "ability to invoke the bank examination privilege."  (Aug. 7, 2013 Letter from FHFA to the Court, citing *SEC v. Syron*, No. 11 Civ. 9201, Dkt. 78 at 3 (S.D.N.Y. July 17, 2012).)  But the Court in that case held that "FHFA has *not* made the showing necessary to establish that the documents in question are subject to the bank examination privilege."  *Syron*, No. 11 Civ. 9201, Dkt. 78 at 3 (emphasis added).  Ignoring this ruling, FHFA clings to the *Syron* Court's finding that there were "grounds for concern" that the documents were privileged "or otherwise sensitive."  *Id.*  The finding that some of the documents identified by FHFA might be "sensitive" is hardly compelling support for FHFA's entirely novel claim that it and OFHEO should be deemed "bank examiners" and the GSEs "banks."

Nor is this an issue of semantics.  It is well established that "[p]rivileges should be narrowly construed and expansions cautiously extended."  *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999).  As one court of appeals has explained, a

> principal feature of the federal approach is that the considerations against the recognition of new privileges that would impede access to probative evidence are granted very significant weight.  "'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence.  When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional.'" *Jaffee* [*v. Redmond*, 518 U.S. 1, 9 (1996)] (quoting 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed. 1940)).  This court has recently stated that "privileges are disfavored." *In re Grand Jury*, [103 F.3d 1140, 1149 (3d Cir. 1997)] (rejecting parent-child privilege); *see also* [*United States v. Nixon*, 418 U.S. 683, 710 (1974)] (cautioning that privileges "are not lightly created nor expansively construed").  Thus, with very limited exceptions, federal courts have generally declined to grant requests for new privileges.  [citations omitted]. . . . [F]ederal courts are to assess the appropriateness of new privileges as they arise in particular cases, but they are to conduct that assessment with a recognition that only the most compelling candidates will overcome the law's weighty dependence on the availability of relevant evidence.

*Pearson v. Miller*, 211 F.3d 57, 67 (3d Cir. 2000); *see also Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1425 (3d Cir. 1991) ("[T]the Supreme Court has repeatedly warned the federal courts to be cautious in recognizing new privileges") (citing *Univ. of Penn. v. EEOC*, 493 U.S. 182 (1990)); *In re Putnam Inv. Mgmt., LLC*, SEC Release No. 614, 2004 WL 885245, at *3 (Apr. 7, 2004); *Jones v. Goord*, No. 95-cv-8026(GEL), 2002 WL 1007614, at *8 (S.D.N.Y. May 16, 2002) ("Courts are generally and appropriately reluctant to create new privileges.").

FHFA maintains that the bank examination privilege should be extended to its communications with the GSEs—at least those communications that it has selectively chosen to withhold from production—because OFHEO performed examinations and functioned similarly to bank regulators.  FHFA is wrong.  The mere fact that a regulating entity may exercise some of the same powers as a bank regulator does not confer the power to invoke the bank examination privilege on that entity, nor does the bank examination privilege apply to all financial regulatory agencies.  For example, broker-dealers are subject to financial regulation and examinations by the Securities and Exchange Commission ("SEC"), yet the bank examination privilege does not apply to SEC examinations or related supervisory communications.  Rather, the bank examination privilege can be asserted only by banking regulators.[5]

Moreover, there are significant differences between the relationship the GSEs and their regulators have and the relationship banks have with their regulators that militate strongly against FHFA's attempt to expand the bank examination privilege here.  Most notably, the risk

---

[5]     *See, e.g.*, *In re Putnam Inv. Mgmt.*, 2004 WL 885245, at *1, *3-4 (rejecting SEC's reliance upon the bank examination privilege by analogy, referring to it as a "novel 'SEC Examination Privilege'" and noting that courts have only "sparingly" exercised the authority to recognize new common law evidentiary privileges); *see also SEC v. Sentinel Mgmt. Grp., Inc.*, No. 07-cv-4684, 2010 WL 4977220, at *2 n.2 (N.D. Ill. Dec. 2, 2010) (noting that SEC withdrew its "examination privilege" claim for non-bank examination); *Household Int'l, Inc.*, 239 F.R.D. at 514 n.5 (noting that state regulators cannot assert "bank examination privilege" where "regulated entities at issue . . . are not banks").

that future communications between banks and their regulators would be chilled absent a privilege—the principal basis for judicial recognition of the bank examination privilege, *see, e.g.*, *In re Subpoena Served Upon Comptroller of Currency*, 967 F.2d 630, 633-34 (D.C. Cir. 1992)—is absent here given that OFHEO and FHFA's supervision of the GSEs is publicly reported.

More specifically, unlike banks or other purely private businesses, the GSEs were federally sponsored and had unique public missions to advance specific governmental objectives of national housing policy, enjoying the protection of implicit backing by the federal government. *See* Statement of Hon. James B. Lockhart III Before the H. Comm. on Financial Services on the Conservatorship of Fannie Mae and Freddie Mac (Sept. 25, 2008) (noting FHFA and GSEs' shared "public purpose of providing stability, liquidity, and affordability to the mortgage market").[6]  OFHEO and FHFA (unlike banking regulators) were required by law to report to Congress on their examinations of Fannie Mae and Freddie Mac, *see* 12 U.S.C. § 4521(a), and they made those reports publicly available.[7]  *See* Frankel Decl. ¶ 12.

Consistent with the uniquely public nature of the GSEs and their regulators, OFHEO and FHFA have also made publicly available filings, news releases, public notices, agency reports, testimony, speeches, research papers, and other materials concerning their supervision and oversight of the GSEs.  *See* Frankel Decl. ¶¶ 12-19.  For example, OFHEO and FHFA officials have repeatedly testified to Congress regarding their oversight of the GSEs and

---

[6]  *Available at* http://www.fhfa.gov/webfiles/1028/92508FHFAHseHearingStmtcorrected092608.pdf, at 8.

[7]  Indeed, FHFA even appears to be withholding from its production copies of examination reports that were publicly submitted to Congress and which are available on FHFA's own website.  *See* Frankel Decl. ¶ 13.  *See also* http://www.fhfa.gov/Default.aspx?Page=210 and http://www.fhfa.gov/Default.aspx?Page=240 (links to all OFHEO annual examination reports to Congress from 1997 through 2008 and FHFA annual examination reports from 2008 through 2012).

have publicly disclosed their opinions, findings, and communications.  To cite but a few

examples:

- In June 3, 2009 testimony on "The Present Condition and Future Status of Fannie Mae and Freddie Mac" before the House Financial Services Committee, former OFHEO director James Lockhart stated that, in order to "maintain profitability of the retained portfolios and to meet HUD-designated affordable housing goals, each Enterprise increased purchases of PLS backed by alternative mortgages and of high-risk whole loans.  Freddie Mac purchased more PLS, and Fannie Mae purchased more whole loans.  This weakening of their traditional underwriting standards has been a key driver of their recent, massive credit losses."[8]

- In April 9, 2010 testimony before the Financial Crisis Inquiry Commission ("FCIC"), Lockhart testified that Fannie Mae "indirectly encouraged those lower [underwriting] standards by purchasing private label securities.  They also encouraged lower standards by not aggressively pursuing the obligations of originators to repurchase mortgages if they did not comply with the Enterprises' underwriting requirements.  Despite OFHEO's pressure, they were lax in forcing repurchases for fear of offending major customers such as Countrywide."[9]

- In April 9, 2010 testimony before the FCIC, Armando Falcon, another former OFHEO director, stated that "Fannie and Freddie executives worked hard to persuade investors that mortgage related assets were a riskless investment, while at the same time covering up the volatility and risks of their own mortgage portfolios and balance sheets.  The OFHEO special exam reports go into great detail on how this was done over the years."[10]

- A July 30, 2010 letter from Lockhart to the FCIC in response to the FCIC's request for additional information in follow-up to his April 9, 2010 testimony contains detailed descriptions of communications between OFHEO and the GSEs, noting, for example, that Lockhart "met monthly with the CEO's of both Fannie Mae and Freddie Mac.  The growth in non-prime mortgages was a frequent topic as [Lockhart] continued to pressure them to strengthen their credit risk management and modeling. . . . During this time, members of the OFHEO supervisory team also counseled the GSEs on their credit risk.  Evidence of these discussions within the agency and with the GSEs is noted in several documents and actions taken by OFHEO.  This evidence includes a series of letters between OFHEO and the GSEs written between December 2006 and June 2008, and

---

[8]   *Available at* http://www.fhfa.gov/webfiles/2707/FHFA_Director's_Testimony_Final.pdf, at 13.

[9]   *Available at* http://fcic-static.law.stanford.edu/cdn_media/fcic-docs/2010-04-09%20James%20Lockhart%20Written%20Testimony.pdf, at 6-7.

[10]   *Available at* http: fcic-static.law.stanford.edu/cdn_media/fcic-testimony/2010-0409-Falcon.pdf, at 9.

OFHEO's actions to limit positions and risk in PLS rated below AAA, and risk assessment letters sent to the CEOs of Fannie Mae and Freddie Mac."[11]

This level of public disclosure and transparency has only increased since the financial crisis and FHFA's conservatorship of the GSEs.  FHFA itself publicly touts its proclaimed transparency and commitment to its "directive to ensure the public has access to important information about the agency's work to meet its mission."[12]  Given the magnitude of these public disclosures, there is no reasonable risk that production of the withheld documents could reasonably cause anyone at the GSEs or FHFA to be more timid in future examinations.  *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 580-81 (E.D.N.Y. 1979) ("The primary rationale for the intragovernmental opinion privilege is that effective and efficient governmental decision making requires a free flow of ideas among government officials and that inhibitions will result if officials know that their communications may be revealed to outsiders."); *see also Wultz*, 2013 WL 1453258, at *3.  Thus, this is certainly not one of the "compelling candidates" justifying an expansion of the bank examination privilege so as to permit FHFA to withhold thousands of documents from discovery.  *Pearson*, 211 F.3d at 67.

The fact that the GSEs likely will not even exist in the future, at least in the form they existed during the relevant time period, further undermines any claim that privilege is necessary to prevent chilled future regulatory communications between FHFA and the GSEs.  As FHFA's Acting Director recently testified to Congress:

> There seems to be broad consensus that Fannie Mae and Freddie Mac will not return to their previous corporate forms.  The Administration has made clear its preferred course of action is to wind down the Enterprises.  Of the various legislative proposals

---

[11]    *Available at* http://fcic-static.law.stanford.edu/cdn_media/fcic-testimony/Subprime Lending and Securitization and GSEs/James Lockhart Follow Up.pdf, at 3.

[12]    *Available at* http://fhfa.gov/Default.aspx?Page=287.

> that have been introduced in Congress, none of them envision the
> Enterprises existing conservatorship in their current corporate
> form.  In addition, the recent changes to the [government's Senior
> Preferred Stock Purchase Agreements] . . . reinforces that the
> Enterprises will not be building capital as a potential step to
> regaining their former corporate status.[13]

In these circumstances, extending a privilege so as to preserve candid communications would be unnecessary and unwarranted.  *Cf. United W. Bank v. Office of Thrift Supervision*, 853 F. Supp. 2d 12, 18 (D.D.C. 2012) (finding that bank examination and deliberative process privileges, even if applicable, did not prevent disclosing document submitted by bank to FDIC where there was "low possibility" that production would chill candor of government employees because bank was in receivership).

Additionally, given that it has selectively picked and chosen what to produce and what to withhold, FHFA's decision to withhold documents is not consistent with any assertion that it is protecting the free flow of communication among regulatory authorities.  FHFA already has produced numerous documents reflecting the opinions of OFHEO and FHFA regarding their supervision and examinations of the GSEs, including numerous communications among them. FHFA has produced documents from 24 OFHEO and FHFA custodians, as well as numerous additional documents from Fannie Mae and Freddie Mac custodians pertaining to OFHEO and FHFA's regulatory oversight of the GSEs.  *See* Frankel Decl. ¶ 9.[14]  It is impossible to determine the basis upon which FHFA decided to produce or withhold documents concerning the same

---

[13]  Statement of Edward J. DeMarco Before the U.S. H. Comm. on Financial Services on Sustainable Housing Finance:  An Update from the Federal Housing Finance Agency on the GSE Conservatorships (Mar. 19, 2013) (*available at* http://www.fhfa.gov/webfiles/25037/DeMarcoHFSC319testimony.pdf, at 3-4).  *See also Obama Says It's Time to 'Turn the Page' on Fannie and Freddie*, Wall Street Journal Market Watch (July 24, 2013) (discussing pending legislation to wind down GSEs) (*available at* http://blogs.marketwatch.com/capitolreport/2013/07/24/obama-says-its-time-to-turn-the-page-on-fannie-and-freddie/).

[14]  Illustrative examples of documents that FHFA has chosen not to withhold are attached to the Frankel Declaration as Exhibit H.

subjects.  *Id.* ¶ 11.[15]  FHFA's selective use of the privilege to produce some supervisory

documents and withhold others confirms that it has no general concern that production will chill

interactions between FHFA and the GSEs.

Moreover, it is elementary that a party may not use privilege as both a shield and

a sword.  *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *Gruss v. Zwirn*, No.

09 Civ. 6441 (PGG), 2013 WL 3481350, at *10-12 (S.D.N.Y. July 10, 2013); *Favors v. Cuomo*,

285 F.R.D. 187, 198 (E.D.N.Y. 2012).  FHFA is not entitled to produce some documents relating

to OFHEO and FHFA's oversight of the GSEs, but selectively withhold others that relate to such

regulatory oversight.  As the Second Circuit has held, "selective assertion of privilege should not

be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or

strategic advantage."  *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993).  FHFA's

invocation of the bank examination privilege to selectively produce and withhold documents

violates this basic precept.

Finally, FHFA's voluntary production of documents it has claimed were protected

by the bank examination privilege to third parties in *other* litigation undermines any suggestion

that interactions between FHFA and the GSEs would be chilled by production here.  As

discussed above, FHFA agreed to produce roughly 33,000 documents it asserted were subject to

the bank examination privilege to defendants in the *Syron* action and to plaintiffs in four class

actions, provided the productions were subject to a protective order.  Ex. A, at 2, 4, 7-8; *see also*

n.2, *supra*.[16]  FHFA has refused to explain why its purported confidentiality concerns cannot be

---

[15]   Defendants asked FHFA to explain the basis upon which it made such decisions.  FHFA refused, simply
        stating that it applied "the standards articulated in the case law. . . ."  Frankel Decl. ¶ 11.

[16]   Despite this Court's ruling that FHFA must produce certain of the documents from the *Syron* litigation to
        Defendants, Status Conf. Tr. 90:13-19, Feb. 21, 2013, FHFA recently acknowledged that it has withheld 10
        such documents on the basis of the bank examination privilege—even though FHFA agreed to produce those
        documents to the defendants in the *Syron* case.

dealt with by application of the Protective Order here in the same manner that FHFA told Judge Sullivan was sufficient in *Syron*.  Any purported confidentiality concerns FHFA harbors can be adequately obviated by the Protective Order in these actions just as FHFA agreed to in *Syron*, without requiring this Court to extend privileges that have no applicability to FHFA.

In sum, FHFA has not met, and cannot meet, its burden of demonstrating that the bank examination privilege should be extended here.  FHFA should be ordered to produce documents that it withheld or redacted on the basis of the bank examination privilege.

## II.   THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT SHIELD FHFA'S DOCUMENTS

FHFA separately seeks to withhold documents by asserting that the deliberative process privilege applies.  That privilege is intended to encourage candor in internal government agency decision-making.  *Fox News Network v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261, 271 (S.D.N.Y. 2012).  Again, as the proponent of the privilege, FHFA bears the burden of demonstrating that the withheld documents are privileged.  In particular, with respect to the deliberative process privilege, FHFA must show that the withheld documents are both "predecisional" and "deliberative."  *Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407, 411 (S.D.N.Y. 2004); *Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000).

A document is considered "predecisional" if the agency can "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates."  *Nat'l Cong.*, 194 F.R.D. at 92.  Merely "explaining or interpreting an existing policy or measuring compliance with existing procedures is not predecisional, and thus is not privileged."  *E.B. v. New York City Bd. of Educ.*, 233 F.R.D. 289, 292 (E.D.N.Y. 2005).

To establish that a document is "deliberative," FHFA must demonstrate that "the document (i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Allocco*, 220 F.R.D. at 411-12 (internal quotation marks and citation omitted); *see also Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F. 3d 473, 482 (2d Cir. 1999); *Fox News*, 911 F. Supp. 2d at 271-72 ("[T]he privilege typically protects memoranda, drafts, recommendations, proposals, and other documents that reflect the opinions of their authors, rather than those of the agency."). Deliberation must relate to a particular policy-oriented decision; documents that merely "assist, lead to, or form the basis for some governmental policy" are not protected by the deliberative process privilege. *Allocco*, 220 F.R.D. at 413 (internal quotation marks omitted); *see also E.B.*, 233 F.R.D. at 292 (holding that "routine operating decisions cannot be transformed into policy formulation at the highest levels of government simply because they are made at public institutions.").

In addition, the deliberative process privilege may not be invoked simply upon a lawyer's determination that requested documents fall within the privilege. Rather, because of the unique nature of the privilege, "[t]he claim of deliberative-process privilege must be lodged by the head of the agency after *personal consideration* of the allegedly privileged material." *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 641 (S.D.N.Y. 1991) (emphasis added); *accord Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 134-38, *modified*, 71 Fed. Cl. 205 (2006); *Conte v. County of Nassau*, No. CV 06-4746 (JFB) (ETB), 2009 WL 1362784, at *5 (E.D.N.Y. May 15, 2009); *Morrissey v. City of New York*, 171 F.R.D. 85, 89 n.3 (S.D.N.Y. 1997). The agency official must "state with particularity what information is subject to the privilege," and provide "precise and certain reasons for maintaining the confidentiality of the

requested document." *Pac. Gas & Elec.*, 70 Fed. Cl. at 135, 140-41 (holding that "vague, general and conclusory statements" or claims that are "merely a paraphrase of the rationale for the deliberative-process privilege" do not suffice); *see also Diamond*, 137 F.R.D. at 641; *Conte*, 2009 WL 1362784, at *5. "The governmental deliberative process privilege may not be asserted by government counsel." *Kaufman v. City of New York*, No. 98 CIV. 2648 (MJL) (KNF), 1999 WL 239698, at *3 (S.D.N.Y. Apr. 22, 1999).

FHFA's claim of deliberative process privilege fails as a matter of law for several independent reasons. *First*, FHFA has repeatedly declined Defendants' request that it provide the requisite certification to support its deliberative process privilege claim. That failure is fatal. "[T]he time to make the showing that certain information is privileged is . . . at the time the [deliberative process] privilege is asserted, not months later when the matter is before the Court on a motion to compel." *Pac. Gas & Elec.*, 70 Fed. Cl. at 135, 143; *see also Conte*, 2009 WL 1362784, at *5 (finding that agency's claim of privilege will fail where it fails to comply with the requirement that the agency provide "precise and certain" reasons for preserving the confidentiality of the withheld information); *Morrissey*, 171 F.R.D. at 89 n.3 ("One of the *prerequisites* of *invoking* the 'deliberative process' privilege is that the claim be made by the head of the agency after personal consideration of the allegedly privileged material.") (emphasis added). "Without this type of competent proof, the Court is left with . . . counsel's blanket assertion that the subject documents . . . are protected by the governmental deliberative process privilege." *Kaufman*, 1999 WL 239698, at *4. Because the privilege "may not be asserted by government counsel," *id.* at *3, FHFA's claim of deliberative process privilege fails.

*Second*, FHFA has not demonstrated that the withheld communications are both "pre-decisional" and "deliberative." *Nat'l Cong.*, 194 F.R.D. at 92. For example, none of FHFA's log entries invoking the deliberative process privilege indicate that the documents

reflect the personal opinions of the writer rather than the policy of the agency, or that production would somehow inaccurately reflect or prematurely disclose the views of OFHEO or FHFA.

*Third*, the deliberative process privilege protects only inter- and intra-agency communications.  *See Davis v. City of New York*, No. 10 Civ. 0699 (SAS), 2011 WL 1742748, at *3 (S.D.N.Y. May 5, 2011); *In re Franklin Nat'l Bank*, 478 F. Supp. at 581 (noting that the deliberative process privilege protects only expressions of opinion or recommendations "in intragovernmental documents"); *see also Schreiber*, 11 F.3d at 220 (noting that the privilege "protects only agency opinions and recommendations from disclosure").  The entries on FHFA's privilege log indicate that FHFA has improperly invoked the deliberative process privilege over documents that are not communications within OFHEO or FHFA or other governmental agencies.[17]

## III.   GOOD CAUSE EXISTS FOR PRODUCTION OF THE WITHHELD DOCUMENTS

The bank examination and deliberative process privileges are qualified privileges; even where they apply, they do not preclude disclosure where good cause for disclosure exists. *Wultz*, 2013 WL 1453258, at *4; *see also In re Franklin Nat'l Bank,* 478 F. Supp. at 583, 586. Courts have found good cause for disclosure where, as here, "the government . . . is deeply involved in this litigation as a plaintiff."  *In re Sunrise Sec. Litig*., 109 B.R. 658, 666 (E.D. Pa. 1990) ("It is unconscionable to allow [the government] to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.") (*quoting United States v. Reynolds*, 345 U.S. 1, 12 (1953)).  "Discovery is favored

---

[17]

where the government is involved in the litigation . . . ."  *Forstmann Leff Assocs. v. Am. Brands, Inc.*, No. 88 Civ. 4485 (JMC), 1991 WL 168002, at *4 (S.D.N.Y. Aug. 16, 1991).

   Indeed, all of the factors courts consider in balancing against the potential chilling effect of disclosure—relevance, availability of other evidence, the seriousness of the litigation, the role of the government in the litigation, and the possibility of future timidity by government employees—strongly favor disclosure here.  *In re Franklin Nat'l Bank*, 478 F. Supp. at 583; *see also Schreiber*, 11 F.3d at 220-21.

   **Relevance.**  OFHEO (and later FHFA) and the GSEs regularly communicated about numerous issues relevant to the claims and defenses in these actions given OFHEO and FHFA's role in overseeing the GSEs' PLS purchases, risk policies, policies and practices concerning originators, and their discussions with the GSEs concerning every facet of the GSEs' businesses.  The withheld documents are relevant to the GSEs' knowledge (including communications authored by OFHEO and FHFA that bear on the GSEs' knowledge), when the GSEs were on notice of their claims, the materiality of any alleged misstatements, the reasonableness and extent of the GSEs' alleged reliance, and the causes of the GSEs' alleged losses, among other issues.[18]  Communications between and among the GSEs and OFHEO or FHFA are directly relevant to these issues, which is no doubt why FHFA identified two dozen OFHEO and FHFA custodians and produced hundreds of thousands of pages of documents concerning OFHEO's oversight of the GSEs.  The relevance of these documents is further illustrated by the public statements of FHFA and OFHEO officials set forth above.  Notably, all of the documents at issue have already been *deemed responsive by FHFA to existing requests*

---

[18]   *See, e.g.*, *Forstmann*, 1991 WL 168002, at *3 ("Given the multitude of factors that bear on the reasonableness of plaintiffs' reliance on defendants' alleged misrepresentations, the regulatory documents defendants seek [from the Office of Thrift Supervision] are relevant."); *Principe*, 149 F.R.D. at 449 (finding information contained in bank examination reports relevant to defendants' knowledge).

and have been collected and, in most cases, bates-stamped.  Thus, not only are the withheld

documents relevant, but their production would impose no undue burden on FHFA.

      **Availability.**  Disclosure is required where the information sought "provide[s] a

unique and objective contemporaneous chronicle" for which "no satisfactory substitute exists."

*In re Franklin Nat'l Bank*, 478 F. Supp. at 586.  That is the case here.  This Court has observed

that, given the passage of time and its effect on individuals' recollections, documentary evidence

is highly important in these cases.  The GSEs' communications with OFHEO and FHFA provide

critical contemporaneous evidence of elements of the parties' claims and defenses that otherwise

is unavailable.  *In re Powell*, 227 B.R. 61, 67 (D.Vt. 1998).  That is particularly true with respect

to Freddie Mac, given its pervasive destruction of relevant emails.

      **Seriousness.**  The seriousness of the litigation favors disclosure where, as here,

the "action raises complex legal issues and the parties have a large financial stake in the outcome

of the litigation." *Forstmann*, 1991 WL 168002, at *4.[19]  Moreover, litigants and the public have

a compelling interest in the accuracy and integrity of judicial fact-finding, particularly where

disclosure would further the public's interest in effective government.  *See, e.g.*, *In re Franklin

Nat'l Bank*, 478 F. Supp. at 582; *In re Subpoena*, 967 F.2d at 634.  FHFA's claims involve

complex issues, and the sheer size of the litigation—perhaps the largest securities litigation ever

filed—strongly supports disclosure.

      **Role of the Government in the Litigation.**  "Discovery is favored where the

government is involved in the litigation in light of the obligation that every party has to be

---

[19]    *See also Principe*, 149 F.R.D. at 449 (finding allegations of large-scale fraud involving publicly-traded securities "undoubtedly serious"); *In re Powell*, 227 B.R. at 67 (finding charges of fraud against a bank "constitute serious allegations"); *In re Sunrise Sec. Litig.*, 109 B.R. at 666 (finding the case "one of utmost seriousness" where damages of over one-half billion dollars were sought and the bank's collapse was the subject of two Congressional subcommittees).

forthcoming with relevant information." *Forstmann*, 1991 WL 168002, at *4.  Courts have specifically found that, where a regulator "is deeply involved in . . . litigation as a plaintiff," the government's role is "of particular significance" in favoring disclosure.  *In re Sunrise Sec. Litig.*, 109 B.R. at 666.  Thus, FHFA's role as a plaintiff seeking billions of dollars here clearly favors disclosure.

**The Possibility of Future Timidity by Government Employees.**  Finally, courts consider whether disclosure is likely to make federal employees more timid.  *Principe*, 149 F.R.D. at 449-50; *see also In re Franklin Nat'l Bank*, 478 F. Supp. at 583.  As discussed above, there is no credible risk of future timidity here, given that (1) there are extensive public disclosures of OFHEO and FHFA's supervision of the GSEs,[20] (2) the GSEs are unlikely to exist following FHFA's temporary conservatorship, (3) FHFA has produced in other litigation tens of thousands of documents over which it asserted the bank examination privilege, and (4) FHFA already has voluntarily produced similar communications in this litigation.

In short, even if FHFA's assertions of the bank examination and deliberative process privileges were facially proper (they are not), good cause exists to compel FHFA to produce these documents.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to compel, order FHFA to promptly produce in unredacted form all documents withheld or redacted on the basis of either a bank examination privilege or deliberative process privilege, and grant such other and further relief as the Court deems just and proper.

---

[20]     *See Principe*, 149 F.R.D. at 450 (considering extent of publicity and finding that "[t]he disclosure of additional evidence of unsound banking practices in the past will not undermine confidence in the bank any more than [the bank's] insolvency and receivership already has.").

Dated:  New York, New York
        August 30, 2013


Respectfully submitted,

 _/s/Andrew T. Frankel_____
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan C. Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017-3954

*Attorneys for Defendants Deutsche Bank AG,
Taunus Corporation, Deutsche Bank Securities
Inc., DB Structured Products, Inc., ACE
Securities Corp., MortgageIT Securities Corp.*


Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017

*Attorneys for Defendant RBS Securities Inc.*

Bruce Clark (clarkb@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

Amanda F. Davidoff
(davidoffa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006

*Attorneys for Defendants Nomura Securities
International, Inc., Nomura Holding America
Inc., Nomura Asset Acceptance Corporation,
Nomura Home Equity Loan, Inc., Nomura
Credit & Capital, Inc., David Findlay, John
McCarthy, John P. Graham, Nathan Gorin, and
N. Dante LaRocca*

Penny Shane (shanep@sullcrom.com)
Sharon L. Nelles (nelless@sullcrom.com)
Jonathan M. Sedlak (sedlakj@sullcrom.com)
Yavar Bathaee (bathaeey@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

*Attorneys for Defendants JPMorgan Chase &
Co., JPMorgan Chase Bank, N.A., J.P. Morgan
Mortgage Acquisition Corporation, J.P.
Morgan Securities LLC, J.P. Morgan
Acceptance Corporation I, Bear Stearns & Co.,
Inc., EMC Mortgage LLC, Structured Asset
Mortgage Investments II Inc., Bear Stearns
Asset Backed Securities I LLC, WaMu Asset
Acceptance Corporation, WaMu Capital
Corporation, Washington Mutual Mortgage
Securities Corporation, Long Beach Securities
Corporation and certain of the Individual
Defendants*

Richard H. Klapper (klapperr@sullcrom.com)
Theodore Edelman (edelmant@sullcrom.com)
Michael T. Tomaino, Jr.
(tomainom@sullcrom.com)
Tracy Richelle High (hight@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

*Attorneys for Goldman, Sachs & Co., GS
Mortgage Securities Corp., Goldman Sachs
Mortgage Company, The Goldman Sachs
Group, Inc., Goldman Sachs Real Estate
Funding Corp., Peter C. Aberg, Howard S.
Altarescu, Robert J. Christie, Kevin Gasvoda,
Michelle Gill, David J. Rosenblum, Jonathan S.
Sobel, Daniel L. Sparks, Mark Weiss*

Richard W. Clary (rclary@cravath.com)
Richard J. Stark (rstark@cravath.com)
Michael T. Reynolds (mreynolds@cravath.com)
Lauren A. Moskowitz
(lmoskowitz@cravath.com)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

*Attorneys for Credit Suisse Securities (USA)
LLC, Credit Suisse Holdings (USA), Inc., Credit
Suisse (USA), Inc., DLJ Mortgage Capital, Inc.,
Credit Suisse First Boston Mortgage Securities
Corporation, Asset Backed Securities
Corporation, Credit Suisse First Boston
Mortgage Acceptance Corporation, Andrew A.
Kimura, Jeffrey A. Altabef, Evelyn Echevarria,
Michael A. Marriott, Zev Kindler, Thomas E.
Siegler, Thomas Zingalli, Carlos Onis, Steven
L. Kantor, Joseph M. Donovan, Juliana
Johnson, and Greg Richter*

John M. Conlon (jconlon@mayerbrown.com)
Mark S. Hanchet
(mhanchet@mayerbrown.com)
Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY 10019

*Attorneys for Defendants HSBC North America
Holdings Inc., HSBC USA Inc., HSBC Markets
(USA) Inc., HSBC Bank USA, NA., HSI Asset
Securitization Corporation*

Bruce Clark (clarkb@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

Amanda F. Davidoff
(davidoffa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006

*Attorneys for Defendants First Horizon
National Corporation, First Tennessee Bank
National Association, FTN Financial Securities
Corporation, First Horizon Asset Securities,
Inc., Gerald L. Baker, Peter F. Makowiecki,
Charles G. Burkett, and Thomas J. Wageman*

James P. Rouhandeh
Brian S. Weinstein
Daniel J. Schwartz
Nicholas N. George
Jane M. Morril
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017

*Attorneys for Defendants Morgan Stanley,
Morgan Stanley & Co. Incorporated (n/k/a
Morgan Stanley & Co. LLC), Morgan Stanley
Mortgage Capital Holdings LLC (successor-in-
interest to Morgan Stanley Mortgage Capital
Inc.), Morgan Stanley ABS Capital I Inc.,
Morgan Stanley Capital I Inc., Saxon Capital,
Inc., Saxon Funding Management LLC, Saxon
Asset Securities Company, Gail P. McDonnell,
Howard Hubler, David R. Warren, and Steven
S. Stern*

Pamela Rogers Chepiga
(pamela.chepiga@allenovery.com)
Josephine A. Cheatham
(allie.cheatham@allenovery.com)
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020

*Attorneys for Samuel L. Molinaro, Jr.*

Richard A. Edlin (edlinr@gtlaw.com)
Ronald D. Lefton (leftonr@gtlaw.com)
Candace Camarata (camaratac@gtlaw.com)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
Phone: 212-801-9200

*Attorneys for Defendant Jeffrey Mayer*

Reginald R. Goeke (rgoeke@mayerbrown.com)
Catherine A. Bernard
(cbernard@mayerbrown.com)
MAYER BROWN LLP
1999 K St., N.W.
Washington, D.C.  20006


Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY 10019

*Attorneys for Ally Financial Inc. and GMAC Mortgage Group, Inc.*

Jay B. Kasner (jay.kasner@skadden.com)
Scott Musoff (scott.musoff@skadden.com)
George Zimmerman
(george.zimmerman@skadden.com)
Robert A. Fumerton
(robert.fumerton@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, NY  10036

*Attorneys for SG Americas, Inc., SG Americas Securities Holdings, LLC, SG Americas Securities, LLC, SG Mortgage Finance Corp., and SG Mortgage Securities, LLC, Arnaud Denis, Abner Figueroa, Tony Tusi, and Orlando Figueroa*


Sandra D. Hauser
(sandra.hauser@snrdenton.com)
SNR DENTON US LLP
1221 Avenue of the Americas
New York, New York 10020

*Attorney for Matthew Perkins*


David H. Braff (braffd@sullcrom.com)
Brian T. Frawley (frawleyb@sullcrom.com)
Jeffrey T. Scott (scottj@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Attorneys for Defendants Barclays Bank plc, Barclays Capital Inc., Securitized Asset Backed Receivables LLC, Michael Wade, John Carroll, and Paul Menefee*

Matthew Solum
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Robert J. Kopecky
Devon M. Largio
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

Jeffrey S. Powell
Patrick M. Bryan
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
(202) 879-5000

*Attorneys for Ally Securities, LLC*

Joel C. Haims (jhaims@mofo.com)
LaShann M. DeArcy (ldearcy@mofo.com)
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104

*Attorneys for Tom Marano and Michael*
*Nierenberg*

David Blatt (dblatt@wc.com)
John McNichols (jmcnichols@wc.com)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

*Attorneys for Bank of America Corporation;*
*Bank of America, N.A.; Asset Backed Funding*
*Corp.; Banc of America Funding Corp.; Merrill*
*Lynch & Co., Inc., Merrill Lynch Mortgage*
*Lending, Inc., Merrill Lynch Mortgage Capital*
*Inc., First Franklin Financial Corp., Merrill*
*Lynch Mortgage Investors, Inc., Merrill Lynch*
*Government Securities, Inc., Merrill Lynch,*
*Pierce, Fenner & Smith Inc.*

Dani R. James (djames@kramerlevin.com)
Jade A. Burns (jburns@kramerlevin.com)
KRAMER LEVIN NAFTALIS & FRANKEL
LLP
1177 Avenue of the Americas
New York, New York 10036

*Attorneys for Defendant Jeffrey L. Verschleiser*

Daniel C. Zinman (dzinman@rkollp.com)
H. Rowan Gaither (rgaither@rkollp.com)
Matthew M. Riccardi (mriccardi@rkollp.com)
RICHARDS KIBBE & ORBE LLP
One World Financial Center
New York, NY 10281

*Attorneys for George C. Carp, Robert Caruso,*
*George E. Ellison, Adam D. Glassner, Daniel B.*
*Goodwin, Juliana Johnson, Michael J. Kula,*
*William L. Maxwell, Mark I. Ryan, and Antoine*
*Schetritt; Matthew Whalen, Brian Sullivan,*
*Michael McGovern, Donald Puglisi, Paul Park,*
*and Donald Han*