**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                  :

FEDERAL HOUSING FINANCE AGENCY, etc.,  :

          Plaintiff,      :

                  :

     -against-        :   No. 11 Civ. 6188 (DLC)

                  :

JPMORGAN CHASE & CO., et al.,      :

          Defendants.     :

                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BRIEF FOR THE CLEARING HOUSE ASSOCIATION L.L.C.**
**AS *AMICUS CURIAE* SUPPORTING DEFENDANTS**

October 4, 2013

GIBSON, DUNN & CRUTCHER LLP
Helgi C. Walker*
Scott G. Stewart*
1050 Connecticut Ave., N.W.
Washington, D.C.  20036
Telephone:  (202) 955-8500
Facsimile:  (202) 530-9595
HWalker@gibsondunn.com
SStewart@gibsondunn.com
*Admitted pro hac vice*

*Counsel for Amicus Curiae The Clearing House*
*Association L.L.C.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTEREST OF *AMICUS CURIAE* ..................................................................................... 1

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 4

ARGUMENT ....................................................................................................................... 5

I.  The SAR Confidentiality Regulations, As Interpreted By FinCEN And The OCC, Prohibit The Disclosure Of Documents Prepared In The Course Of Determining Whether To File A SAR. .......................................................................................... 5

    A.  The Rulemakings Adopting The Current Regulations Establish That SAR Confidentiality Bars The Disclosure Of Investigatory Materials. ......................... 6

    B.  Other Regulatory Guidance Affirms That SAR Confidentiality Is Integral To The SAR Program And Must Extend To Banks' Investigative Materials. .................................................................................................................. 9

    C.  The Agencies' Litigating Positions Confirm That SAR Confidentiality Extends To Internal Investigative Materials. ...................................................... 11

II. The Weight Of Judicial Authority Holds That SAR Confidentiality Bars Disclosure Of Investigative Materials. ................................................................... 13

    A.  The Weight Of Judicial Authority Counsels Firmly Against Allowing Banks' Investigative SAR Documents To Be Disclosed. ................................... 13

    B.  The Two Decisions On Which Plaintiff Heavily Relies Are Wrongly Decided Outliers. ............................................................................................... 15

CONCLUSION .................................................................................................................. 17

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berlin v. Renaissance Rental Partners, LLC,*
   723 F.3d 119 (2d Cir. 2013)...................................................................... 12, 13

*Chase Bank USA, N.A. v. McCoy,*
   131 S. Ct. 871 (2011)......................................................................................... 13

*Cmty. Health Ctr. v. Wilson-Coker,*
   311 F.3d 132 (2d Cir. 2002)............................................................................... 13

*Cotton v. PrivateBank & Trust Co.,*
   235 F. Supp. 2d 809 (N.D. Ill. 2002) ........................................................... 14, 15

*Decker v. Nw. Envtl. Def. Ctr.,*
   133 S. Ct. 1326 (2013)....................................................................................... 12

*Fed. Express Corp. v. Holowecki,*
   552 U.S. 389 (2008)........................................................................................... 13

*Freedman & Gersten, LLP v. Bank of America, N.A.,*
   No. 09 Civ. 5351 (SRC) (MAS), 2010 WL 5139874 (D.N.J. Dec. 8, 2010)..................... 15, 16

*Mayo Found. for Med. Educ. & Research v. United States,*
   131 S. Ct. 704 (2011)......................................................................................... 12

*NLRB v. Bell Aerospace Co., Div. of Textron, Inc.,*
   416 U.S. 267 (1974)........................................................................................... 13

*Regions Bank v. Allen,*
   33 So. 3d 72 (Fla. Dist. Ct. App. 2010) ......................................................... 3, 14

*Union Bank of Cal., N.A. v. Superior Court,*
   130 Cal. App. 4th 378 (Cal. Ct. App. 2005) ...................... 3, 11, 12, 13, 14, 15

*United States v. Holihan,*
   248 F. Supp. 2d 179 (W.D.N.Y. 2003) ............................................................. 16

*Weil v. Long Island Sav. Bank,*
   195 F. Supp. 2d 383 (E.D.N.Y. 2001) ............................................................. 16

*Whitney National Bank v. Karam,*
   306 F. Supp. 2d 678 (S.D. Tex. 2004) ............................................................. 14

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Wultz v. Bank of China Ltd.*,
   291 F.R.D. 42 (S.D.N.Y. 2013) ............................................................................... 16

*Wultz v. Bank of China Ltd.*,
   --- F.R.D. ---, 2013 WL 1453258 (S.D.N.Y. Apr. 9, 2013)................................. 15, 16

*Wultz v. Bank of China Ltd.*,
   No. 11 Civ. 1266 (SAS), 2013 WL 1788559 (S.D.N.Y. Apr. 17, 2013)............................ 15, 16

**Statutes**

31 U.S.C. § 5311 ..................................................................................................... 4

31 U.S.C. § 5322 ..................................................................................................... 5

**Rules**

Department of the Treasury, Financial Crimes Enforcement Network,
   Confidentiality of Suspicious Activity Reports, Final Rule,
   75 Fed. Reg. 75,593 (Dec. 3, 2010) ....................................................... 2, 4, 6, 7, 8, 14

Department of the Treasury, Office of the Comptroller of the Currency,
   Confidentiality of Suspicious Activity Reports, Final Rule,
   75 Fed. Reg. 75,576 (Dec. 3, 2010) .................................................. 2, 4, 6, 7, 8, 14, 16

**Regulations**

12 C.F.R. § 21.11 (1996) ...................................................................................... 5

12 C.F.R. § 21.11 ...................................................................... 2, 4, 5, 6, 8, 14, 15, 16

31 C.F.R. § 103.21 (1996) .................................................................................... 5

31 C.F.R. § 1020.320 ................................................................................ 2, 4, 5, 6, 8, 16

**Other Authorities**

*Advisory:  Maintaining the Confidentiality of Suspicious Activity Reports*,
   FIN-2010-A014 (Nov. 23, 2010), http://www.fincen.gov/statutes_regs/guidance/html/FIN-
   2010-A014.html ........................................................................................... 10

*Guidance:  Suspicious Activity Report Supporting Documentation*, FIN-2007-G003
   (June 13, 2007), http://fincen.gov/statutes_regs/guidance/html/Supporting_
   Documentation_Guidance.html ....................................................................... 10, 17

Prepared Remarks of James H. Freis, Jr., Director,
   Financial Crimes Enforcement Network (Oct. 9, 2008) ............................................. 9

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*The SAR Activity Review:  Trends, Tips & Issues*,
   FinCEN BSA Advisory Group, Issue 20 (Oct. 2011)...................................................... 3, 10, 11

*Unauthorized Disclosure of Suspicious Activity Reports* (Aug. 18, 2004),
   http://fincen.gov/statutes_regs/guidance/html/unauthorizeddisclosureofbanksar.html.............. 9

## INTEREST OF *AMICUS CURIAE*

Established in 1853, The Clearing House Association L.L.C. is the nation's oldest banking association and payments company.[1]  It is owned by the world's largest commercial banks, which collectively employ 1.4 million people in the United States and hold more than half of all U.S. deposits.  The Association is a nonpartisan advocacy organization representing— through regulatory comments, *amicus* briefs, and white papers—the interests of its member banks on a variety of systemically important banking issues, including compliance with the requirements of the Bank Secrecy Act.  Its affiliate, The Clearing House Payments Company L.L.C., provides payment, clearing, and settlement services to its member banks and other financial institutions, clearing almost $2 trillion daily and representing nearly half of the automated-clearing-house, funds-transfer, and check-image payments made in the United States.

Because the Bank Secrecy Act and its implementing regulations require financial institutions, including banks, to file Suspicious Activity Reports (SARs) and prohibit banks from disclosing materials related to SARs, the Association and its members have a significant interest in the correct interpretation of the SAR confidentiality regulations and in the proper administration of the SAR program.

## PRELIMINARY STATEMENT

Plaintiff's demand for documents presents the important question whether a bank may be forced to disclose materials prepared in the course of investigating whether to file a SAR with federal regulators.  The SAR confidentiality regulations as consistently interpreted by the federal agencies charged with administering and enforcing the SAR program, the policies animating the

---

[1]     No counsel for a party authored this brief in whole or in part, and no person or entity other than *amicus* or its counsel made any monetary contribution toward the preparation or submission of this brief.

program, and the weight of judicial authority all compel the conclusion that federal law prohibits the disclosure of such materials.  Accordingly, the motion for a protective order should be granted.

The Financial Crimes Enforcement Network (FinCEN) and the Office of the Comptroller of the Currency (OCC)—two regulatory bodies responsible for administering and enforcing the SAR program—have authoritatively explained that the SAR confidentiality regulations preclude disclosure of documents prepared in the course of investigating whether to file a SAR.  *See, e.g.*, Department of the Treasury, Financial Crimes Enforcement Network, Confidentiality of Suspicious Activity Reports, Final Rule, 75 Fed. Reg. 75,593 (Dec. 3, 2010); Department of the Treasury, Office of the Comptroller of the Currency, Confidentiality of Suspicious Activity Reports, Final Rule, 75 Fed. Reg. 75,576 (Dec. 3, 2010).  To serve the law-enforcement and counterterrorism policies underlying the SAR program, both FinCEN and the OCC have repeatedly reaffirmed that SAR confidentiality extends to all materials that a bank prepares in complying with SAR reporting requirements, even when the bank does not ultimately file a SAR. Most notably, the agencies have expressly stated that SAR confidentiality extends "to material prepared by the financial institution as part of its process to detect and report suspicious activity."  75 Fed. Reg. at 75,595; *see also* 75 Fed. Reg. at 75,579.  The Court should afford significant weight to the regulators' well-reasoned views.  Indeed, these views are entirely consistent with the language of the regulations themselves, which prohibit the disclosure of "any information that would reveal the existence of a SAR."  31 C.F.R. § 1020.320(e); 12 C.F.R. § 21.11(k).  Investigative work product that analyzes whether to file a SAR in a particular case necessarily risks revealing the existence (or non-existence) of a SAR.

The weight of judicial authority similarly holds that the requirements of SAR confidentiality bar the disclosure of materials created in the course of determining whether to file a SAR. *See*, *e.g.*, *Union Bank of Cal., N.A. v. Superior Court*, 130 Cal. App. 4th 378, 391 (Cal. Ct. App. 2005); *Regions Bank v. Allen*, 33 So. 3d 72, 77 (Fla. Dist. Ct. App. 2010) (per curiam). Those judicial decisions accord with binding regulatory authority: *Union Bank* embraced the position advanced by the OCC in that case; *Regions Bank* followed *Union Bank*; and both FinCEN and the OCC cited *Union Bank* with approval in promulgating amendments to the current SAR regulations and examining the purposes underlying the SAR program. The outlier rulings on which Plaintiff relies, by contrast, depart from the regulatory text, disregard the policies underlying the SAR program, and fail to cite or discuss the consistent and overwhelming regulatory guidance.

The Clearing House's member banks want to help law enforcement identify suspicious financial transactions and combat money laundering, terrorism, and other federal crimes. To do so effectively, however, SAR confidentiality must be given full force. As FinCEN has emphasized, "[i]t is critically important that financial institutions are confident that the information they provide to help in the fight against money laundering, financing of terrorism and other financial crime is appropriately protected." *The SAR Activity Review: Trends, Tips & Issues*, FinCEN BSA Advisory Group, Issue 20, at 71 (Oct. 2011), *available at* http://www.fincen.gov/news_room/rp/files/sar_tti_20.pdf ("*SAR Activity Review*"). In keeping with the authoritative views of the administering agencies, the implementing regulations, the substantial policies underlying the SAR program, and the weight of judicial authority, the Court should grant JPMorgan's motion for a protective order.

## BACKGROUND

The Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.*, authorizes the Secretary of the Treasury to require financial institutions, including banks, to report "any suspicious transaction relevant to a possible violation of law or regulation." *Id.* § 5318(g)(1). That authorization rests on Congress's determination that such reports "have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings" and in counterterrorism efforts. *Id.* § 5311; *see also* 75 Fed. Reg. at 75,577; 75 Fed. Reg. at 75,594.

In accordance with that determination, FinCEN has promulgated regulations requiring banks to file "a report of any suspicious transaction relevant to a possible violation of law or regulation." 31 C.F.R. § 1020.320(a)(1). The OCC has issued parallel regulations requiring national banks to file with FinCEN "a Suspicious Activity Report when they detect a known or suspected violation of Federal law or a suspicious transaction related to a money laundering activity or a violation of the Bank Secrecy Act." 12 C.F.R. § 21.11(a), (c).

In imposing these requirements, FinCEN and the OCC stressed that public disclosure of a SAR (or of information relating to a SAR) could harm banks, their customers, and the larger goals of the SAR system. Disclosure could alienate customers whose activities were identified in a SAR, besmirch the reputations of those customers, expose sensitive commercial information, leave banks vulnerable to criminals who could learn from SARs how to evade the banks' methods of detecting crimes, and compromise criminal investigations.

Recognizing that such harms could chill the reporting of suspicious activity—and thus obstruct the federal government's efforts to catch money launderers, terrorists, and other criminals—FinCEN and the OCC promulgated regulations prohibiting banks from disclosing a SAR or materials relating to a SAR. Initially, the SAR confidentiality regulations provided that SARs were confidential and prohibited banks from "produc[ing] [a] SAR" or "provid[ing] any

4

information that would disclose that a SAR has been prepared or filed." 31 C.F.R. § 103.21(e) (1996); 12 C.F.R. § 21.11(k) (1996). As amended in 2010, the regulations now more broadly provide: "A SAR, and any information that would reveal the existence of a SAR, are confidential and shall not be disclosed" except in narrowly specified circumstances. 31 C.F.R. § 1020.320(e); 12 C.F.R. § 21.11(k); *see also* 31 C.F.R. § 1020.320(e)(1)(i) ("Any bank . . . that is subpoenaed or otherwise requested to disclose a SAR or any information that would reveal the existence of a SAR, shall decline to produce the SAR or such information . . . ."); 12 C.F.R. § 21.11(k)(1) (same). Improper disclosure is punishable as a felony. *See* 31 U.S.C. § 5322.

Against this regulatory backdrop, Plaintiff has demanded from JPMorgan a sprawling array of documents relating to its investigations of suspicious activity: "referrals of actual, potential, or suspected fraud" to JPMorgan's Loan Integrity Operations (the LIO, which helps determine whether to file a SAR); "investigative files maintained" by the LIO; "loan review summaries documenting the LIO's conclusions and findings"; and "reports to senior management summarizing mortgage fraud risk, mortgage fraud, and mortgage fraud losses." Opp. 4. JPMorgan, in turn, has moved this Court for a protective order barring such disclosure.

## ARGUMENT

**I.    The SAR Confidentiality Regulations, As Interpreted By FinCEN And The OCC, Prohibit The Disclosure Of Documents Prepared In The Course Of Determining Whether To File A SAR.**

FinCEN and the OCC have explained how to interpret and apply the SAR confidentiality regulations in order to serve the policies underlying the SAR system. They have done so in rulemakings, in guidance documents, and in filings with courts across the country. In each of those contexts, FinCEN and the OCC have explained that the core purposes of the SAR program preclude disclosure of any documents prepared in the course of investigating whether to file a

SAR.  In keeping with the regulators' interpretation and the language of the regulations, the Court should grant the motion for a protective order.

A.     **The Rulemakings Adopting The Current Regulations Establish That SAR Confidentiality Bars The Disclosure Of Investigatory Materials.**

FinCEN and the OCC have authoritatively explained that, to serve the important federal policies underlying the SAR program, SAR confidentiality must extend to all materials that a bank prepares in the course of investigating and otherwise complying with SAR reporting requirements—even when the bank does not file a SAR and even when a particular document does not on its face disclose that a SAR exists.

The regulators described the purposes of the SAR program in 2010, when they amended their regulations to strengthen the program by making clear that SAR confidentiality encompasses both "[a] SAR" and "any information that would reveal the existence of a SAR." 31 C.F.R. § 1020.320(e); 12 C.F.R. § 21.11(k).  In explaining why they amended the confidentiality regulations, FinCEN and the OCC emphasized that "the SAR system as a whole" is designed to "creat[e] . . . an environment that encourages financial institutions to report suspicious activity without fear of reprisal."  75 Fed. Reg. at 75,595; *see* 75 Fed. Reg. at 75,579. That "strong public policy," they emphasized, "leans heavily in favor of applying SAR confidentiality not only to a SAR itself, but also in appropriate circumstances to *material prepared by the financial institution as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not*."  75 Fed. Reg. at 75,595 (emphasis added); *see* 75 Fed. Reg. at 75,579.

When explaining the scope of the current rules, the regulators confronted the issue now before this Court.  In response to commenters' requests for clarification that SAR confidentiality extends to documents prepared when investigating suspicious activity and determining whether

to file SARs, FinCEN (and the OCC, in its companion rulemaking) distinguished between two categories of documents.  The first comprises documents that may identify suspicious activity but do not reveal whether a SAR exists:  "document[s] memorializing a customer transaction, such as an account statement indicating a cash deposit or a record of a funds transfer"; "statistical or abstract information or general discussions of suspicious activity"; or "cop[ies] of a fraudulent check, or a cash transactions log showing a clear pattern of structured deposits."  75 Fed. Reg. at 75,595 & n.13; *see* 75 Fed. Reg. at 75,579 & n.21.  The regulators repeatedly described these discoverable materials as documents produced "in the ordinary course of business."  75 Fed. Reg. at 75,595 nn.13, 14; *see also id.* at 75,598.  The second category encompasses materials prepared "as part of [the] process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not."  *Id.* at 75,595.  The regulators explained that "the strong public policy that underlies the SAR system as a whole" prohibits disclosure of these documents.  *Id.*

That interpretation resolves the dispute here.  The materials sought by Plaintiff were not "produced in the ordinary course of business," 75 Fed. Reg. at 75,595 n.13; rather, they were created by the LIO in investigating suspicious activity.  By definition, then, these documents were created "as part of [the] process to detect and report suspicious activity" and therefore fall squarely within SAR confidentiality.  *Id.* at 75,595.

That conclusion is buttressed by other parts of the rulemaking documents.  The OCC explained that:  "a SAR may provide insight into how a bank uncovers potential criminal conduct that can be used by others to circumvent detection"; "the disclosure of a SAR could . . . compromise any investigations being conducted in connection with the SAR"; and "[t]he disclosure of a SAR also could compromise personally identifiable information or commercially sensitive information or damage the reputation of individuals or companies that may be named."

75 Fed. Reg. at 75,578.   Each of those concerns about disclosure of a SAR applies just as strongly to disclosing documents (such as those at issue here) analyzing whether to file a SAR. Disclosing such documents could expose banks to criminal activity, compromise federal investigations, threaten banks' customer relationships, and destroy reputations.   Documents that invite such dangers must be protected by SAR confidentiality.

The coverage of investigative work product under the SAR confidentiality regulations is consistent with the language of the rules.   The rules prohibit the disclosure of a SAR and "any information that would reveal the existence of a SAR."   31 C.F.R. § 1020.320(e); 12 C.F.R. § 21.11(k).   This text undisputedly bars disclosure of "any document or other information that affirmatively states that a SAR has been filed," and Plaintiff does not squarely contest that it also bars disclosure of "any document or other information that affirmatively states that a SAR" "has not been filed."   75 Fed. Reg. at 75,595; 75 Fed. Reg. at 75,579; *see* Opp. 1-2, 9-19. Investigative work product that analyzes whether to file a SAR in a particular case could reveal the existence (or non-existence) of a SAR.   Consider, for example, a memorandum that assesses whether there is a reasonable explanation for activity that has been reported as potentially suspicious.   *See* 31 C.F.R. § 1020.320(a)(2)(iii); 12 C.F.R. § 21.11(c)(4)(iii).   If there is no such explanation, then a report must be filed, and vice versa, *see* 31 C.F.R. § 1020.320(a)(2)(iii); 12 C.F.R. § 21.11(c)(4)(iii):   thus, this analysis is clearly linked to the question whether a SAR has been filed.

The regulations, to be sure, exclude from SAR confidentiality "underlying facts, transactions, and documents upon which a SAR is based."   31 C.F.R. § 1020.320(e)(1)(ii)(A)(2); 12 C.F.R. § 21.11(k)(1)(ii)(A)(2).   But that narrow set of documents simply covers (as explained above) ordinary course-of-business documents that prove the existence of the transactions at

issue.  Plaintiff does not seek ordinary business records—such as bank statements or deposit slips—but instead wants core investigatory materials from the unit within JPMorgan that investigates potentially suspicious activity and evaluates whether a SAR should be filed.

If any doubt might exist about whether SAR confidentiality extends to a particular document, this Court should resolve that doubt in light of the "strong public policy"—stressed by FinCEN and the OCC in amending the regulations—of protecting SAR-related information and the extraordinary harm that disclosure can inflict.  *See also infra* Part I-B.  The important policies underlying SAR confidentiality establish a presumption against disclosure:  Unless a document clearly falls within the category of documents that simply adduce facts regarding a suspicious activity—as opposed to documents *analyzing* potential illegal activity—it should be protected.

### B.    Other Regulatory Guidance Affirms That SAR Confidentiality Is Integral To The SAR Program And Must Extend To Banks' Investigative Materials.

Other regulatory guidance confirms that SAR confidentiality protects the investigative work product prepared in determining whether to file a SAR.  Echoing the purposes articulated above, FinCEN has consistently explained that disclosing a SAR "can compromise the national security of the United States as well as threaten the safety and security of those institutions and individuals who file such reports."  *Unauthorized Disclosure of Suspicious Activity Reports* (Aug. 18, 2004), http://fincen.gov/statutes_regs/guidance/html/unauthorizeddisclosureof banksar.html.  Such disclosure "undermines the very purpose for which the suspicious activity reporting system was created—the protection of our financial system through the prevention, detection, and prosecution of financial crimes and terrorist financing."  *Id*.; *see also* Prepared Remarks of James H. Freis, Jr., Director, Financial Crimes Enforcement Network (Oct. 9, 2008), *available    at*    http://www.fincen.gov/news_room/speech/html/20081009.html    ("[SAR]

9

confidentiality is a crucial component to the open sharing of information from banks to the government.").

In guidance on the 2010 amendments, FinCEN similarly explained that "[t]he unauthorized disclosure of SARs could undermine ongoing and future investigations by tipping off suspects, deter financial institutions from filing SARs, and threaten the safety and security of institutions and individuals who file such reports." *Advisory: Maintaining the Confidentiality of Suspicious Activity Reports*, FIN-2010-A014 (Nov. 23, 2010), http://www.fincen.gov/statutes_regs/guidance/html/FIN-2010-A014.html. The SAR program plays an "essential role . . . in protecting our financial system," FinCEN added, but it can operate effectively only if "the financial sector[ ] [is] confiden[t] that [SARs] will be appropriately protected." *Id.*; *see also SAR Activity Review*, *supra*, at 70 ("[i]nappropriate disclosures of SARs" can "compromise a criminal investigation and render useless countless law enforcement resources" and can also put a filing bank "in harm's way" by notifying "the suspects or members of a suspected or known terrorist cell" implicated in a SAR of the bank against which it would want to retaliate).

In keeping with the purposes set forth in these guidance documents, FinCEN has consistently maintained that SAR confidentiality extends well beyond SARs themselves and even beyond materials that squarely identify a SAR. In guidance issued in 2007, for example, FinCEN explained that SAR confidentiality extends "to all documents or records that assisted a financial institution in making the determination that certain activity required a SAR filing." *Guidance: Suspicious Activity Report Supporting Documentation*, FIN-2007-G003 (June 13, 2007), http://fincen.gov/statutes_regs/guidance/html/Supporting_Documentation_Guidance.html ("Supporting Documentation Guidance"). More recently, FinCEN explained that it amended its

regulations in 2010 to clarify the breadth of SAR confidentiality so as to ensure that "financial institutions are confident that the information they provide to help in the fight against money laundering, financing of terrorism and other financial crime is appropriately protected by those to whom that information is entrusted." *SAR Activity Review*, *supra*, at 71. "By strengthening and clarifying SAR confidentiality [with the amendments], FinCEN hopes to increase trust and security across our [anti-money laundering] landscape." *Id.* The investigative materials at issue here should be covered by the SAR confidentiality regulations so as not to undermine that essential "trust and security" and the information-sharing that it promotes.

### C. The Agencies' Litigating Positions Confirm That SAR Confidentiality Extends To Internal Investigative Materials.

The OCC and FinCEN have reiterated their broad understanding of SAR confidentiality in litigation. In *Union Bank of California, N.A. v. Superior Court*, 130 Cal. App. 4th 378 (Cal. Ct. App. 2005), for example, the OCC filed an *amicus* brief explaining that SAR confidentiality prevents a bank from:  (1) producing internal documents that are part of the bank's process for generating a SAR; or (2) answering interrogatories about that process.  OCC Br. 2-3.  There, the OCC emphasized that SAR confidentiality "clearly protect[s] from discovery not just the SAR itself and its contents," but also "information that would disclose preparation of a SAR," including "drafts of SARs" and any "work product . . . that relate[s] to the SAR itself." *Id.* at 6-7 (internal quotation marks omitted).  Disclosure of such documents would undermine the SAR program:  A "bank's willingness to file a SAR will be chilled by knowledge that its customers may learn through discovery that the bank reported—or contemplated reporting—an activity involving the customer to law enforcement authorities." *Id.* at 10.  That would be unacceptable because SARs are "essential" to "protect[ing] the banking system and the public from illegal activities" and to "prevent[ing] terrorists from accessing the banking system." *Id.* at 4.

Similarly, in this very case FinCEN submitted a letter stating its "position that any suspicious activity reports (SARs), or information that would reveal that a SAR has or has not been filed, should not be publicly disclosed."  FinCEN Letter at 1, Ex. A to JPMorgan Reply.  SAR confidentiality, FinCEN explained, is "designed to encourage financial institutions to file SARs."  *Id.* at 2.  Disclosing information related to SARs can "drive[ ] away business," "lead to threats to institutions and employees," and help criminals learn how to evade a bank's methods for detecting suspicious activity.  *Id.*  Proper adherence to the regulations, by contrast, "makes it easier for" banks "to candidly and energetically report suspicious activities to FinCEN."  *Id.*

These rationales for SAR confidentiality apply fully to the investigative files that Plaintiff has demanded here.  Like the materials in *Union Bank*, investigative materials in LIO files are "part of the process the bank uses to file a SAR."  OCC Br. 10.  Disclosure of these materials would discourage banks—such as The Clearing House's members—from filing SARs because they could lose business, face threats, and fall victim to crime.  FinCEN Letter at 2.

*       *       *

The repeatedly reaffirmed views of FinCEN and the OCC are entitled to judicial deference.  The views expressed in the 2010 rulemakings are binding, well-reasoned interpretations of the regulations at issue and accord with the regulatory text.  *See*, *e.g.*, *Mayo Found. for Med. Educ. & Research v. United States*, 131 S. Ct. 704, 714 (2011); *Berlin v. Renaissance Rental Partners, LLC*, 723 F.3d 119, 125-26 (2d Cir. 2013) (deferring to agency interpretation expressed in rulemaking order and letter briefing).  Even if this Court were to deem the SAR confidentiality regulations ambiguous on the question whether they encompass all SAR investigative materials, the Court must defer to the interpretation set forth in the rulemakings and court filings.  *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337-38 (2013);

*Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871, 880-82 (2011); *Berlin*, 723 F.3d at 125-26. The views set forth in the agencies' policy statements and guidance likewise are entitled to "respect" because they "reflect a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (internal quotation marks omitted). Deference and respect are especially warranted here because the regulatory interpretation of SAR confidentiality is consistent and long-standing. *NLRB v. Bell Aerospace Co., Div. of Textron, Inc.*, 416 U.S. 267, 274-75 (1974) ("[A] court may accord great weight to the longstanding interpretation placed on a statute by an agency charged with its administration."); *Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d 132, 139 (2d Cir. 2002) ("[T]he apparent consistency of [an agency's] approach also adds weight to its position."). The Court should afford proper respect to the well-reasoned views consistently set forth by FinCEN and the OCC in multiple contexts and grant the motion for a protective order.

## II.    The Weight Of Judicial Authority Holds That SAR Confidentiality Bars Disclosure Of Investigative Materials.

The weight of judicial authority holds that SAR confidentiality bars from disclosure materials created in the course of determining whether to file a SAR. Indeed, the most relevant judicial decisions here—*i.e.*, those that FinCEN and the OCC expressly relied upon in adopting the regulations, such as *Union Bank*—take that view.

### A.    The Weight Of Judicial Authority Counsels Firmly Against Allowing Banks' Investigative SAR Documents To Be Disclosed.

Most prominently, in *Union Bank of California, N.A. v. Superior Court*, 130 Cal. App. 4th 378 (Cal. Ct. App. 2005), the California Court of Appeal held that SAR confidentiality encompasses documents prepared in the course of investigating or drafting a SAR. *Id.* at 391. Embracing the views expressed in an *amicus* brief filed by the OCC, *see supra* Part I-C, the court emphasized that such materials "fall within the scope of the SAR privilege because they may

13

reveal the contents of a SAR and disclose whether 'a SAR has been prepared or filed.'"  130 Cal. App. 4th at 391 (quoting former 12 C.F.R. § 21.11(k)).  Both FinCEN and the OCC cited *Union Bank* with approval in promulgating the amendments that reaffirmed the broad scope of SAR confidentiality and thoroughly examined the purposes underlying the SAR program.  *See* 75 Fed. Reg. at 75,595 & n.15; 75 Fed. Reg. at 75,579 & n.23; *see also supra* Part I-A.

Similarly, in *Regions Bank v. Allen*, 33 So. 3d 72 (Fla. Dist. Ct. App. 2010) (per curiam), the court followed *Union Bank* in holding that SAR confidentiality extends not just to SARs but also to documents that "refer[ ] to a SAR" or contain "any language disclosing whether there was or was not a SAR or whether a SAR was or will be prepared."  *Id.* at 77.  Merely redacting from documents any such references or language, the court explained, "will not be adequate to protect the confidentiality of a SAR investigation or the fact of a SAR's preparation."  *Id.*

Other courts have also recognized that SAR confidentiality extends to SAR investigation materials.  In *Cotton v. PrivateBank & Trust Co.*, 235 F. Supp. 2d 809 (N.D. Ill. 2002), the court explained that although "business records made in the ordinary course of business" may be disclosed, "documents representing drafts of SARs or other work product or privileged communications that relate to the SAR itself" may not be.  *Id.* at 815.  And in *Whitney National Bank v. Karam*, 306 F. Supp. 2d 678 (S.D. Tex. 2004), the court recognized that SAR confidentiality protects "discussions leading up to . . . the preparation or filing of a SAR or other form of report of suspected or possible violations."  *Id.* at 683.  As with *Union Bank*, FinCEN and the OCC embraced the position staked out in *Cotton* and *Whitney*—describing them as "relevant case law" in the 2010 rulemakings.  *See* 75 Fed. Reg. at 75,595 & n.15; 75 Fed. Reg. at 75,579 & n.23.

14

## B.    The Two Decisions On Which Plaintiff Heavily Relies Are Wrongly Decided Outliers.

The two cases on which Plaintiff heavily relies are outliers that disregard the purposes of SAR confidentiality, conflict with the weight of regulatory authority, and are inconsistent with the caselaw that the agencies expressly relied upon in adopting the current versions of the rules.

In *Freedman & Gersten, LLP v. Bank of America, N.A.*, No. 09 Civ. 5351 (SRC) (MAS), 2010 WL 5139874 (D.N.J. Dec. 8, 2010), a magistrate judge rejected a claim of SAR confidentiality under the prior version of 12 C.F.R. § 21.11(k) and ordered a bank to disclose documents regarding internal investigations of suspicious activity. *Id.* at *2-3. The judge did not cite the regulators' interpretation of the SAR confidentiality regulations (such as the *amicus* brief filed by the OCC in *Union Bank* or the then-just-issued rulemakings on the confidentiality regulations) and instead adopted an approach that squarely conflicts with those views and thwarts the operation of the SAR system. *See supra* Part I. Indeed, the court did not suggest that it was even aware that the OCC (or FinCEN) had ever interpreted or issued any guidance on SAR confidentiality. The Court refused, moreover, to follow the analysis of *Cotton v. PrivateBank* that both agencies explicitly endorsed in the 2010 rulemakings. *See Freedman*, 2010 WL 5139874, at *3 n.2. *Freedman* is wrong and should not be followed.

The error in *Freedman* was perpetuated in *Wultz v. Bank of China Ltd.*, No. 11 Civ. 1266 (SAS), 2013 WL 1788559 (S.D.N.Y. Apr. 17, 2013) ("*Wultz II*"). *Wultz II* was issued eight days after the court had rejected the bank's cursory and largely undefended one-paragraph claim of SAR confidentiality in *Wultz v. Bank of China Ltd.*, --- F.R.D. ---, 2013 WL 1453258 (S.D.N.Y. Apr. 9, 2013) (*Wultz I*). In *Wultz I*, the district court concluded that SAR confidentiality extends only to SARs themselves and to documents that squarely disclose that a SAR was filed. *See id.* at *12-13. *Wultz I* devoted only three paragraphs to analyzing SAR confidentiality at the tail end

of an opinion focusing on the bank examination privilege, attorney-client privilege, and work product doctrine.  *See id.* at *6-13.  *Wultz II*—on which Plaintiff heavily relies, *see* Opp. 1, 2, 11, 13, 14, 15, 16, 18, 19—reiterated the holding of *Wultz I* in concluding that the bank could not redact documents except to prevent disclosing the existence of a SAR.  *Wultz II*, 2013 WL 1788559, at *2.  (However, as JPMorgan notes, *see* Reply Br. 5, Judge Scheindlin ultimately *upheld all* of the bank's redactions.  *See Wultz v. Bank of China Ltd.*, 291 F.R.D. 42, 44 (S.D.N.Y. 2013) ("*Wultz III*").)

Like *Freedman*, *Wultz I* and *Wultz II* conflict with the purposes animating the SAR program and with the considered views of FinCEN and the OCC.  *Wultz I* and *Wultz II* do not cite the regulators' 2010 rulemakings amending the SAR regulations.  Indeed, the court appears not to have even known about those rulemakings.  *Wultz I* asserts as uncontroversial that "the OCC's regulations prohibit the disclosure of information that would reveal the existence of a particular SAR, not the non-existence of any SARs."  2013 WL 1453258, at *12 (emphasis and footnote omitted).  The OCC has instructed, however, that "a national bank . . . must afford confidentiality to any document stating that a SAR has not been filed."  75 Fed. Reg. at 75,579.  Because this Court has the benefit of the regulators' views, as well as briefing on the subject, it should reject the erroneous view reached in *Wultz* and in *Freedman*.

Finally, Plaintiff cites cases (Opp. 13) stating that SAR confidentiality does not extend to documents that support a SAR.  *See United States v. Holihan*, 248 F. Supp. 2d 179, 187 (W.D.N.Y. 2003); *Weil v. Long Island Sav. Bank*, 195 F. Supp. 2d 383, 389 (E.D.N.Y. 2001).  Those statements, however, conflict with the regulatory text, which "deem[s]" such "supporting documentation" "to have been filed with the SAR"—and thus to be protected by SAR confidentiality.  31 C.F.R. § 1020.320(d); 12 C.F.R. § 21.11(g).  Those holdings also cannot be

squared with FinCEN's guidance explaining that "supporting documentation" includes "all documents or records that assisted a financial institution in making the determination that certain activity required a SAR filing," Supporting Documentation Guidance, *supra*—in other words, precisely the sort of investigative work product that the regulators have authoritatively explained may not be disclosed.  *See supra* Part I.

## CONCLUSION

The Court should hold that SAR confidentiality protects materials prepared in the course of investigating or otherwise determining whether to file a SAR and thus grant JPMorgan's motion for a protective order.

DATED:  October 4, 2013    GIBSON, DUNN & CRUTCHER LLP

             /s/ Helgi C. Walker
           Helgi C. Walker*
           Scott G. Stewart*
           1050 Connecticut Ave., N.W.
           Washington, D.C.  20036
           Telephone: (202) 955-8500
           Facsimile: (202) 530-9595
           HWalker@gibsondunn.com
           SStewart@gibsondunn.com
           *Admitted pro hac vice*

           *Counsel for Amicus Curiae The Clearing House Association L.L.C.*

## CERTIFICATE OF SERVICE

I, Helgi C. Walker, hereby certify that on this 4th day of October 2013, I caused a true and correct copy of the foregoing Brief for The Clearing House Association L.L.C. as *Amicus Curiae* Supporting Defendants to be served by the Court's electronic filing system upon:

Penny Shane
shanep@sullcrom.com
Sharon Nelles
nelless@sullcrom.com
Jonathan Sedlack
sedlakj@sullcrom.com
David Castleman
castlemand@sullcrom.com
Theodore Edelman
edelmant@sullcrom.com
Richard Klapper
klapperr@sullcrom.com
Michael Tomaino
tomainom@sullcrom.com
Jordan Razza
razzaj@sullcrom.com
Rudy Kleysteuber
kleysteuberw@sullcrom.com
Damien Scott
scottj@sullcrom.com
David Braff
braffd@sullcrom.com
Brian Frawley
frawleyb@sullcrom.com
Joshua Fritsch
fritschj@sullcrom.com
Bruce Clark
clarkb@sullcrom.com
Amanda Davidoff
davidoffa@sullcrom.com
David Sollors
sollorsd@sullcrom.com
David Dehoney
dehoneyd@scullcrom.com
David Sollors
sollorsd@sullcrom.com
Bradley Harsch
harschb@sullcrom.com

Tracy High
hight@sullcrom.com
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Richard Clary
rclary@cravath.com
Michael Reynolds
mreynolds@cravath.com
Lauren A. Moskowitz
lmoskowitz@cravath.com
David Christopher Armillei
darmillei@cravath.com
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

Thomas Rice
trice@stblaw.com
David Woll
dwoll@stblaw.com
Alan Turner
aturner@stblaw.com
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

Richard Lefton
leftonr@gtlaw.com
Richard Edlin
edlinr@gtlaw.com
Candace Camarata
camaratac@gtlaw.com
Greenberg Traurig LLP
200 Park Avenue
New York, NY 10166

Pamela Chepiga
pamela.chepiga@allenovery.com
Allie Cheatham
allie.cheatham@allenovery.com
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020

Joel Haims
jhaims@mofo.com
Lashann DeArcy
ldearcy@mofo.com
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY  10104

Sandra Hauser
sandra.hauser@snrdenton.com
Patrick Fitzmaurice
patrick.fitzmaurice@snrdenton.com
SNR Denton US LLP
1221 Avenue of the Americas
New York, NY  10020

Jade Burns
jburns@kramerlevin.com
Dani James
djames@kramerlevin.com
Kramer Levin Naftalis & Frankel LLP
1177 Sixth Avenue
New York, NY  10036

Michael Ware
Richard Spehr
RMBS-Lit@mayerbrown.com
Mayer Brown LLP
1675 Broadway
New York, NY  10019

Damien Marshall
dmarshall@bsfllp.com
Andrew Michaelson
amichaelson@bsfllp.com
Jaime Sneider
jsneider@bsfllp.com
Bois, Schiller & Flexner LLP
575 Lexington Avenue
7th Floor
New York, NY  10022

David Blatt
dblatt@wc.com
John McNichols
jmcnichols@wc.com

Steven Cady
scady@wc.com
Edward Bennett
EBennett@wc.com
Beth Stewart
bstewart@wc.com
Jesse Smallwood
jsmallwood@wc.com
Williams & Connolly LLP
735 12th Street Northwest
Washington, D.C.  20005

Neil Binder
nbinder@rkollp.com
Daniel Zinman
dzinman@rkollp.com
Jon Connolly
jconnolly@rkollp.com
Richards Kibbe & Orbe LLP
85 West Street
New York, NY  10006

Anthony Joseph Enright
anthonyenright@quinnemanuel.com
Manisha M. Sheth
ManishaSheth@quinnemanuel.com
Jordan Ari Goldstein
jordangoldstein@quinnemanuel.com
Leron Thumim
leronthumim@quinnemanuel.com
Philippe Zuard Selendy
philippeselendy@quinnemanuel.com
Rajat Rana
rajatrana@quinnemanuel.com
Renee Beltranena Bea
reneebea@quinnemanuel.com
Serafina Shishkova
serafinashishkova@quinnemanuel.com
Erica P. Taggart
ericataggart@quinnemanuel.com
James Matthew Hamann
matthewhamann@quinnemanuel.com
Molly Caroline Stephens
mollystephens@quinnemanuel.com
Nicholas Fields Joseph
nicholasjoseph@quinnemanuel.com

Sascha Nicholas Rand
sascharand@quinnemanuel.com
Wing Fu Ng
AlexNg@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010

Andrew Riggs Dunlap
adunlap@kirkland.com
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022

Eric Brendan Bruce
eric.bruce@kobrekim.com
David Harrison McGill
david.mcgill@kobrekim.com
Scott Kurtis McCulloch
scott.mcculloch@kobrekim.com
Steven William Perlstein
steven.perlstein@kobrekim.com
Kobre & Kim LLP
800 Third Avenue
New York, NY  10022

        /s/ Helgi C. Walker
Helgi C. Walker
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave, N.W.
Washington, D.C.  20036